**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: ROBLOX CHILD SEXUAL EXPLOITATION AND ASSAULT LITIGATION | MDL Docket No. 3166 |

**MOVANT-PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR TRANSFER AND
<u>COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407</u>**

**INTRODUCTION**

In the month since Plaintiff Jane Doe ("Jane") filed her motion, 14 additional tag-along cases have been filed, *see* ECF Nos. 21, 34, 41, 44, 51, bringing the current number of Actions to 45, and the Attorneys General of Kentucky and Florida have announced a Roblox lawsuit and criminal investigation, respectively. It is not just likely that Roblox will continue to face an onslaught of lawsuits brought by minors who were sexually exploited on its app. It is certain.

The Actions involve substantial factual overlap regarding Roblox's knowledge and actions, and will necessarily implicate common factual, legal, and case-management issues. Yet Roblox and the other Defendants would have approximately 30 different judges across 12 districts address these issues at best repetitively and at worst conflictingly. Why? Because Defendants apparently intend to move to compel arbitration in all of the plaintiffs' cases and because the Actions involve potential individualized issues with respect to Defendants and the plaintiffs.

None of Defendants' arguments holds water. The fact that Defendants will seek to compel arbitration in every Action supports centralization, so that one judge may adjudicate those issues in an efficient manner. And Defendants have not cited any potential individualized issues that would negate the efficiencies to be gained by centralization. The Panel should grant the motion.

**ARGUMENT**

**A. Defendants' Potential Arbitration Motions Support—Not Undermine—Consolidation.**

Defendants' potential arbitration motions present case-management issues that support consolidation rather than weigh against it. Whether Defendants' arbitration defense is ultimately successful or unsuccessful, addressing it in a coordinated proceeding will promote the "just and efficient conduct" of the Actions. 28 U.S.C. § 1407(a).

The Panel has previously recognized as much in centralizing other cases. For example, in *In re T-Mobile 2022 Customer Data Security Breach Litigation*, the Panel rejected the same

1

argument that Defendants offer here—*i.e.*, that anticipated motions to compel arbitration "will rest on unique plaintiff-specific considerations and are therefore not appropriate for centralized treatment." 677 F. Supp. 3d 1366, 1367 (J.P.M.L. 2023). As the Panel explained, although the motions to compel arbitration "may differ as to the way each customer agreed to arbitrate claims," these inquiries "appear to involve some overlapping issues" and having one judge "decide the motions in a coordinated fashion, therefore, can provide efficiencies and allow any remaining actions to move forward together." *Id.*; *see also In re Daily Fantasy Sports Litig.*, MDL No. 2677, 2016 U.S. Dist. LEXIS 72957, at *6 (J.P.M.L. 2016) (highlighting that defendant's anticipated "duplicative motions" to compel arbitration "may benefit from centralized treatment").

This case is no different. Defendants' motions will present cross-cutting issues that will benefit from coordinated treatment, including on (1) contract formation and (2) the applicability of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"). On contract formation, for example, an issue in most cases (including nearly every one on file so far) is whether a minor plaintiff may assent to an arbitration clause. Whether a minor can assent, and whether and how the minor must disaffirm, are questions of state law that one judge can efficiently organize and decide. That "potentially different states' laws" will apply, Opp'n at 7, is only more reason to centralize the cases before one judge who can consistently apply the laws of different states. *See In re CVS Caremark Corp. Wage & Hour Emp. Prac. Litig.*, 684 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010) ("[I]t is in the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state."). It also makes no difference that this case involves defendants with different terms of service. *See In re Daily Fantasy Sports Litig.*, MDL No. 16-02677, 2019 U.S. Dist. LEXIS 206689 (D. Mass. Nov. 27, 2019) (resolving motions to compel by multiple defendants in MDL).

The applicability of the EFAA also will present overlapping issues. Those include whether a "sexual assault dispute," 9 U.S.C. § 402(a), requires "physical contact," as Defendants claim, Opp'n at 8, or whether it also encompasses cases involving the coerced production of child sex abuse material. *See, e.g.*, *United States v. Butler*, 65 F.4th 199, 203 (5th Cir. 2022) (holding that 18 U.S.C. § 2246(3), which the EFAA references, includes coercion of children into sending pictures or videos of themselves masturbating). Yet another overlapping issue will be whether the EFAA applies only to cases where the *conduct occurred* after the EFAA's March 2022 enactment, as Defendants claim, Opp'n at 8, or whether it applies to any *case filed* after the EFAA was enacted. *See Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 898-99 (8th Cir. 2024) (holding that EFAA applied to case involving conduct that occurred before EFAA's March 2022 enactment because the "dispute" did not arise until the plaintiff filed her lawsuit in July 2022).

Centralization will allow the transferee court to address all of these cross-cutting issues in an efficient and consistent manner. The transferee court can group cases by state, relevant date, and type of sexual abuse alleged, and then select cases or groups of cases to resolve arbitration motions and decide the overlapping issues. In this sense, arbitration is no different from the kinds of factual and legal issues that MDL courts manage all the time.

Defendants indicate that they expect to appeal from any denials of motions to compel arbitration (apparently no matter how frivolous the grounds) and secure an automatic stay, which would negate any efficiencies. *See* Opp'n at 8-9 (citing *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023)). At that point, though, the litigation presents appellate case-management issues that, again, will benefit from consolidation. One appellate court, rather than numerous ones, can hear the appeals. Should the appellate court agree that some or all of the cases are exempt from arbitration, then the transferee court will be in the best position to efficiently apply those rulings to similar

cases. And if Defendants insist on seriatim arbitration appeals in the face of binding precedent, then the single appellate court will be best positioned to apply the "robust tools" the Supreme Court identified in *Coinbase* "to prevent unwarranted delay and deter frivolous interlocutory appeals." *Coinbase*, 599 U.S. at 745. For example, the plaintiffs "can ask the court of appeals to summarily affirm, to expedite an interlocutory appeal, or to dismiss the interlocutory appeal as frivolous." *Id.* In addition, the Court explained, "nearly every circuit has developed a process by which a district court itself may certify that an interlocutory appeal is frivolous." *Id.*

## B.  The Actions Present a Quintessential Case for Consolidation.

Defendants next argue that consolidation is not appropriate because the Actions may raise individualized issues with respect to the different defendants and plaintiffs. "But a complete identity or even a majority of common factual or legal issues is not a prerequisite to transfer under Section 1407." *In re Glucagon-Like Peptide-1 Receptor Agonists GLP-1 Ras Prods. Liab. Litig.*, 717 F. Supp. 3d 1370, 1373 (J.P.M.L. 2024). So Defendants instead insist that individualized issues will overwhelm the common questions of fact indisputably present in the Actions. But try as they might, Defendants cannot conjure any individualized issues that may arise that would "negate the efficiencies to be gained by centralization." *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 637 F. Supp. 3d 1377, 1378 (J.P.M.L. 2022). Contrary to Defendants' assertions, consolidation of the Actions and their numerous common questions of fact is necessary for the "just and efficient conduct" of the Actions. 28 U.S.C. § 1407(a).

### 1.  The Actions involve common questions of fact.

The Actions all involve the same set of core facts focused on Roblox, a company that knew its app had long been used by predators to groom and sexually exploit children. In each case, as a minor, the plaintiff was identified and targeted by a child predator on Roblox. In each case, the predator was able to use the app to manipulate and groom the plaintiff, typically by masquerading

4

as a fellow child. In each case, the predator then coerced the plaintiff into sending sexually explicit images or videos on another app or into meeting in person. In short, in each case, the plaintiff alleges that Roblox knowingly provided predators with an easy access point and gateway to initially communicate with and manipulate the trust of the plaintiffs, with devastating results.

In her motion, Jane identifies numerous common questions that arise in the Actions from this common set of core facts: (1) Roblox's knowledge of the prevalence of child sexual exploitation and abuse by predators who use the company's app to identify, target, and groom children; (2) the veracity of and basis for Roblox's representations that the app is safe for children to use; (3) the reasonableness of Roblox's actions, such as Roblox's failure to implement effective parental controls and other safety features like age and identity verification that Roblox knew or should have known would prevent the sexual exploitation and abuse of children; (4) the reasonableness of the design of Roblox's app, which includes features that allow predators to easily access and interact with children; and (5) Roblox's warnings or lack thereof to children and their parents about the risks of sexual exploitation and abuse associated with children's use of the app. *See* Mot. at 7. Defendants do not dispute the presence of these common questions of fact.

### 2. Transfer will promote the just and efficient conduct of the Actions.

Defendants instead argue that centralization is not appropriate because of individualized factual issues that may arise in the Actions. Their scattershot arguments can be boiled down to two contentions: (1) the Actions involve multiple defendants with different products, and (2) the Actions involve plaintiffs with certain differing facts. But Defendants do not highlight any potential individualized factual issues that would undermine the efficiencies of centralization.

*First*, Defendants wrongly claim that the Actions should not be centralized because "multiple defendants are involved." Opp'n at 10. That is not true as a general matter, and it is particularly not true when, as here, the cases center on the same core set of facts involving the

actions of a common defendant. For example, in *In re FTX Cryptocurrency Exchange Collapse Litigation*, the Panel centralized cases involving numerous different defendants because, like here, the cases arose from a "common factual core" involving "central figures" in all the actions. 677 F. Supp. 3d 1379, 1380-81 (J.P.M.L. 2023). Similarly, in *In re January 2021 Short Squeeze Trading Litigation*, the Panel rejected the arguments that centralization was inappropriate because of the differences in defendants, emphasizing that the cases shared factual questions arising from a common defendant that was "[a]t the center of this controversy." MDL No. 2989, 2021 U.S. Dist. LEXIS 63656, at *4 (J.P.M.L. 2021). In short, Roblox is the hub and the other Defendants the spokes. Defendants have no response to these cases.

The efficiency benefits to centralizing cases that arise from common facts and focus on the actions of a common defendant vastly outweigh any individualized issues that may arise as to other defendants that are involved. Here, absent consolidation, the plaintiffs will serve overlapping discovery into Roblox's knowledge, policies, actions, and product design. Pursuing that discovery in at least 45 cases individually will necessarily lead to duplication of labor and expenses, as well as inconsistent rulings on discovery disputes. *See, e.g.*, *Uber Techs., Inc. v. United States Jud. Panel on Multidistrict Litig.*, 131 F. 4th 661, 670 (9th Cir. 2025) ("Centralization would also avoid inefficient and conflicting rulings on the scope of discovery, including as to which witnesses were to be deposed and under what circumstances, which ESI sources were to be searched, which search terms or other methods were to be used, and which documents would be produced.").

Moreover, the efficiency benefits of centralization are not limited to Roblox. Of the 45 Actions, 17 also include Discord and seven also include Snap. That is because the predator playbook is to target and groom minors on Roblox and then migrate them to other select apps, most often Discord and Snap, where the predators solicit explicit images or engage in other

criminal acts. Many of the Actions thus involve common issues of fact relating to Discord and Snap, and the plaintiffs in those cases will seek duplicative discovery from these Defendants absent consolidation, resulting in additional inefficiencies and potentially conflicting results. Consolidating the Actions will therefore maximize the just and efficient conduct of the cases as to not only Roblox but the other Defendants as well, as the Panel has previously recognized in other multi-defendant cases. For example, in *In re Hair Relaxer Marketing, Sales Practices, and Products Liability Litigation*, the Panel consolidated cases against multiple manufacturers of hair relaxers. 655 F. Supp. 3d 1374 (J.P.M.L. 2023). Because most plaintiffs alleged "exposure to multiple different product lines," the Panel concluded that "declining to centralize this litigation would not resolve the complexities presented by managing cases involving multiple defendants and products." *Id.* at 1377. Rather, "judges in nineteen (or more) different districts would be required to manage such cases, while addressing overlapping parties, facts, and claims." *Id.*

The cases cited by Defendants do not help them. Defendants lean on *In re Video Game Addiction Products Liability Litigation*, 737 F. Supp. 3d 1353 (J.P.M.L. 2024). But there the plaintiffs sought to centralize cases involving "over 30 different defendants," many of which were "involved in just one or two actions," and a "broad range of games." *Id.* at 1354. That is nothing like the circumstances here, where every Action is focused on Roblox, and there are only three other defendants, two of which (Discord and Snap) are common across many of the Actions.

Defendants also rely on *In re Baby Food Marketing, Sales Practices and Products Liability Litigation*, 544 F. Supp. 3d 1375 (J.P.M.L. 2021), which involved multiple defendants. But there, unlike here, centralization was opposed by plaintiffs in nearly half of the actions, and the parties were in the process of attempting to "self-organize." *Id.* at 1378. Further, the Panel later centralized personal injury actions involving similar claims against the same defendants, rejecting defendants'

argument that consolidation was not appropriate because "each defendant manufactures, markets, and distributes its own baby food products subject to different manufacturing processes, suppliers, and quality control procedures." *In re Baby Food Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 730 F. Supp. 3d 1371, 1372 (J.P.M.L. 2024). Given the likely "overlap in discovery as to the defendants" and the "[c]ommon expert discovery" as to both plaintiffs and defendants, the Panel held that centralization "will facilitate a uniform and efficient pretrial approach to this litigation, eliminate duplicative discovery, prevent inconsistent rulings on expert testimony and other pretrial issues, and conserve the resources of the parties, their counsel, and the judiciary." *Id.* at 1373. The same is true here.

Related to their "multiple defendants" argument, Defendants also wrongly argue that centralization would not be efficient because the Actions involve different products with different features. The Actions all challenge the same features on Roblox, such as the app's ineffective parental controls and lack of age and identity verification, and the Actions that include other Defendants challenge the same features of their respective apps. *See* Appendix, ECF No. 1-3. And Defendants do not dispute that, despite any supposed differences among their apps, consolidation will streamline pretrial proceedings because Defendants will all assert the same core defenses, including that Section 230 of the Communications Decency Act bars the plaintiffs' claims and that their apps are not "products" under product-liability law. *See* Mot. at 9; *see also In re Soc. Media*, 637 F. Supp. 3d at 1378 (consolidating cases involving multiple social-media platforms in part because "defendants likely will assert the same defenses" and "[c]entralization of all actions, therefore, will allow for efficient coordination of briefing and rulings on motions to dismiss").

*Second*, Defendants incorrectly assert that consolidation is not warranted because the Actions present individualized fact issues regarding the plaintiffs' exploitation and abuse.

Defendants argue that causation will turn on plaintiff-specific facts, but that is not a reason to deny centralization. "Almost all personal injury litigation involves questions of causation that are plaintiff-specific." *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1404 (J.P.M.L. 2024). The Panel has repeatedly emphasized that those differences "are not an impediment to centralization where"—as here—"common questions of fact predominate." *Id.* That is because the presence of plaintiff-specific causation issues does not negate the efficiencies that will be achieved by having one court manage discovery and other pretrial proceedings related to the common issues. *See In re Uber Inc.*, 699 F. Supp. 3d 1396, 1398 (J.P.M.L. 2023) (rejecting defendant's argument that plaintiff-specific causation questions would predominate because there were "sufficient common issues present to warrant centralized treatment," including "Uber's knowledge of the prevalence of sexual assault" and "representations regarding safety").

Defendants also wrongly try to compare this litigation to cases involving sexual abuse where the Panel denied centralization. In their attempt to analogize these cases to the Actions, Defendants claim that the Panel denied centralization there because the plaintiffs' circumstances varied in the specifics of the abuse they suffered. *See* Opp'n at 12-13. In those cases, however, the Panel denied centralization because any common factual questions would be overwhelmed by a variety of individualized issues, none of which are present here. *See In re Hotel Industry Sex Trafficking Litig. No. II*, 730 F. Supp. 3d 1360, 1363 (J.P.M.L 2024) (cases against seven different defendants lacked "a unifying common and fact-intensive inquiry," such as "a common or principal defendant whose conduct or failure to act is at issue"); *In re Varsity Spirit Athlete Abuse Litig.*, 677 F. Supp. 3d 1376, 1377 (J.P.M.L. 2023) (cases included common corporate defendants but also 30 individual defendants scattered across the actions, so any efficiencies to be gained by centralization would be diminished by unique factual issues concerning the individual defendants); *In re Church*

*of Jesus Christ of Latter-Day Saints Sexual Abuse Litig.*, 776 F. Supp. 3d 1356, 1358 (J.P.M.L. 2025) (discovery would overwhelmingly focus on unique, case-specific factual issues because the abuse occurred over more than five decades, the church's relationships with the plaintiffs and perpetrators varied greatly, and many plaintiffs were minors at time of abuse, but some were adults). This litigation is far more akin to *In re Uber*. *Cf. In re Church of Jesus Christ of Latter-Day Saints*, 776 F. Supp. 3d at 1358 (emphasizing that the "relationships between the parties in *In re Uber* were far more uniform—each plaintiff was a passenger who downloaded the same mobile app, was subject to the same company policies, . . . and allegedly was assaulted by an Uber driver").

**C.  Informal Coordination Is Not a Practical Alternative to Centralization.**

There are currently 45 Actions pending in 12 districts before approximately 30 different judges. At least 11 different law firms represent plaintiffs across the Actions. The Actions will involve complex questions of fact and law, as well as extensive discovery. Given these circumstances, informal coordination is not a practical alternative to centralization. *Compare In re Baby Food*, 730 F. Supp. 3d at 1373 (informal coordination was infeasible because "there are now 25 related actions pending in eleven districts involving multiple different plaintiffs' counsel"), *with In re Varsity Spirit*, 677 F. Supp. 3d at 1378 (informal coordination was feasible because "(1) plaintiffs in all actions share counsel, (2) there are a limited number of involved actions and districts, and (3) the parties have been successfully informally coordinating the actions"). While informal coordination may have been a practical alternative in the cases cited by Defendants— which involved just four actions and three actions, respectively—it is not so here. *See In re Maybelline New York*, 949 F. Supp. 2d 1367 (J.P.M.L. 2013) (four actions); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*, 446 F. Supp. 242 (J.P.M.L. 1978) (three actions).

## CONCLUSION

For the foregoing reasons, the Panel should grant the motion.

10

Date:   October 21, 2025                    Respectfully submitted,


                                           By: /s/ Alexandra M. Walsh
                                           Alexandra M. Walsh
                                           **ANAPOL WEISS**
                                           14 Ridge Square, NW, 3rd Floor
                                           Washington, DC 20016
                                           Telephone: (771) 224-8065
                                           Facsimile: (215) 735-2211
                                           awalsh@anapolweiss.com


                                           By: /s/ Sarah London
                                           Sarah London
                                           **GIRARD SHARP LLP**
                                           601 California Street, Suite 1400
                                           San Francisco, CA 94108
                                           Telephone: (415) 981-4800
                                           slondon@girardsharp.com

                                           *Attorneys for Movant-Plaintiff*

11