# EXHIBIT A

ADRMOP

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:26−cv−12565−LJC

v. B. et al
Assigned to: Magistrate Judge Lisa J. Cisneros
Case in other court: San Mateo Superior Court, 26−CIV−08396
Cause: 28:1332 Diversity−Petition for Removal

Date Filed: 10/27/2026
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**P. B.**
*a minor, by and through their proposed Guardian ad LItem T.B.*

represented by

**Anya Fuchs**
Reich and Binstock LLP
4265 San Felipe Suite 1000
Houston, TX 77027
510−685−9717
Fax: 510−743−7147
Email: afuchs@reichandbinstock.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dennis J. Reich**
Reich & Binstock, LLP
4265 San Felipe Blvd., Suite 1000
Houston, TX 77027
713−622−7271
Fax: 713−623−8724
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Roblox Corporation**

represented by

**Max Bernstein**
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111−4004
(415) 693−2052
Fax: (415) 693−2222
Email: mbernstein@cooley.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Discord Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/27/2026 | 1 | NOTICE OF REMOVAL from San Mateo Superior Court. Their case number is 26−CIV−08396. (Filing fee $405 receipt number ACANDC−22645961). Filed by Roblox Corporation. (Bernstein, Max) (Filed on 10/27/2026) (Entered: 10/27/2026) |
| 10/27/2026 | 2 | NOTICE by Roblox Corporation re 1 Notice of Removal *Exhibit A to Notice of Removal (State Complaint)* (Attachments: # 1 Exhibit B to Notice of Removal (State Case Civil Cover Sheet), # 2 Exhibit C to Notice of Removal (State Case Summons), # 3 Exhibit E to Notice of Removal (State Register of Actions))(Bernstein, Max) (Filed on 10/27/2026) (Entered: 10/27/2026) |
| 10/27/2026 | 3 | Corporate Disclosure Statement by Roblox Corporation re 1 Notice of Removal (Bernstein, Max) (Filed on 10/27/2026) (Entered: 10/27/2026) |

| | | |
|---|---|---|
| 10/27/2026 | 4 | Certificate of Interested Entities by Roblox Corporation identifying Other Affiliate David Baszucki, Other Affiliate Gregory Baszucki, Other Affiliate Christopher Carvalho, Other Affiliate Anthony P. Lee, Other Affiliate Andrea Wong, Other Affiliate Gina Mastantuono, Other Affiliate Dennis Durkin, Other Affiliate Jason Kilar for Roblox Corporation. re 1 Notice of Removal (Bernstein, Max) (Filed on 10/27/2026) (Entered: 10/27/2026) |
| 10/27/2026 | 5 | Case assigned to Magistrate Judge Lisa J. Cisneros.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E−Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 11/10/2026. (kam2, COURT STAFF) (Filed on 10/27/2026) (Entered: 10/27/2026) |
| 10/28/2026 | 6 | CERTIFICATE OF SERVICE by Roblox Corporation re 1 Notice of Removal (Attachments: # 1 Exhibit A (Notice to State Court of Notice of Removal), # 2 Exhibit B (State Court Amended Proof of Service of Notice of Removal), # 3 Exhibit C (CAND Case Assignment to Magistrate Judge Lisa J. Cisneros))(Bernstein, Max) (Filed on 10/28/2026) (Entered: 10/28/2026) |
| 10/29/2026 | 7 | NOTICE by Roblox Corporation *Notice of Filing* (Attachments: # 1 Proof of Service Summons on Discord Inc., # 2 Proof of Service Summons on Roblox Corporation)(Bernstein, Max) (Filed on 10/29/2026) (Entered: 10/29/2026) |
| 10/30/2026 | 8 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 1/21/2027. Initial Case Management Conference set for 1/28/2027 01:30 PM in San Francisco, − Videoconference Only. (hdj, COURT STAFF) (Filed on 10/30/2026) (Entered: 10/30/2026)** |

Dennis Reich (SBN 69631)
Robert Binstock (*Pro hac vice* Forthcoming)
Anya Fuchs (SBN 215105)
**REICH AND BINSTOCK, LLP**
4265 San Felipe, Suite 1000
Houston, TX 77027
(713) 622-7271 (P) / (713) 623-8724
dreich@reichandbinstock.com
bbinstock@reichandbinstock.com
afuchs@reichandbinstock.com

***Attorneys for Plaintiff***
***P.B., a minor, by and through their***
***proposed Guardian ad Litem T.B.***

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON 10/26/2026
By /s/ Jennifer Batres
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN MATEO**
(UNLIMITED JURISDICTION)

P.B., a minor, by and through their proposed Guardian ad Litem T.B.,

Plaintiff,

v.

ROBLOX CORPORATION; DISCORD INC.; and DOES 1-50, inclusive,

Defendants.

Case No.: 26-CIV-08396

**COMPLAINT FOR DAMAGES**

(1) Fraudulent Concealment and Misrepresentation
(2) Negligent Misrepresentation
(3) Negligence – General
(4) Negligence – Failure to Warn
(5) Negligence –Defective Design
(6) Negligent Undertaking
(7) Strict Liability – Design Defect
(8) Strict Liability – Failure to Warn

**JURY TRIAL DEMANDED**

## TABLE OF CONTENTS

**I. INTRODUCTION** .......... **1**
**II. PARTIES** .......... **3**
a. Plaintiff .......... 3
b. Defendants .......... 4
**III. JURISDICTION AND VENUE** .......... **5**
**IV. FACTUAL ALLEGATIONS: ROBLOX** .......... **5**
a. Roblox Offers a Gaming Platform for Children .......... 5
b. Roblox Lures Parents into Letting their Children Use Roblox with Promises of Safety. .......... 11
c. In Reality, Roblox is a Digital and Real-Life Nightmare for Children. .......... 16
d. Roblox Knowingly Causes and Facilitates the Sexual Exploitation of Children. .......... 30
1. Roblox prioritizes growth over child safety .......... 30
2. Roblox facilities child sexual exploitation through the design of its app, inadequate safety features, and refusal to invest in basic safety protections. .......... 35
3. Roblox's recent safety changes are woefully inadequate and fail to address years of neglect and harm caused by its platform / product. .......... 44
**V. FACTUAL ALLEGATIONS: DISCORD** .......... **49**
a. Discord Offers a Communication App that It Markets to Children. .......... 49
b. Discord Lures Parents into Letting Their Kids Use Discord with Promises of Safety. .......... 52
c. In Reality, Discord is a Digital and Real-Life Nightmare for Children. .......... 54
1. Discord hosts and promotes dangerous and illegal sexual content. .......... 55
2. Discord provides a hunting ground for child-sex predators .......... 58
3. Roblox and Discord work in tandem to facilitate child sexual exploitation. .......... 63
d. Discord Knowingly Causes and Facilitates the Sexual Exploitation of Children. .......... 64
1. Discord prioritizes growth over the safety of children. .......... 64
2. Discord facilitates child sexual exploitation through the design of its app, inadequate safety features, and refusal to invest in basic safety protections. .......... 67
**VI. PLAINTIFF SPECIFIC ALLEGATIONS** .......... **71**
**VII. CAUSES OF ACTION** .......... **76**
FIRST CAUSE OF ACTION FRAUDULENT CONCEALMENT / MISREPRESENTATION .......... 76
SECOND CAUSE OF ACTION NEGLIGENT MISREPRESENTATION .......... 79
THIRD CAUSE OF ACTION NEGLIGENCE – GENERAL .......... 83
FOURTH CAUSE OF ACTION NEGLIGENCE, FAILURE TO WARN .......... 90
FIFTH CAUSE OF ACTION NEGLIGENCE - UNREASONABLE / DEFECTIVE DESIGN .......... 93

SIXTH CAUSE OF ACTION NEGLIGENT UNDERTAKING....................97
SEVENTH CAUSE OF ACTION STRICT LIABILITY, DESIGN DEFECT....................99
EIGHTH CAUSE OF ACTION STRICT LIABILITY -- FAILURE TO WARN....................105
**VIII. PRAYER FOR RELIEF .................... 110**
**IX. JURY TRIAL DEMANDED.................... 111**

Plaintiff P.B., a minor, by and through their proposed Guardian ad litem (and parent) T.B. ("Plaintiff"), brings this action against Roblox Corporation ("Roblox"), Discord Inc. ("Discord") and Does 1-50 (collectively referred to as "Defendants") to recover damages arising from the severe injuries Plaintiff suffered because of Defendants' respective conduct in creating, designing, marketing, and distributing their mobile and web-based products, i.e., the Roblox and Discord platform systems (the "product" or "products"), and alleges as follows:

## I. INTRODUCTION

1. This action seeks to hold Defendants accountable for facilitating the sexual exploitation and sexual and emotional harassment of Plaintiff beginning with predatory grooming behavior by an adult pretending to be a minor when Plaintiff was eleven (11) years old; the harassment was always sexual in nature and resulted in Plaintiff being coerced into staying in near constant contact with the adult predator for over one month, being subjected to chronic sexual advances during that time, and ultimately led to her attempting to self-harm when her device and access to the platforms through which she had communicated with the predator(s) was taken away. The resulting severe damage to Plaintiff is the result of the tortious conduct of Defendants, including by their failure to warn parents and children who use their products of the inherent and known dangers posed by their products, and by their failure to design products intended for children that were safe despite making representations that they had taken measures to make using their products safe for children.

2. Through their pervasive patterns of misrepresentations about safety, Defendants lure parents into reasonably believing that their products are a safe and appropriate place for children to play. In reality, as Defendants well know, the design of their products make children easy prey for pedophiles. Despite that knowledge, Defendants had and have no appropriate or meaningful safeguards in place to ensure that children were or are safe, or that predators were subject to screening before being allowed to use the products. Defendants have intentionally, recklessly, and/or negligently failed to design a safe product by failing to implement safety features to protect children and failing to provide warnings to users such as Plaintiff, or their parents, of the known dangers posed by pedophiles using the products for the purpose of creating and distributing child sex abuse material ("CSAM") and to otherwise obtain sexually explicit images and videos of children.

3. The design of Defendants' products allow adult users to identify and readily initiate conversations with children, then manipulate the trust of those children, including by gifting them Robux, Roblox's valuable online currency. Roblox allows adult users to easily identify and groom children and then move their communications to Discord—an app that permits a child to chat with anyone over voice, video, and text messaging. On Discord, these pedophiles are able to coerce the children into sending and/or receiving sexually explicit images or meeting in person or otherwise subjecting the children to unwanted and misunderstood sexual advances and often creating emotional dysregulated relationships with the children where the children feel compelled to communicate their whereabouts to the predator at all times or follow the predator's directions on how to behave or interact with others, including their parents. There are steps that Defendants could have taken to protect children and to make their products safer. But, time and again, Defendants have refused to invest in basic safety features to protect against the exact sort of sexual exploitation and injuries Plaintiff suffered.

4. The reason for Defendants' unlawful conduct is simple: Defendants prioritize growing the number of users of their products over child safety. As one former Roblox employee explained in describing the company's approach to child safety, "You have to make a decision, right? You can keep your players safe, but then it would be less of them on the platform. Or you just let them do what they want to do. And then the numbers all look good and investors will be happy."[1] Discord has taken the same approach to child safety on its product. Defendants' prioritization of growth over the safety of children has devastated the lives of children who use their products, including Plaintiff.

5. Plaintiff is currently a 12-year-old child who was groomed almost immediately when they began using Roblox, and shortly thereafter Discord, in early 2026. Plaintiff's mother allowed Plaintiff to use these platforms only because she trusted Defendants' representations that their platforms were safe for children to use. Plaintiff's family learned the truth only after it was too late. Plaintiff's mother discovered that Roblox and Discord had enabled at least one child predator to identify, groom, and

---

[1] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, Hindenburg Research (Oct. 8, 2024), https://hindenburgresearch.com/roblox/.

manipulate Plaintiff into becoming an emotional slave and to accept chronic sexual exploitative messaging and roleplaying.

6. Plaintiff suffered this sexual exploitation, abuse, and harassment as the direct result of Defendants' conduct. For years, Defendants have misrepresented and deliberately concealed information about the pervasive predatory conduct that their platforms enable and facilitate. Had Defendants disclosed the truth of what was really occurring on their platforms, Plaintiff's mother would never have permitted Plaintiff to use these platforms without her strict supervision. Had Defendants taken any steps to screen users before allowing them on the platforms, Plaintiff would not have been exposed to the large number of predators trolling the platforms. Had Defendants implemented even the most basic system of age and identity verification, as well as effective parental controls, Plaintiff would never have engaged with this predator and never been harmed. Plaintiff has suffered unimaginable harm and experienced self-harm and suicidal ideation. Their innocence has been snatched from them forever. Tragically, what happened to them is far from an isolated event. Indeed, Plaintiff is just one of countless children whose lives have been devastated as a result of Defendants' gross negligence and defectively designed platforms. This action, therefore, is not just a battle to vindicate Plaintiff's rights—it is a stand against Defendants' systemic failures to protect society's most vulnerable from unthinkable harm in pursuit of financial gain over child safety.

## II. <u>PARTIES</u>

### a. Plaintiff

7. Minor Plaintiff P.B., like their Guardian ad Litem T.B., (who is also their parent), is a citizen and resident of the State of Texas; at the time P.B. suffered the sexual exploitation as described and alleged herein, both P.B. and their Guardian ad Litem were citizens and residents of the State of Minnesota.

8. Plaintiff has suffered profound and life-altering personal injuries, caused directly and proximately by Defendants' wrongful conduct. These injuries include, but are not limited to, significant emotional distress, psychological trauma, and mental anguish. Plaintiff's experiences have led to a loss of trust, safety, and personal security, depriving them of the opportunity for a normal and healthy development. The injuries they sustained, including suicidal ideation and thoughts of self-harm, are

severe and have left both ongoing and permanent damage in a way that affects their daily life and emotional health in lasting and immeasurable ways.

9. Plaintiff was a minor at the time of using Defendants' platforms and, as such, they lacked the legal capacity to enter into any binding agreement. The sexual exploitation in question occurred when P.B. was 12 years old. To the extent Defendants claim that any contract has any effect on Plaintiff's rights in this action, such an assertion is legally erroneous, invalid, and unenforceable because Plaintiff disaffirms any such contract, including any contract containing a forced arbitration clause agreement and any delegation clause in any contract.

10. Moreover, neither Plaintiff nor their parent and Guardian ad Litem T.B. specifically recalls creating a Roblox or Discord account, nor agreeing to arbitrate Plaintiff's claims against either, nor agreeing to any delegation clause within any contract tethered to creating or using either Defendants' products. If Defendants can nevertheless demonstrate by a preponderance of the evidence that someone capable of binding P.B. assented to such an arbitration clause and/or delegation agreement with either Defendant, any such agreement is legally erroneous, invalid, and unenforceable.

**b. Defendants**

11. Defendant Roblox Corporation is a Nevada corporation with its principal place of business in San Mateo, California. Roblox owns, operates, controls, produces, designs, maintains, manages, develops, tests, labels, markets, advertises, promotes, supplies, and distributes the Roblox platform and /or product. Roblox is widely available to consumers throughout the United States.

12. Defendant Discord Inc. is a Delaware corporation with its principal place of business in San Francisco, California. Discord owns, operates, controls, produces, designs, maintains, manages, develops, tests, labels, markets, advertises, promotes, supplies, and distributes the Discord platform and/or product. Discord is widely available to consumers throughout the United States.

13. The true names or capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiff who is therefore ignorant of their true names and sues said Defendants by such fictitious names. Plaintiff believes and alleges that each of the Defendants designated herein by fictitious names is in some manner legally responsible for the events

and happenings herein referred to and caused damages proximately and foreseeably to Plaintiff as alleged herein.

## III. JURISDICTION AND VENUE

14. This Court has personal jurisdiction over Defendants because each of their principal place of business is in California, and because they have contacts with California that are so continuous and systematic that they are essentially at home in this State. Defendants regularly conduct and solicit business in California, provide products and/or services by or to persons here, and derive substantial revenue from the same. Defendants affirmatively and extensively engage with a significant percentage of California's residents through messages, notifications, recommendations, and other communications. Accordingly, Defendant has purposefully availed themselves of the benefits and protections of California law, and the exercise of personal jurisdiction is proper.

15. This Court has subject-matter jurisdiction over this action under Code of Civil Procedure § 85 because the amount in controversy exceeds $35,000.

16. Venue is proper in this Court under Code of Civil Procedure §395.5 because Roblox Corporation's principal place of business is located in San Mateo County, making this its county of residence for venue purposes. Additionally, a substantial portion of the liability-creating conduct – including product design, development, safety decisions, and platform operations – occurred in this county. Therefore, San Mateo County is a proper venue for the claims asserted in this Complaint.

## IV. FACTUAL ALLEGATIONS: ROBLOX

### a. Roblox Offers a Gaming Platform for Children

17. Defendant Roblox negligently and/or recklessly designed its product so that anyone can easily communicate with children, creating a virtual world where predators can use it to freely target and groom children. Launched in 2006, Roblox is an interactive online gaming product that creates a new category of human interactions. Users can play myriad games on Roblox referred to as "experiences." There are currently more than 6.7 million[2] experiences within the Roblox ecosystem. Defendant Roblox has complete control over its platform system, including all of the hosting experiences, including but not limited to, warnings associated with the product, age verification, age

[2] Roblox, *Home Page*, https://corp.roblox.com/ (last visited October 1, 2025).

restrictions for each experience, policies and rules regarding inappropriate conduct, monitoring for inappropriate conduct, handling and facilitation of reports of complaints by users, etc.

18. Roblox is easily accessible, including to children as young as toddler aged. It is free to download and play and is available on gaming consoles, computers, tablets, and cellular devices. An account can easily be set up by a child in a matter of minutes without a parent.

19. Roblox is designed to be an interactive experience, allowing and encouraging users to communicate and interact with each other in real time. Gameplay interactions, user hubs, direct messaging, and voice chat all promote social interactions between and among users. Roblox's co-founder and CEO David Baszucki has explained that his vision is for Roblox to bring about "the next phase of human interaction," which he also has described as "a new category of human coexperience."[3] Defendant Roblox has similarly explained that it "operates a human co-experience platform . . . where users interact with each other to explore and develop immersive, user generated, 3D experiences."[4]

20. Defendant Roblox designed its product for young children. Defendant Roblox has marketed its product not only as the "#1 gaming site for kids and teens"[5] but also as an educational experience for children. Defendant Roblox claims that it provides "new gateways into learning"—from "chemistry to physics to robotics and more, Roblox experiences bring concepts to life in ways that immerse learners and motivate exploration, play, and deep thinking."[6] These offerings, according to Defendant Roblox, include "high-quality, standards-aligned, immersive educational experiences designed by curriculum experts."[7]

///

///

///

---

[3] David Baszucki, Co-founder and CEO of Roblox, *The CEO of Roblox on Scaling Community-Sourced Innovation*, Har. Bus. Rev., The Magazine (Mar.-Apr. 2022), https://hbr.org/2022/03/the-ceo-of-roblox-on-scaling-community-sourced-innovation.

[4] Roblox Corp., 10-Q (Quarterly Report) (Mar. 13, 2021).

[5] Roblox, *What Is Roblox*, http://web.archive.org/web/20170227121323/https://www.roblox.com/ (archived Feb. 27, 2017).

[6] Roblox, *A New Era of Engaged Learning*, https://corp.roblox.com/education (last visited May 5, 2025).

[7] *Id.*




*Roblox webpage – "A New Era of Engaged Learning"*

21. Roblox's popularity among children exploded during the pandemic when the product was flooded with millions of new users as children were confined to their homes. By September 2020, roughly 31.1 million people from around the world, more than half of them under 13, were on Roblox daily, making it the world's biggest recreational zone for kids.[8]

22. That growth has continued unabated. In Roblox's 2024/2025 Annual Report, the company reports an average of 82.9 million daily active users, with 20% under 9 years of age; 20% from 9-12 years of age; 16% from 13-16 years of age; and 44% at 17 years of age or over.[9]

23. Today, Roblox is the most downloaded online game globally, and based on 2023 statistics, the average user spends 2.4 hours a day using the product.[10]

24. As noted, individuals who wish to play Roblox must first create an account. It is extremely easy to "SIGN UP AND START HAVING FUN!" Users are only required to provide a birth date, username, and password.

25. Users of any age can create an account. There is no age minimum. Further, Defendant Roblox does not employ any means of attempting to verify the age of a user during the sign-up process, nor does Roblox employ any means of obtaining parental consent from the parent or guardian or other

---

[8] Roblox Corp., *SEC filings as of September 30, 2020*, https://www.sec.gov/Archives/edgar/data/1315098/000119312520298230/d87104ds1.htm (last visited October 1, 2025).
[9] Roblox Corp., *Roblox Corporation 2025 Proxy Statement and 2024 Annual Report,* 199 (May 29, 2025), https://s27.q4cdn.com/984876518/files/doc_financials/2024/ar/Roblox-2025-Proxy_2024-AR-1-1.pdf .
[10] BackLinko, *Roblox User and Growth Stats You Need to Know*, https://backlinko.com/roblox-users#average-daily-usage-on-roblox/ (last visited May 5, 2025).

responsible adult for a user that is a minor child. As such, users can easily represent that they are older than their actual age. It is likewise true that users can easily represent that they are younger than their actual age, making it so, for example, that adults who are child predators can pose as children.




*Roblox Sign-Up Screen*

26. Although Defendant Roblox's sign-up process informs the user that if the user is a child he or she must obtain their parent's or guardian's permission to create an account, it employs no features to verify parental consent and/or confirmation of a user's age when the user is a minor child.

27. Defendant Roblox has access to biometric age and identity verification software that requires the user to take a photo of a government issued ID along with a real time selfie photo that is then verified through artificial intelligence. However, while Defendant Roblox utilizes this software for other purposes, Defendant Roblox intentionally does not utilize this feature when new accounts are created. As such, Defendant Roblox also still relies on self-reported birthdays for age verification, and its product is intentionally and/or recklessly designed to allow users to create accounts using fake

birthdays, allowing adults to pose as children and allowing children to easily circumvent the application of more restrictive controls for account users identified as under the age of 13.

28. After creating an account, all users are assigned a default player avatar—a character that represents the individual user within certain games.




*Example Default Avatar on Roblox*

29. Users can then play in any of the millions of "experiences" (i.e., video games) These games are sorted into different genres/categories, such as Sports, Role-Playing Games, Fighting, First Person Shooters, Fashion, Horror, Comedy, Military, and Naval. The games recommended to a user will vary based on the age the user entered when generating their account and Defendant Roblox's algorithm that recommends games to the user.




*Examples of Games Available on Roblox*

///

///

30. Prior to November 2024, when a child created an account, the default setting was for parental control protections to be turned off. As a result, if a child made their own account and listed their age as 13 or older, then Defendant Roblox chose to make available through its platform any "experience" to that child.

31. Further, until November 2024, Defendant Roblox's default setting for its product facilitated an adult user's ability to communicate with a user who is a minor child. That setting allowed an adult user who was a stranger to a minor child user to "friend" and thereby chat with an in-platform text feature with that child. This is true regardless of the age of the minor child user. The facilitated text communication was direct and private to the child meaning that it was not viewable to any other user. In said private message, if the adult user invited the minor child user to join a different "experience" within the Roblox platform or to a private server. Upon entering said other "experience" or private server upon accepting such an invitation, all users found therein can engage the chat feature, regardless of whether they are "friends" or not via the transaction described above. In this way, the option to disable chat with strangers in experiences was, by default, turned off and/or capable of being "worked around."

32. Now, in 2026, under Defendant Roblox's default settings, adults cannot directly message children under 13 outside of a given "experience, but that is not true when the users stay within the "experience." The same is true of voice chatting. Children under 13 can still receive friend requests from within the "experiences." The design features with which Roblox created its platform that facilitate communication from adult users to users who are children who have no ability to know the users they are communicating with are not children like themselves continues to make children highly vulnerable to predators.

33. Defendant Roblox generates revenue, in part, by selling users a platform-exclusive currency called "Robux," which must be purchased using real-world currency before exchanging "Robux" or digital content in the closed digital economy. Robux can be purchased in a single transaction, or a user may subscribe to receive Robux on a recurring basis with a Roblox Premium membership. Defendant Roblox also offers Robux gift cards that anyone can purchase and send to any user.

///

34. Children frequently become obsessed with purchasing or otherwise obtaining Robux to buy items for their avatars and to spend in their favorite experiences on Roblox. In Defendant Roblox's Avatar Store, for example, the company sells "rare" items at astronomical prices, such as a type of hair for an avatar, which children seek to purchase to keep up with or outdo their peers on Roblox. As a result, children often tell others, including strangers, that they will do "[a]nything for Robux."[11]

### b. Roblox Lures Parents into Letting their Children Use Roblox with Promises of Safety.

35. Defendant Roblox's success and continued growth have hinged on its constant assurances to parents that its product is safe for children.[12] The company has done so throughout its history and in every forum possible—on its website, through public promises of its highest executives, in news articles, on podcasts, and on and on.

36. Over the years, Defendant Roblox has repeatedly represented that its product is safe for children and has misrepresented the safety controls it has in place. As early as 2007, Defendant Roblox's website assured parents that Roblox is an "online virtual playground . . . where kids of all ages can safely interact, create, have fun, and learn."[13]

37. From 2008 to 2016, Defendant Roblox's website continued to promise parents, "[w]e take every precaution possible to make sure kids are protected from inappropriate and offensive individuals as well as from indecent and distasteful content."[14]

38. Defendant Roblox also assured parents that it has a zero- tolerance policy for "swearing and obscenities, messages and content of a sexual or violent nature, and any sort of aggressive or threatening communication," and "immediately suspended or permanently expelled" any offenders, which was not accurate.[15]

---

[11] Olivia Carville & Cecilia D'Anastasio, *Roblox's Pedophile Problem*, Bloomberg Businessweek (Jul. 23, 2024), https://www.bloomberg.com/features/2024-roblox-pedophile-problem/.

[12] Kerry Breen, Experts users warn about explicit content on popular gaming platform Roblox, Today.com (Oct. 20, 2021), https://www.today.com/parents/roblox-experts-users-warn-aboutinappropriate-content-t235027.

[13] Roblox, *Frequently Asked Questions (FAQs)*, https://web.archive.org/web/20071105104643/http://www.roblox.com/Parents/FAQs.aspx (archived Nov. 5, 2007).

[14] Roblox, *Keeping Kids Safe*, https://web.archive.org/web/20080501101437/http://www.roblox.com/Parents/KeepingKidsSafe.aspx (archived May 1, 2008); *see also* Roblox, *Information for Parents*, https://web.archive.org/web/20160131063648/http://corp.roblox.com/parents (archived Jan. 31, 2016).

[15] *Id.*

39. Indeed, Defendant Roblox has consistently sought to paint Roblox as "family friendly" and safe for children of all ages. In 2017, Defendant Roblox began declaring that it "take[s] kids' safety and privacy very seriously" and "strive[s] to continually develop new and innovative technologies that will protect the safety of our community while allowing players to imagine, create, and play together in a family- friendly environment."[16]

40. Defendant Roblox similarly has advertised its product as "a safe, moderated place to meet, play, chat, and collaborate on creative projects."[17]




*Excerpt from Roblox Parent's Guide in 2017*

41. Again in 2023, Defendant Roblox assured parents that it "continually develop[s] cutting-edge technologies to ensure that the Roblox platform remains a safe and fun space for players all over the world."[18] Defendant Roblox claimed that the company was "dedicated to working together with parents and digital safety experts to promote a family-friendly environment that allows all players to imagine, create, and play online."[19] Defendant Roblox emphasized that it is "committed to ensuring

---

[16] Roblox, *Parents' Guide*, https://web.archive.org/web/20170716032712/https://corp.roblox.com/parents/ (archived Jul. 16, 2017).
[17] *Id.*
[18] Roblox, *For Parents*, https://web.archive.org/web/20230405060048/https://corporate.roblox.com/parents/ (archived Apr. 5, 2023).
[19] *Id.*

that Roblox is a safe and fun place for everyone."[20] According to Defendant Roblox, it "goes above and beyond to foster an environment where people of any age can create, play, learn, and imagine safely. We've kept children's privacy and safety top-of-mind when designing our platform, especially through the implementation of advanced text filters that block inappropriate language or other unsafe content."[21]

42. Defendant Roblox's website today contains similar assurances. It claims, "Safety is in our DNA: when Dave Baszucki and Erik Cassel launched Roblox in 2006, they spent a few hours each day with the community, helping to ensure that Roblox was a safe and welcoming environment. Safety was their top priority, and they made constant improvements in their moderation, both for content and for communication on the platform."[22]

43. According to the current website, Defendant Roblox "won't allow language that is used to harass, discriminate, incite violence, threaten others, or used in a sexual context."[23] It touts a "stringent safety system and policies," which includes its "expertly trained team with thousands of members dedicated to protecting our users and monitoring 24/7 for inappropriate content"; its "safety review of every uploaded image, audio, and video file, using a combination of review by a large team of human moderators and machine detection before they become available on our platform"; and its chat filters for inappropriate content, which "are even stricter" for children under 13 and "include any potentially identifiable personal information, slang etc."[24]

///

///

///

---

[20] Roblox, *Roblox FAQ*, https://web.archive.org/web/20230328011957/https://corporate.roblox.com/faq/ (archived Mar. 28, 2023).

[21] Roblox, *Roblox & User Data FAQ*, https://en.help.roblox.com/hc/en-us/articles/4406238486676-Roblox-User-Data-FAQ (last visited October 1, 2025).

[22] Roblox, *Safety Comes First on Roblox*, https://web.archive.org/web/20250513161835/https://corp.roblox.com/safety-civilityresources?section=news&article=safety-comes-first-on-roblox (archived May 13, 2025).

[23] Roblox, *Safety Features: Chat, Privacy & Filtering*, https://en.help.roblox.com/hc/en-us/articles/203313120-Safety-Features-Chat-Privacy-Filtering (last visited October 1, 2025).

[24] Roblox, *Safety & Civility at Roblox*, https://en.help.roblox.com/hc/en-us/articles/4407444339348-Safety-Civility-at-Roblox (last visited October 1, 2025).

44. These misleading promises and assurances are not confined to Defendant Roblox's website. They are repeated in statements by the company's highest executives, including in direct response to concerns raised by parents.

45. For example, in 2009, a blogger wrote about blocking Defendant Roblox because he doubted its safety for his children. CEO David Baszucki responded to the blogger reassuring him that Defendant Roblox flags "obviously offensive content" and removes it, and if "something is marginal, but gets flagged as inappropriate," Roblox "investigate[s] immediately."[25]

46. In a 2013 *Wired* interview, when asked whether a parent should be concerned about whom his child was chatting with in-game, Baszucki declared, "We take every precaution possible to make sure kids are protected from inappropriate and offensive individuals as well as from indecent and distasteful content," taking a sentence verbatim from Roblox's webpage for parents.[26]

47. Tami Bhaumik, Defendant Roblox's current Vice President of Civility & Partnerships, has doubled down on these promises in statements to parenting magazines, news outlets, and podcasts—all aimed at persuading parents to let their children use Roblox. She also has contacted international online safety experts in an effort to sell Roblox's safety story.

48. As recently as 2024, Bhaumik told *Parents Magazine* that "[w]e have a responsibility to make sure our players can learn, create, and play safely. This continues to be our most important priority and that will never change."[27]

**Parents**

In response to safety concerns, Roblox notes that the platform was designed for kids and teens from the beginning, and they're committed to making safety a priority. "We have a responsibility to make sure our players can learn, create, and play safely," notes Tami Bhaumik, Vice President of Civility & Partnerships at Roblox. "This continues to be our most important priority and that will never change."

---

[25] Eric Frenchman, *Revisiting Roblox*, Pardon My French (Oct. 5, 2009), https://pardonmyfrench.typepad.com/pardonmyfrench/2009/10/revisiting-roblox.html.

[26] Tony Sims, *Interview with David Baszucki, Founder & CEO of Roblox*, Wired (Feb. 7, 2013), https://www.wired.com/2013/02/roblox/.

[27] Maressa Brown, *Is Roblox Safe for Kids? Here's What the Experts Have to Say*, Parents Magazine (Apr. 29, 2024), https://www.parents.com/kids/safety/internet/is-roblox-safe-forkids/.

49. Such statements by Bhaumik date back years. In 2018, Bhaumik told the *Washington Post* that Defendant Roblox "focus[es] on making sure that everything is done in a safe and appropriate way."[28] That year, she also claimed to another newspaper that Defendant Roblox's "safety team reviews every uploaded image, video, and audio file used within our games to make sure they are safe and age appropriate."[29] She also boasted that Defendant Roblox has "created extensive parental controls for our games and a detailed Roblox Parent's Guide that provides information to parents to help create a Roblox experience that's best for their child."[30]

50. In 2019, while presenting on a "Digital Civility Panel," Bhaumik emphasized that "[w]e make sure there's a safe environment," citing Defendant Roblox's "tremendous reporting system" and "incredible moderation and CS team that reacts very, very quickly."[31] On that same panel—and in contradiction to Defendant Roblox's representation that it had always taken "every precaution possible" to protect children, Bhaumik conceded that "digital civility did not exist at Roblox a year and a half ago and we established this and made it a movement within our company."[32] She added later, "It's still very early days for us. This whole digital civility focus for Roblox is still there, we're just still establishing it."[33]

51. In a 2022 video interview about safety on Roblox, Bhaumik asserted that Defendant Roblox's "number one priority" is "to create a safe, civil, and inclusive community" and that "[s]afety and civility has always been baked into everything that we do."[34] That year, on a podcast, she also bragged about Defendant Roblox's purported safety protections, including "thousands of human moderators on the front lines" and "machine learning that is constantly taking a look at chat filters."[35]

---

[28] Hayley Tsukayama, *Roblox, an Online Kids Game, Explains How a Hack Allowed a Character's Virtual 'Rape'*, Wash. Post. (Jul. 17, 2018), https://www.washingtonpost.com/technology/2018/07/17/roblox-an-online-kids-game-explains-how-hack-allowed-characters-virtual-rape/.
[29] Chris Pollard, *Danger to Kids Police Warn that Children as Young as Five-Years-Old are Seeing Naked Lego-Type Characters Having Sex on Roblox App*, The Sun (Jan. 29, 2018), https://www.thesun.co.uk/news/5445444/roblox-app-children-danger-sex-warning/.
[30] *Id.*
[31] YouTube, Digital Civility Panel (Oct. 23, 2019), https://www.youtube.com/watch?v=XoUs1Js7WG0&list=PLcKphP00N1_kCLjvcOWdwbegJkNS L-CuL&index=6.
[32] *Id.*
[33] *Id.*
[34] Video Interview with Tami Bhaumik, Roblox's VP of Digital Civility & Partnerships (2022), https://www.facebook.com/bedford.sheriff/videos/roblox-how-to-help-kids-use-itsafelyrobloxs-vp-of-digital-civility-partnerships/1338989609901259/.
[35] YouTube, Into the Discordverse, Podcast: EP.21: Tami Bhaumik (Roblox) - Building a Safe & Resilient Discordverse,

With these and other measures, she exclaimed, "[a]ny sort of bad actor that comes onto the platform is dealt with swiftly" and "[w]e remove any content that's reported to us within minutes."[36] However, these statements do not reflect reality.

52. In 2023, Matt Kaufman, formerly the Chief Systems Officer for Defendant Roblox, was appointed Chief Safety Officer, at which point he too began peddling Defendant Roblox's child safety narrative.

53. In a 2024 blog post on Defendant Roblox's website, Kaufman asserted that "Roblox has spent almost two decades working to make the platform one of the safest online environments for our users, particularly the youngest users. Our guiding vision is to create the safest and most civil community in the world."[37] According to Kaufman, "For users under 13, our filters block sharing of personal information and attempts to take conversations off Roblox, where safety standards and moderation are less stringent."[38] A few months later, he added, "Safety is and always has been foundational to everything we do at Roblox."[39]

54. In a later blog post, Kaufman touted Defendant Roblox's "track record of putting the safety of the youngest and most vulnerable people on our platform first."[40]

55. Kaufman also recently told *NPR* that "any time anything happens to a child that puts them at risk is one too many."[41]

**c. In Reality, Roblox is a Digital and Real-Life Nightmare for Children.**

56. Defendant Roblox's public statements and promises are carefully crafted to paint the picture of a digital playground that is safe and appropriate for children. When parents, the press, or child advocates raise questions and concerns, the company's highest executives respond with comforting promises of safety that are patently false.

---

https://www.youtube.com/watch?v=LT5_bBOYS9A.

[36] *Id.*

[37] Matt Kaufman, Chief Safety Officer, *Driving Civility and Safety for All Users*, Roblox (Jul. 22, 2024), https://corp.roblox.com/newsroom/2024/07/driving-civility-and-safety-for-all-users.

[38] *Id.*

[39] Matt Kaufman, Chief Safety Officer, *Major Updates to Our Safety Systems and Parental Controls*, Roblox (Nov. 18, 2024), https://corp.roblox.com/newsroom/2024/11/major-updates-to-our-safety-systems-and-parental-controls.

[40] Matt Kaufman, Chief Safety Officer, *Scaling Safety and Civility on Roblox*, Roblox (Apr. 4, 2024), https://corp.roblox.com/newsroom/2024/04/scaling-safety-civility-roblox.

[41] Scott Tong & James Perkins Mastromarino, *Roblox Chief Safety Officer on New Safety Features, Past Cases of Child Abuse on the Platform*, WBUR (Nov. 18, 2024), https://www.wbur.org/hereandnow/2024/11/18/roblox-safety-features.

57. This campaign of reassurance masks the truth about Defendant Roblox's defective product. Far from creating a safe place for children, Defendant Roblox negligently and recklessly designed, built, and maintains a defective product that lacks safety features to protect children from predators and fails to warn parents and child users of the known dangers of predators utilizing the product for the facilitation of the generation and distribution of CSAM. The end result is that Defendant Roblox, through its defective product and its failure to warn, provides the perfect place for pedophiles to access vulnerable children.

58. Yet another factor contributing to the defective design of Roblox is its failure to require age-appropriate designations on experiences. Defendant Roblox has intentionally and/or recklessly and/or negligently designed its product without requiring age-appropriate designations on experiences in an effort to increase the number of uses per experience for the purpose of increasing revenue. Defendant Roblox's decision to design a platform that does not verify the claimed age of its users, combined with its decision to not require age-appropriate designations on the experiences it facilities and hosts, creates a welcoming playground for predators to sexually exploit children users and Roblox knows it. What is more, Roblox permits the option of "All Ages (Suitable to everyone)" to be assigned to any experience (and it is!), giving children access to highly inappropriate experiences such as "Escape to Epstein Island"—a title that directly references one of the locations where for years Jeffery Epstein trafficked minors and other non-consenting individuals so he and others could sexually and physically abuse them. The experiences in the "All Ages" category also include a litany of instances of players mimicking sexual acts and avatar items rife with sexual content and innuendos. Further, the vast majority of experiences are designated as "Suitable to everyone," making it so that Defendant Roblox's purported recent age restriction safeguards are entirely eviscerated, a fact which Defendant Roblox well knows.

///

///

///







*Age Restrictions Options and Experience Example*

59. Because of Defendant Roblox's defective product design, and specifically its inadequate safety features as herein described, Roblox knows minor children who are users are exposed to graphic sexual material via its platform system. For example, while Defendant Roblox's chat filtering feature is designed to filter inappropriate content and personal information on accounts assigned to persons aged 12 and younger, it is less restrictive for accounts for persons aged 13 and above. Regardless, the filter is easily bypassed by obscuring text with alphanumeric combinations (*e.g.*, "D1DDY P13NS"). Not only does this permit a workaround for explicit language, but it also allows users to circumvent filters to request and provide links to external chat services. Roblox knows or should know this. Yet, Roblox allows it.

60. While the experiences on Roblox are created by developers, the tools used by these developers are ones that Defendant Roblox designs, controls, and makes available to the developers. Defendant Roblox's tools, which include scripting capabilities, 3D modeling systems, and other software, supply the infrastructure needed to create content for the Roblox product. Defendant Roblox has control over the manner in which these tools are used and has the ability to place limitations and restrictions on them. Instead, however, over the years, Defendant Roblox has provided grossly insufficient safety controls and safeguards. The results are deplorable.

61. Roblox exercises substantial control over the design and creation of Roblox experiences. Roblox offers intense in-person programs or workshops for intermediate to expert level developers. These programs are specifically designed to engage, supervise, direct and train developers and designers to build more experiences for the Roblox platform. They specifically target "experienced

developers who have demonstrated proficiency and have a deep understanding of Roblox's systems and game development process."[42]

62. Roblox's Accelerator Program, officially in operation from 2015 to 2022, was a 12-week on-site training to intermediate to expert level developers and creators, who were paid up to $13,000 USD by Roblox. This program trained anywhere between 40 to 50 participants a year under the direct supervision and direction of Roblox engineers for the sole purpose of creating, developing, and designing experiences.

63. The Accelerator Program was full-time and participants were expected to attend meetings between 10am and 6pm, Monday through Friday. Prior to COVID-19 the meetings were held at the Roblox headquarters in San Mateo, California. After COVID-19, the Accelerator Program moved to remote attendance.

64. The Roblox Accelerator Program was discontinued on November 7, 2022, and replaced by other similar programs such as Roblox Game Fund, which ran from approximately 2021 until 2023, when it was replaced with the Creator Fund.

65. The Roblox Incubator program was similar to the Accelerator Program but targeted more advanced developers and projects that, "...affect the platform in a fundamental way that provides an improved developing ground for all Roblox developers."[43] In the Incubator program participants would be given tasks or specific game creations to build under the direction and guidance of Roblox.

66. The difference between the Accelerator program and the Incubator program was that the Incubator program looks to build or advance the overall Roblox platform, while the Accelerator program was focused on a particular experience. Under both programs, Roblox experiences, features, systems, data, and designs were created under the guidance, supervision, and control of Roblox. Some of the most popular experiences were created and designed through these programs.

67. Both programs functioned as a "revolving door" through which developers and creators worked under the training, direction, and supervision of Roblox. Through these programs, Roblox was

---

[42] 2blox2quit, *2019 Accelerator / Incubator Spring Application*, Roblox Creator Hub (June 19, 2018 1:46 PM), https://devforum.roblox.com/t/2019-accelerator-incubator-spring-application/137644 (last accessed Sep. 30, 2025).
[43] *Id.*

the collaborator or investor, providing creative input and financial and structural support to developers and creators who, in turn, funnel enormous engagement and revenue back to Roblox.

68. On July 19, 2021, Roblox announced the Roblox Game Fund, later rebranded the Creator Fund in March 2024, which provides funding to participants of the programs up to $500,000 per project. Roblox is not only in control of the design and creation of the experiences and features, it also funds the design and creation process.

69. By way of example, the owner of Fullflower Studio LLC, founded in 2020 by Anne Shoemaker and Luke Weber, participated in the Roblox Accelerator three times before founding the company. Weber, better known as "stickmasterluke," is both a Roblox developer and a paid Roblox employee. The couple incorporated Fullflower Studio shortly after Roblox insiders sold-off shares ahead of the company's 2021 public listing. Shoemaker has said she "came into some money" in 2020 that allowed her to staff up the studio. While the company's success appears legitimate, the timeline and insider access raise questions—including how a Roblox employee, like Luke Weber, could profit personally from game development while still employed by Roblox, simultaneously benefitting from an Accelerator program in which his fiancée Shoemaker participated. The Fullflower Studio highlights the incestuous reality between Roblox and supposedly "independent" third-party developers and creators.

70. Luke Weber has a long, successful relationship with Roblox. As early as 2011, Venture Beat featured Weber as a young up-and-coming developer,[44] and by 2019 some reports placed Weber as the second-richest Robux holder behind only Roblox Corporation themselves. Weber's most popular experience is Natural Disaster Survivor, which was created on or about March 8, 2008, prior to Weber becoming a Roblox employee and prior to founding Full Flower Studio. Since 2008, Natural Disaster Survival has registered over 3.8 billion visitors. While Weber is still an employee of Roblox, Weber has continued to update the Natural Disaster Survival experience, with the last updated date shown as September 24, 2025. Indeed, many of Roblox's most popular and unsafe experiences are created by current Roblox employees or parties related to Roblox, such that Roblox exercises substantial control

[44] Dean Takahaski, *18-year-old's games get 10M plays in Roblox game world,* GAMESBEAT (August 22, 2011 1:00 PM), (https://web.archive.org/web/20221209224753/https://venturebeat.com/games/18-year-olds-games-get-10m-plays-in-roblox-game-world/ (archived August 17, 2025).

over, and is responsible for, both the tools used to create an experience and the content of an experience itself.

71. Roblox also uses other programs such as Developer Exchange and Creator Rewards to exercise control over the creation of experiences.

72. As early as 2010, Defendant Roblox had already devolved into hosting and promoting sexually explicit content. Defendant Roblox's scripting language, which allows developers to manipulate avatar activity and interactions any way they want, was deployed to create scenarios where avatars engaged in simulated sexual activity.[45]

73. Defendant Roblox knows that simulated sexual activity pervades its platform, just as it knows that it has conveyed their commitment to ensuring the safety of children on the platform. There have been numerous reports of children's avatars being raped by other users' avatars. For example, in 2018, a seven (7) year-old girl's avatar was violently raped by two male avatars *on a playground* in a Roblox experience, which was witnessed by the girl's mother.[46] In describing the aftermath of this traumatic experience, the girl's mother explained, "I never in my wildest dreams would've ever imagined that I would have to talk with my seven-year-old about rape."[47]

74. Defendant Roblox's platform hosts a staggering number of experiences centered on simulated sexual activity. For instance, children can play in "condo games"— predatory digital environments, including houses, where users can remove their avatars' virtual clothing, revealing nudity, and engage in disturbing simulated sexual activities with other Roblox users.[48] They can also play games like "Public Bathroom Simulator Vibe," which allows access to users as young as nine

---

[45] *See, e.g.*, YouTube, *How to Do Roblox Sex Glitch*, https://www.youtube.com/watch?v=Zz97Q1SQE_k; *see also* YouTube, *Roblox Sex?*, https://www.youtube.com/watch?v=hyqCHG6nUYI.

[46] Savannah Levins, *North Carolina Mom Outraged After Roblox Game Depicts Violent Acts, Including Rape*, WFMYNews2 (June 30, 2018), https://www.wfmynews2.com/article/news/local/2-wants-to-know/north-carolina-mom-outraged-after-roblox-game-depicts-violent-acts-including-rape/83-569498171.

[47] *Id.*

[48] EJ Dickson, *Inside the Underground Strip-Club Scene on Kid-Friendly Gaming Site Roblox,* Rolling Stone (Sep. 12, 2021), https://www.rollingstone.com/culture/culture-features/roblox-virtual-strip-clubs-condo-games-sex-1197237/.

years old and enables users to simulate sexual activity in virtual bathrooms,[49] as well as virtual strip clubs, where child avatars perform sexually explicit acts, like giving lap dances to patrons.[50]

75. A recent investigative report also exposed a multitude of other exploitative experiences on Roblox that recklessly trivialize and gamify serious criminal conduct, including rape. The report confirmed that Defendant Roblox actively hosted over 600 “Diddy” games, with titles like “Survive Diddy,” “Run from Diddy Simulator,” and “Diddy Party,” which appear to recreate reported incidents involving the music mogul Sean Combs, publicly known as “Diddy.” Diddy was recently federal indicted and is undergoing trial for sex trafficking of minors and other grievous criminal charges regarding allegations surrounding reports about “freak-off” parties—events which, according to multiple lawsuits and media reports, allegedly involved forced drug use, violent assaults, and the sex trafficking of minors, including victims as young as 10 years old.[51]



*Examples of Roblox Games Modeled after Diddy’s Sex Trafficking Ventures*

76. This report also revealed that Defendant Roblox was actively hosting more than 900 Roblox accounts displaying variations of convicted sex trafficker Jeffrey Epstein’s name, such as “JeffEpsteinSupporter,” whose account Defendant Roblox knowingly knew was interacting with children on its servers.[52] Defendant Roblox also hosted on its severs games like “Escape to Epstein Island,” which, again, is a title that directly references one of the locations where for years Jeffery Epstein trafficked minors and other non-consenting individuals so he and others could sexually and

[49] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, Hindenburg Research (Oct. 8, 2024), https://hindenburgresearch.com/roblox/.
[50] Dickson, *supra* note 47.
[51] Hindenburg Research, *supra* note 45.
[52] *Id.*

physically abuse them. Defendant Roblox has knowingly and recklessly designed, hosted, and enabled an online platform marketed to children with rampant, sexually exploitative experiences.

77. As such, Defendant Roblox's product is defective in myriad ways, including but not limited the lack of an actual age verification process, Defendant Roblox's failure to ensure age appropriate "experiences," Defendant Roblox's defective monitoring, and Defendant Roblox's failure to warn parents and children of the dangers associated with the product, including but not limited to the product's sexploitation dangers.

78. Defendant Roblox is fully aware that grossly inappropriate, sexually explicit, and dangerous experiences pervade its product, and it allows them to continue to exist unchecked, despite the ability to control and/or eliminate them. Leaked internal Roblox documents reveal that Defendant Roblox not only actively monitored this type of content, but it also made decisions such as "[h]ow big of a 'bulge'" was acceptable, and, with the introduction of layered clothing for avatars (*i.e.*, allowing avatars to wear multiple layers of clothing), and whether players could be nude.[53] By allowing this type of content to exist and be easily accessible, Defendant Roblox designed a product with a panoply of games simulating sexual activity, such as condo games and virtual strip clubs.

79. The design of Defendant's product, in this way, knowingly assists, facilities, and supports sex trafficking by promoting and making as easy prey to sexual predators the children that use its product. Not only does the design of Defendant's product facilitate dangerous, inappropriate content to minor children users, its design features lack basic age-verification safety features which Defendant knows or should know are necessary to render its product not unreasonably dangerous to the children who it knows use it.

80. The effects of these games on children are devastating. Playing video games with explicit sexual content normalizes exploitative and predatory behavior, blurring the lines of what is acceptable in real life. This is particularly harmful for children, who are still developing their understanding of social norms and morality. When such behavior is depicted as humorous, exciting, or rewarded within a game, young players can internalize the idea that harassment or sexual exploitation is harmless or

[53] Joseph Cox & Emanuel Maiberg, *Leaked Documents Reveal How Roblox Handles Grooming and Mass Shooting Simulators*, Vice (Aug. 1, 2022), https://www.vice.com/en/article/leaked-documents-how-roblox-moderates-content-mass-shootings-grooming/.

even acceptable. This environment makes children susceptible to being groomed by predators and promotes grooming by giving predators sexually explicit tools in an environment intended and marketed to young children.

81. Studies support this connection. One study found that playing games with sexualized content was linked to increased rates of sexual harassment toward female targets, suggesting that such exposure desensitizes players to the real-world consequences of these actions. Another study showed that playing mature-rated games was associated with higher rates of risky sexual behavior years later, highlighting the long-term impact of exposure to sexualized or exploitative content.[54]

82. The interactive nature of games amplifies this effect. Unlike passive media, video games require players to actively participate in behaviors, including those that simulate harassment or exploitation, reinforcing the perception that such actions are normal or desirable. This environment not only desensitizes children but also makes them more likely to replicate these actions in real-world interactions and susceptible to grooming techniques.

83. The dangerous content on Roblox is not limited to online games. The recent investigative report discussed above found that a basic search for "adult" in Roblox revealed a group with 3,334 members "openly trading child pornography and soliciting sexual acts from minors."[55] And tracking these members unearthed additional Roblox groups engaged in the same criminal conduct, including one massive group with 103,000 members.[56] Yet, Defendant Roblox negligently and/or recklessly failed to implement any age restrictions on these criminal groups or remove them entirely, leaving them accessible to all users.[57]

///

///

///

---

[54] Jay G. Hull, et al., *A Longitudinal Study of Risk-Glorifying Video Games and Behavior Deviance*, J. Pers. Soc. Psychol. 2014 August; 107(2): 300–325, doi:10.1037/a0036058.
[55] Hindenburg Research, *supra* note 45.
[56] *Id.*
[57] *Id.*




*Public Chat Wall for a Group Named "Adult Studios," Where Users Openly Solicited Child Sexual Abuse Material*

84. Defendant Roblox is knowingly and/or recklessly hosting, enabling, and facilitating the creation and distribution of CSAM. Defendant Roblox's product has been negligently and/or recklessly designed to facilitate the creation and distribution of CSAM by providing tools and software designed to make virtual sex videos between avatars on Roblox. These videos are clearly marked with the .rbxl file extension—Defendant Roblox's proprietary file format—establishing that this content was created within the Roblox product. Moreover, on XVideos, a pornographic website, Roblox users seek out other users to simulate sexual acts within seemingly innocuous games, like Brookhaven, which is one of Defendant Roblox's most popular experiences and is available to all users, regardless of age.[58]

85. In sum, the online product / platform system that Defendant Roblox designed, hosts, and enables contradicts its representations of providing a safe product for minor children, demonstrating Defendant Roblox's blatant disregard for the safety of its youngest users, and revealing the company's prioritization of user engagement over its fundamental duty to protect young users.

86. For many years, Defendant Roblox, through its defective product, has knowingly and/or recklessly served as a conduit for child sexual predators seeking to find, groom, abuse, and exploit children. The defective design of the Roblox product creates an environment where children are susceptible to being groomed by predators without any monitoring, warnings or safeguards. Defendant Roblox, through its defective product, knowingly and/or recklessly invites predators to have unsupervised access to tens of millions of children and allows predators to freely move between inappropriate sexualized content and popular games to identify and target vulnerable children. Defendant Roblox's failure to design a safe product for children knowing predators are utilizing it

[58] *Id.*

demonstrates reckless indifference to the fundamental obligation not to create and foster an environment that places children at significant risk of sexual exploitation and abuse.

87. These systematic patterns of exploitation and abuse on the defective Roblox product follow a predictable and preventable sequence that Defendant Roblox has known about and facilitated for years: a predator misrepresents his or her age to other users on the product, cosplaying as a fellow child, methodically befriends the vulnerable young victim, and then strategically manipulates the child to move the conversation to other products, such as Discord.

88. As the recent *Bloomberg Businessweek* article titled *Roblox's Pedophile Problem* put it, "These predators weren't just lurking outside the world's largest virtual playground. They were hanging from the jungle gym, using Roblox to lure kids into sending photographs or developing relationships with them that moved to other online platforms and, eventually, offline."[59] This conduct by predators is being done openly on Roblox.

89. The Roblox platform system, for the reasons just described, serves as an initial access point to children for predators. The defective product creates the ideal grooming environment for predators providing predators with easy access to young children and all the tools to make grooming easy in an unsupervised environment. Media reports have repeatedly highlighted that Roblox "is being used as a first point of contact for predators."[60] The children, due to their underdeveloped brains and the overly sexualized content on Roblox, are more trusting and naïve, and do not recognize the danger of providing their usernames on other sites, which Defendant Roblox is monitoring and provides no warning to children or their parents about these dangers.

90. Once on another product, like Discord, predators escalate their exploitation and abuse by soliciting explicit material, like nude photos or videos of children doing sexually inappropriate acts, all of which constitute CSAM or child pornography. And while the ultimate solicitation of explicit photos or other criminal acts may occur on other products, Roblox serves as the critical facilitator that enables these predators to first identify, target, groom, and gain the trust of young victims through its product's defective design and inadequate safety measures.

[59] Carville & D'Anastasio, *supra* note 10.

[60] National Center on Sexual Exploitation, *The Dirty Dozen List '24: Roblox, A Mainstream Contributor to Sexual Exploitation*, https://endsexualexploitation.org/roblox/ (last updated Dec. 4, 2024).

91. Defendant Roblox's defective product and unregulated profit-driven virtual currency system exposes vulnerable children to sexual exploitation and abuse by predators who trade or extort Robux in exchange for explicit photos from children. Defendant Roblox knowingly and/or recklessly permits predators to offer children Robux often in exchange for these explicit photos or demand Robux to avoid publicly releasing previously provided explicit photos, directly tying Defendant Roblox's profits to the sexual exploitation of children and child sexual abuse material. Defendant Roblox's defective product, manipulative reward systems, and social dynamics, is intentionally designed to exploit children's developmental vulnerabilities, creating psychological pressures that predators weaponize for extortion.

92. Despite full awareness that Robux is being used to facilitate the generation of unlawful child sexual abuse material, Defendant Roblox negligently and/or recklessly fails to warn children or parents of the known dangers of predators utilizing the product to gain access to children, and Defendant Roblox directly profits financially by providing a platform that facilitates the generation and distribution of child sexual abuse material.

93. Despite full awareness of how its product exploits children, Defendant Roblox continues to profit from these tactics by collecting transaction fees on Robux exchanges. Its reckless indifference to the consequences of its deliberately engineered defective product highlights Defendant Roblox's prioritization of profit over the safety and well-being of its child users.

94. Defendant Roblox's defectively designed product negligently and/or recklessly permits predators to threaten children with false claims about possessing and potentially releasing explicit photos and coercing young victims into complying with criminal demands. Defendant Roblox monitors all online interactions between users. Defendant Roblox's monitoring is defective, because it is negligently and/or recklessly designed to permit and not flag interactions involving blackmail, threats, demands, or exchanging photos or Robux between and/or among users.

95. As a result of Defendant Roblox's defective monitoring, predators openly engage in predatory grooming where these predators employ immediate blackmail tactics, and the predators make no attempt to ingratiate themselves with the children but instead threaten them from the outset. The predator will often threaten to post nude photos of others online and claim that the child victim is

the person depicted unless the child complies with the predator's demands. This conduct is done openly on Defendant Roblox's defective product and is known to Defendant Roblox. Indeed, Defendant Roblox's monitoring software and human monitors are trained to not flag this conduct.

96. Regardless of how the initial grooming relationship begins on Roblox, the predators also often attempt to make in-person contact with the child with the intention of sexually assaulting the child. All conversations and interactions between the predator and the child on the Roblox product are done openly and monitored by Defendant Roblox's defective monitoring system. Through numerous well-documented and publicized cases, Defendant Roblox has long been aware of the systemic exploitation that its product enables and facilitates. For years, countless children have been sexually exploited and abused by predators they met on Roblox.

97. The dangerous progression from Defendant Roblox's online product to real-world sexual violence reveals the devastating consequences of the company's defective product. Defendant's product is designed to allow predators easy access to children and to use the product to groom and lure children from virtual contact to physical meetings, leading to harassment, kidnapping, trafficking, violence, and sexual assault of minors, all instances of which these children suffer as a direct result of Defendant Roblox's actions and inactions.

98. Through numerous well-documented and publicized cases, Defendant Roblox has long been aware that its defective product has enabled and facilitated the systemic sexual exploitation and abuse of children. For years, countless children have been sexually exploited and abused by predators as a result of the defective design of Defendant Roblox's product.

99. Many predators do not even hide their intentions, roaming Roblox with usernames like "@Igruum_minors," "@RavpeTinyK1dsJE," and "@EarlBrianBradley"—a reference to one of the most prolific pedophiles ever, who raped and molestd hundreds of children. Defendant Roblox is aware of these usernames, but its defective product does not flag them or shut them down. Instead, Defendant Roblox negligently and/or recklessly permits these users to roam the virtual online world openly and interact with young, unsuspecting children without any warnings or precautions.

///

///




*Results from an Account Search for "earlbrianbradley"*

100. Defendant Roblox's systematic endangerment of children has been publicly condemned by leading advocacy organizations. The National Center on Sexual Exploitation ("NCOSE") has consistently named Roblox to its "Dirty Dozen" list—an annual campaign exposing companies that facilitate, enable, or profit from sexual exploitation. NCOSE blasts Roblox for "treat[ing] child protection like a game."[61] According to NCOSE, "[u]ntil basic child protection standards are met, Roblox remains too high risk for kids."[62]

101. Parent reviews of Roblox on sites like *Common Sense Media* also document disturbing incidents of naked avatars, sexting, simulated sexual assault, and adult predators.[63]

102. The harm from this child abuse and exploitation extends beyond the initial victims. Through the design of its defective product and inadequate safeguards, Defendant Roblox has created an abusive ecosystem where former victims—children who were once exploited on Roblox—become teenage perpetrators who then prey upon younger users, making today's victims tomorrow's perpetrators. Indeed, researchers have repeatedly confirmed this victim-victimizer pipeline: when children are exposed to and victimized by sexual content, they are more likely to become desensitized teenagers and adults who then exploit younger users in the same ways.[64] In effect, Defendant Roblox contributes to this "raising of" predators who perpetuate the cycle of exploitation.

---

[61] *Id.*
[62] *Id.*
[63] Common Sense Media, *Parent Reviews of Roblox*, https://www.commonsensemedia.org/website-reviews/roblox/user-reviews/adult (last visited October 1, 2025).
[64] James RP Ogloff, et al., *Child Sexual Abuse and Subsequent Offending and Victimisation: A 45 Year Follow-Up Study*, Trends & Issues in Crime & Criminal Justice, No. 440 (Jun. 2012), https://www.aic.gov.au/sites/default/files/2020-

103. The magnitude of the harm caused by Defendant Roblox is devastating. Yet rather than resolving to warn parents of these known potential dangers and risks of using its product, Defendant Roblox minimizes these dangers through repeated misleading public statements. Defendant Roblox's Chief Safety Officer, Matt Kaufman, attempting to deflect attention from serious safety failures, told NPR, "I think we're losing sight of the tens of millions of people where Roblox is an incredibly enriching part of their life."[65] And while Kaufman publicly claims that "any time anything happens to a child that puts them at risk is one too many,"[66] Defendant Roblox simultaneously admitted to investors that it was "unable to prevent all such [inappropriate] interactions from taking place."[67] This calculated contradiction between public messaging and private admissions—telling parents that even one incident is unacceptable while simultaneously acknowledging to investors that abuse is inevitable—exposes Defendant Roblox's strategy of prioritizing public relations through hollow and misleading public statements over its fundamental duty to protect children.

**d. Roblox Knowingly Causes and Facilitates the Sexual Exploitation of Children.**

104. The reason that Defendant Roblox is overrun with harmful content and predators is simple: Defendant Roblox prioritizes user growth, revenue, and profits over child safety. For years, Defendant Roblox has knowingly prioritized these numbers over the safety of children through the actions it has taken and decisions it has made to increase and monetize users regardless of the consequences.

**1. Roblox prioritizes growth over child safety.**

105. From its inception, Defendant Roblox has focused on growth above all else, which has meant deliberately targeting, exploiting, and capitalizing on the underdeveloped child market, positioning itself as a place where kids can learn and play games in a safe environment. Recognizing that children have more free time, underdeveloped cognitive functioning, and diminished impulse

---

05/tandi440.pdf; M. Glasser, et al., *Cycle of Child Sex Abuse: Links Between Being a Victim and Becoming a Perpetrator*, British J. Psychiatry, 179, 6, 482-494 (Dec. 2001), https://doi.org/10.1192/bjp.179.6.482.

[65] Scott Tong & James Perkins Mastromarino, *Roblox Chief Safety Officer on New Safety Features, Past Cases of Child Abuse on the Platform*, WBUR (Nov. 18, 2024), https://www.wbur.org/hereandnow/2024/11/18/roblox-safety-features.

[66] *Id.*

[67] Roblox Corp., S-1 (Securities Registration Statement) (Nov. 19, 2020).

control, Defendant Roblox has exploited their vulnerability to lure them to its defective and unsafe product.

106. Defendant Roblox's business model allowed the company to attract significant venture capital funding from big-name investors like Kleiner Perkins and Andreessen Horowitz, putting enormous pressure on the company to prioritize growing and monetizing its users. To do so, Defendant Roblox made deliberate decisions to prioritize increasing user statistics at any cost, including putting children at risk. For example, while other products verified the ages of children and restricted access if a child fell below a certain age, Defendant Roblox welcomed and encouraged children of any age, implementing no age-verification safeguards and making signing up for an account easy enough for a six (6) year-old to do, which allowed even the youngest and most vulnerable to join.

107. In 2021, riding the explosive growth in users generated by the pandemic and the pandemic-driven enthusiasm for technology stocks, Defendant Roblox went public at a valuation of $41 billion USD, which brought new pressures. To satisfy the scrutiny and demands of public market investors, Defendant Roblox, like many unprofitable companies, prioritized rapid growth in revenue and user engagement metrics—like new user acquisition, daily active users, and average hours spent on the product—on the theory that profitability would follow once the business achieved sufficient scale and operating costs decreased as a percentage of revenue.

108. In pursuit of growth, Defendant Roblox deprioritized safety measures even further so that it could report strong numbers to Wall Street. For instance, Defendant Roblox executives rejected employee proposals for parental approval requirements that would protect children on the platform. Employees also reported feeling explicit pressure to avoid any changes that could reduce platform engagement, even when those changes would protect children from predators.[68]

109. As one former Roblox employee explained, "You're supposed to make sure that your users are safe but then the downside is that, if you're limiting users' engagement, it's hurting our metrics. It's hurting the active users, the time spent on the platform, and in a lot of cases, the leadership doesn't want that."[69] That same employee added, "You have to make a decision, right? You can keep

[68] *Id.* (square brackets in the original).
[69] *Id.*

your players safe, but then it would be less of them on the platform. Or you just let them do what they want to do. And then the numbers all look good and investors will be happy."[70]

110. By limiting safety measures, Defendant Roblox not only increased its users but also reduced the company's safety expenses as a percentage of its revenue—a key metric for Wall Steet, which views trust and safety costs as detrimental to Defendant Roblox's stock performance. Barclays, for example, identified its "downside case" for Defendant Roblox's stock as "additional safety investments due to its younger demographic . . . becom[ing] a drag on [earnings] margins."[71] Barclays also wrote that it viewed increased safety costs as a "negative" in Defendant Roblox's quarterly earnings.

111. During earnings calls for investors, Defendant Roblox frequently addresses questions from analysts about how trust and safety expenditures will evolve over time. Defendant Roblox's answers reveal that the company is hyper-focused on reducing its trust and safety expenses as a percentage of its revenue, showing that the company is not investing as much proportionally in trust and safety as the company continues to grow and attract millions of additional users.

112. For example, on Defendant Roblox's 2023 fourth quarter earnings call, an analyst praised the "really high level of efficiency" seen in the numbers for infrastructure and trust and safety expenditures and then asked how those figures would evolve over time.[72] In response, Mike Guthrie, Defendant's CFO, emphasized the company's goal of reducing expenses, stating, "cost to serve is the metric that we use and it's the metric that the [infrastructure] team owns . . . *they're working hard to drive that down* ... like you said, it's about 11% now. Ultimately, with higher efficiency, more use of artificial intelligence, we see that as a high single-digit number over the next few years."[73] He added, "we still think there's more to do there."[74]

///

///

///

---

[70] *Id.*
[71] Ross Sandler, Trevor Young & Alex Hughes, *Back on Track Following the 1H Hiccup*, BARCLAYS (Aug. 1, 2024).
[72] Roblox Corp., Q4 2023 Earnings Call (Feb. 7, 2024).
[73] *Id.* (emphasis added).
[74] *Id.*

113. At other times, Guthrie has reassured investors stating, "look for trust and safety [costs] to scale below linear as we grow"[75] and that Defendant Roblox was "quite happy with" trust and safety costs growing "at a lower rate than our bookings growth."[76]

114. Similarly, in the second quarter of 2024, CEO Baszucki highlighted that, "[i]mportantly, our infrastructure and trust and safety expenditures were 8% lower year-on-year."[77]

115. Once public, Defendant Roblox also decided to try to attract more adult users to its product — which it had historically touted as the "#1 gaming site for kids and teens."[78] With the market for underage users near saturation, Defendant Roblox shifted its growth strategy to attracting older users.

116. In its public offering filings, Defendant Roblox identified "age demographic expansion" as a key strategy, explaining that it planned to develop experiences and content that appealed to older users.[79] For Defendant Roblox, "aging up" had benefits beyond user growth—it was also more profitable. Older users offered a distinct financial advantage. While children spend more hours on Roblox, they do not "monetize" as well because they are more constrained in their ability to spend. In contrast, older users, who "have more direct control over their spend" and "monetize better," are far more lucrative—an outcome that Defendant Roblox said it predicted when it started to target older users.[80]

117. Defendant Roblox's executives repeatedly emphasized their strategy of "aging up" the product to attract older users. At the company's inaugural conference with an investment bank in September 2021, Defendant Roblox's CFO, Michael Guthrie, noted that Defendant Roblox had achieved "very good penetration of nine-to twelve-year-olds," and was focused on adding users over the age of 13.[81] One plan was to "improve the search algorithms such that older users were finding older content," or content tailored to their age-related demographic.[82]

///

---

[75] Roblox Corp., Q4 2022 Earnings Call (Feb. 15, 2023).
[76] Roblox Corp., Q3 2022 Earnings Cal (Nov. 8, 2023).
[77] Roblox Corp., Q2 2024 Earnings Call (Aug. 1, 2024).
[78] Roblox, *What Is Roblox*, *supra* note 4.
[79] Roblox Corp., S-1 (Securities Registration Statement) (Nov. 19, 2020).
[80] Roblox Corp., Q2 2022 Earnings Call (Aug. 10, 2022).
[81] Roblox at Goldman Sachs Communicopia Conference (Sep. 9, 2021), https://ir.roblox.com/events-and-presentations/events/event-details/2021/Goldman-Sachs-Communicopia/default.aspx.
[82] *Id.*

118. And at its annual Developer Conference, CEO David Baszucki encouraged developers to create experiences for older audiences, explaining that Defendant Roblox was rolling out features designed to appeal to older users, including use of real names, screen capture and sharing capabilities, video calls, and relaxed chat moderation.[83] These decisions, while framed as growth strategies, reflected Defendant Roblox's willingness to compromise safety, creating new vulnerabilities and more dangerous circumstances for children in its pursuit of a more profitable, older user base.

119. Defendant's executives consistently highlighted progress with the company's "aging up" strategy on every quarterly earnings call after this until the second quarter of 2023, when CEO Baszucki declared that Defendant Roblox had achieved its goal: "We're no longer talking about aging up. We are a platform for all ages."[84] He also revealed that developers had started to "build specific 17- plus experiences."[85] This progress was praised by Wall Street investment banks, who noted that aged-up experiences were a promising indicator of "potential sustainable growth tailwinds for Roblox," reinforcing the company's pivot toward maximizing profitability.[86]

120. These targeted attempts to expand Roblox's user base further demonstrate Roblox's close relationship with and control over developers and creators.

121. Despite Defendant Roblox's deliberate targeting of older users, it failed to implement any meaningful restrictions on contact between adult and child users or limit the mature content and experiences it solicited from developers to attract older audiences. When asked by an equity research analyst about aged-13-and-up experiences for older users, CEO Baszucki admitted, "I want to highlight, right now, *we don't have any only 13-and-up experiences*. We have 28% of the top 1,000 experiences having a majority of 13 plus [users], but *those are still experiences that are open to all ages*."[87] Similarly, despite urging developers to build experiences intended for users aged 17 and older, Defendant Roblox did not implement any access limitations for younger users.[88] Even investors

[83] Roblox Developers Conference 2023 Keynote (Sep. 8, 2023), https://www.youtube.com/watch?v=CwLThCghzA4.
[84] Roblox Corp., Q2 2023 Earnings Call (Aug. 9, 2023).
[85] *Id.*
[86] Benjamin Black, et al., *Bookings Back on Track*, Deutsche Bank (Nov. 4, 2024).
[87] Roblox Corp., Q3 2021 Earnings Call (Nov. 9, 2021) (emphasis added).
[88] Roblox Corp., Q4 2022 Earnings Call (Feb. 15, 2023).

recognized the connection between older users and the increased risks for children, questioning how Defendant Roblox planned to prevent inappropriate content from reaching younger users.

122. Not only did Defendant Roblox seek to increase adult users while knowing the risks that strategy posed to children, but it also sought to encourage relationships between users. At Defendant Roblox's 2023 Developers Conference, CEO Baszucki revealed Defendant Roblox's strategy to facilitate "real-life relationships" between users — *i.e.*, dating. While he deliberately avoided the word "dating," he then announced plans to build a product to support it: "I'm not going to use the D word but subsequent[] real-life relationships is going to happen, okay? And we're going to build a platform to support that."[89]

123. By the next year, in 2024, Baszucki explicitly acknowledged this strategy. He first acknowledged that online dating is "edgy" but then mocked his own safety team's concerns about the dangers — "the policy and safety told me [dating and real-life relationships] isn't within our current policy right now" — to which the audience shared in laughter.[90]

124. In short, for years, Defendant Roblox has negligently and/or recklessly sacrificed child protection—a longstanding issue for the company—in pursuit of growth and profit. This systematic subordination of child safety to business objectives reflects Defendant Roblox's continued choice to maximize its business goals while knowingly exposing children to preventable dangers through its product.

**2. Roblox facilities child sexual exploitation through the design of its app, inadequate safety features, and refusal to invest in basic safety protections.**

125. Defendant Roblox's pursuit of growth and profit over child safety is reflected in numerous actions it took or did not take and decisions it made related to the design and safety of its product. Had Defendant Roblox acted differently, the harm suffered by countless children, including Plaintiff, would not have occurred.

126. Defendant Roblox negligently and/or recklessly designed its product so that anyone can easily communicate with children, creating a virtual world where predators can use it to freely target

[89] Roblox Developers Conference 2023 Keynote (Sep. 8, 2023), https://www.youtube.com/watch?v=CwLThCghzA4.
[90] Roblox Developers Conference 2024 Keynote (Sep. 6, 2024), https://www.youtube.com/watch?v=HwbcWc2CwnM.

and groom children. Until November 2024, adult strangers could "friend" and chat with children of any age via direct messages and chat with them in an experience through direct messages even if they were not friends. While Defendant Roblox offered some adjustable parental controls for users under the age of 13, these children could bypass those controls simply by creating an alternate account identifying as a 13+ year-old user. By negligently and/or recklessly designing its product this way, Defendant Roblox stripped parents of basic protective options to prevent adult strangers from communicating with their children.

127. This practice contrasts sharply with other gaming products like Nintendo, which use preprogrammed dialogue options to tightly control user interactions.[91] By adopting a similar approach, Defendant Roblox could have significantly reduced—if not eliminated—the grooming and child abuse facilitated by its product because predators would not have been able to solicit any personal information or send any coercive or sexually suggestive messages.

128. Defendant Roblox further endangered children by negligently and/or recklessly introducing voice calls in November 2023. Called "Roblox Connect," this virtual call feature allows users to have a conversation through their avatars in real time. Concerns were immediately raised about this feature. For example, one user emphasized, "This is a bad idea Roblox, and especially on your platform because this is where most predators are coming from, and it makes it way easier for predators to prey on children."[92]

129. As Defendant Roblox contemplated and rolled out Roblox Connect, it knew that this feature would drastically increase the risk to children on its product. That is because another company implemented a similar feature with disastrous consequences. Omegle was a chat website that operated from 2009 to 2023. Omegle allowed users, including children, to engage in anonymous chats with strangers. In March 2010, Omegle introduced a video-chat feature. Despite efforts to monitor for mature and sexual content, the website became infamous for exposing minors to explicit material, predators, and exploitation. Omegle's failure to protect users led to numerous incidents, including criminal cases involving child sexual abuse material. In November 2023, the same month Defendant

---

[91] Carville & D'Anastasio, *supra* note 10.

[92] Josh Taylor, *Roblox Under Fire After Adding Controversial Voice Call Feature*, Dexerto (Nov. 15, 2023), https://www.dexerto.com/roblox/roblox-under-fire-after-adding-controversial-voice-call-feature-2384564/.

Roblox launched Roblox Connect, Omegle announced that it would cease operations. In shutting down, its founder highlighted the site's misuse: "[T]here can be no honest accounting of Omegle without acknowledging that some people misused it, including to commit unspeakably heinous crimes."[93] And he thanked one survivor for "opening my eyes to the human cost of Omegle."[94] Nevertheless, Defendant Roblox negligently and/or recklessly introduced voice calls the same month that Omegle shut down.

130. Defendant Roblox has negligently and/or recklessly failed to implement simple age and identity verification measures that would have protected children, including Plaintiff, using Defendant Roblox's product. For example, despite having software that can verify the age and identity of new users, Defendant Roblox instead allows users to create accounts without providing their name or email address — a policy that enables predators to easily create multiple anonymous accounts with different ages.

131. Defendant Roblox has negligently and/or recklessly failed to implement basic screening measures, such as utilizing the biometric age and identity verification software it already has in its possession, before allowing users to set up accounts on the product, which would ensure that known predators are not permitted on the product.

132. Defendant Roblox has negligently and/or recklessly failed to utilize its biometric age and identity verification software to ensure and require that accounts for minors are created and set up by adults at the time new accounts are created.

133. Defendant Roblox has negligently and/or recklessly failed to utilize its biometric age and identity verification software to ensure and require that newly created accounts for minors have the consent, approval and permission of an adult or guardian.

///

///

///

---

[93] Elizabeth Napolitano, *Omegle Shuts Down Online Chat Service Amid Legal Challenges*, CBS News (Nov. 9, 2023), https://www.cbsnews.com/news/omegle-shut-down-chat-service-legal-challenges-lawsuits/?ftag=YHFa5b931b.

[94] Joe Tidy, *Omegle: 'How I Got the Dangerous Chat Site Closed Down'*, BBC (Nov. 22, 2023), https://www.bbc.com/news/technology-67485561.

134. Defendant Roblox has negligently and/or recklessly failed to utilize its biometric age and identity verification software to ensure and require that any changes to the settings of accounts issued to minors are made by a legal adult.

135. Defendant Roblox negligently and/or recklessly failed to require children under 13 to provide their names and email addresses and obtain parental approval — a fundamental protection against predators — but refused to do so. This decision allowed the company to bypass certain protections that are mandated by federal law and designed to protect children. The Children's Online Privacy Protection Act ("COPPA") prohibits companies like Defendant from collecting, using, or disclosing the personal information of children under 13 without verifiable parental consent. COPPA was enacted because Congress recognized the heightened vulnerability of children on the internet. As the Federal Trade Commission ("FTC") noted the limited capacity of children to "understand fully the potentially serious safety and privacy implications" of sharing their personal information.[95] More recent international regulations are stricter. For example, the European Union's General Data Protection Regulation (GDPR) requires verifiable parental consent for children under 16.[96]

136. The FTC has outlined clear and acceptable methods for obtaining verifiable parental consent. These include: (a) providing a form for parents to sign and return; (b) requiring the use of a credit card or online payment that notifies parents of each transaction; (c) connecting parents to trained personnel via video conference; (d) offering a staffed toll-free number for parental verification; (e) asking knowledge-based questions to confirm identity; and (f) verifying a parent's photo-ID by comparing it to a second photo using facial recognition technology.[97]

137. Yet instead of implementing safeguards to comply with COPPA, Defendant chose to bypass these protections altogether. Defendant Roblox intentionally avoids requesting a name or email address during sign-up to sidestep the requirement of verifiable parental consent. In fact, former employees revealed that Defendant Roblox considered requiring verifiable consent but ultimately

---

[95] Federal Trade Commission, *Privacy Online: A Report to Congress* (1998), https://www.ftc.gov/sites/default/files/documents/reports/privacy-online-report-congress/priv-23a.pdf.
[96] Art. 8 GDPR; *see also* Consent to Use Data on Children, EU Agency for Fundamental Rights (https://fra.europa.eu/en/publication/2017/mapping-minimum-age-requirements-concerning-rights-child-eu/consent-use-data-children). Note that member states can lower the cutoff to 13, 14 or 15 if they choose.
[97] Federal Trade Commission, *Complying with COPPA: Frequently Asked Questions*, July 2020, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions.

resisted its implementation out of fear that such requirements might drive users away.[98] Consequently, creating a Roblox account is alarmingly easy, requiring less than sixty seconds and no meaningful oversight — a choice that prioritizes growth over the safety of its youngest users.[99]

138. Another easy-to-implement feature that would have improved safety is adding pop-up safety notices within chats and games to warn users about their behavior or the dangerous behavior of others. But Defendant Roblox's executives also rejected this change.[100]

139. Additionally, although Defendant Roblox knew that predators routinely operate dozens of Roblox accounts at the same time, the company chose not to implement basic blocking of digital identifiers — both the unique network addresses that track internet connections (Internet Protocol or IP addresses) and the permanent hardware identification numbers assigned to devices (Media Access Control or MAC addresses) that could prevent predators from creating multiple accounts.

140. Defendant Roblox negligently and/or recklessly failed to require adult users to verify phone numbers, which would create significant barriers to predators creating multiple accounts, despite knowing that this enables bad actors to easily create numerous anonymous accounts to target children.

141. Defendant Roblox negligently and recklessly failed to require users to verify their age by uploading a picture of either their or their parents' ID, a practice that many other applications employ. Doing so would have restricted the content available to young users and prevented predators from easily mispresenting their age, which is often their approach in targeting and grooming children. As one father told the press after seeing other users solicit his avatar for sex, "There is nothing to stop adults going on there and pretending they're kids."[101]

142. Defendant Roblox negligently and recklessly failed to implement restrictions on communications between adult accounts and children's accounts, something that many other platforms have done. It could also have restricted adult accounts from sending Robux to children's accounts, a feature that sexual predators frequently use to lure children.

---

[98] Hindenburg Research, *supra* note 45.
[99] Scott Tong & James Perkins Mastromarino, *Roblox Attempts to Bar Child Predators as Short Sellers Target the Popular Game Platform*, WBUR (Oct. 21, 2024), https://www.wbur.org/hereandnow/2024/10/21/roblox-child-predators-safety.
[100] Carville & D'Anastasio, *supra* note 10.
[101] Carl Stroud, *Horrified Dad Found Sick Messages from Paedo Predator in His Eight-Year Old Son's Roblox iPad Game*, The Sun (Feb. 15, 2017), https://www.thesun.co.uk/news/2872376/horrified-dad-found-sick-messages-from-paedo-predator-in-his-eight-year-old-sons-roblox-ipad-game/.

143. Defendant Roblox negligently and recklessly failed to create a separate, gated platform for children that excludes adults. By utilizing the facial recognition software, it already has, Defendant Roblox could easily create a space for children to enjoy Roblox games with very few, if any, adults present. Many digital service companies have adopted separate platforms for children, including, for example, Amazon and Netflix.

144. Defendant Roblox negligently and recklessly failed to place a higher age rating on its product in the iOS App Store and other online stores, to signal to parents that Roblox presented risks for children.

145. Defendant Roblox negligently and recklessly failed to provide clear warnings to parents about the presence of sexual predators on the platform, so that parents could make an informed decision about allowing their child on the platform and/or educate their child on how to stay safe on the platform.

146. Defendant Roblox negligently and recklessly failed to provide clear warnings to children about the presence of sexual predators on the platform and instructed children on how to stay safe on the platform.

147. Despite this negligent and reckless conduct, Defendant Roblox aggressively markets and promotes itself as an "industry leader" when it comes to child safety.[102] Central to this self-serving narrative is its "accomplishments" of investing in artificial intelligence ("AI") and machine learning systems supposedly designed to scan and monitor all communications on the product and prevent the sharing of inappropriate content and personally identifiable information.[103]

148. Yet this technology has proven grossly inadequate and insufficient to protect children. For example, Defendant Roblox's filters have inexplicable omissions. While Defendant Roblox blocks the word "Discord," users can bypass this filter by using the disc emoji (💿) or typing variations, like "iscord" or "cord."[104] That Defendant Roblox selectively blocks the words "Snap," "Snapchat," and "Discord" reveals that Defendant Roblox is fully aware of the dangers of off-product inappropriate

[102] Roblox Corp., Q1 2021 Earnings Call (May 11, 2021).
[103] Roblox, *Safety Features: Chat, Privacy & Filtering*, https://web.archive.org/web/20240714130904/https://en.help.roblox.com/hc/en-us/articles/203313120-Safety-Features-Chat-Privacy-Filtering (archived Jul. 14, 2024).
[104] Edwin Dorsey, *Problems at Roblox (RBLX) #5*, The Bear Cave (Oct. 17, 2024), https://thebearcave.substack.com/p/problems-at-roblox-rblx-5.

communications yet chooses not to close these loopholes. And while Defendant Roblox prevents users from sharing phone numbers in numerical format, it does nothing to stop users from spelling out the numbers.[105]

149. Similarly, while Defendant Roblox attempts to block the word "condo"—a term that, until recently, was widely used to identify sexualized experiences—countless external groups on platforms like Reddit and Discord are dedicated to helping users locate new explicit content on Roblox. As soon as Roblox removes one game, its ineffective safeguards allow the same game to be reuploaded almost immediately from a new account, perpetuating the cycle of explicit and harmful content.

150. Defendant Roblox intentionally and/or knowingly has ineffective safeguards in place, allowing experiences that have been removed to be reuploaded almost immediately from a new account, perpetuating the cycle of explicit and harmful content. External groups have capitalized on Defendant Roblox's weak moderation by guiding predators to these reuploaded games, with Fast Company easily identifying 150 Discord groups dedicated to exploiting Defendant Roblox's lack of enforcement.[106]

151. Beyond Defendant Roblox's deliberately ineffective technology, the company also employs a woefully inadequate number of human moderators to analyze and manage content on its platform. With only about 3,000 moderators, Defendant Roblox pales in comparison to platforms like TikTok, which, despite having only three times the number of users, employs more than ten times the number of moderators at 40,000.[107] Defendant Roblox attempts to justify this disparity by claiming "[y]ou really can't judge the quality of these moderation systems by the number of people."[108] But the reality tells a different story. Defendant Roblox's moderators, many of them overseas contractors, report being overwhelmed by an unmanageable volume of child safety reports, making it impossible to address all concerns effectively and leaving countless safety issues unresolved.[109]

///

---

[105] *Id.*
[106] Burt Helm, *Sex, Lies and Video Games: Inside Roblox's War on Porn*, Fast Company (Aug. 19, 2020), https://www.fastcompany.com/90539906/sex-lies-and-video-games-inside-roblox-war-on-porn.
[107] Carville & D'Anastasio, *supra* note 10.
[108] Scott Tong & James Perkins Mastromarino, *Roblox Chief Safety Officer on New Safety Features, Past Cases of Child Abuse on the Platform*, WBUR (Nov. 18, 2024), https://www.wbur.org/hereandnow/2024/11/18/roblox-safety-features.
[109] Carville & D'Anastasio, *supra* note 10.

152. Even the safety data that Defendant Roblox touts is flawed and only underscores the growing dangers created by the company's defective product. For example, Defendant Roblox proudly points to its low percentage of reports to the National Center for Missing and Exploited Children ("NCMEC") — the leading U.S. nonprofit organization tasked with preventing child exploitation and assisting in the recovery of missing children. Defendant Roblox claims that it accounts for less than .04% of reports made to NCMEC. But this data is entirely self-reported and therefore depends on Defendant Roblox's deliberately ineffective content moderation and safety team. This self-reported data to NCMEC, flawed and limited as it is, also reveals a disturbing trend: Defendant Roblox's reports about suspected child sexual exploitation have surged over the years, from 675 reports in 2019 to 13,316 reports in 2023.[110]

153. Defendant Roblox also boasts that just "0.0063% of [its] total content was flagged as violating" policies.[111] But Defendant Roblox itself controls the systems responsible for identifying and flagging violative content.[112] These lower percentages are thus a reflection not of safety but of Defendant Roblox's efforts to minimize the appearance of problems through its own inadequate reporting and enforcement mechanisms. By hiding behind self-serving metrics and refusing to take meaningful action, Defendant Roblox has fostered an environment where children are subjected to irreparable harm while the company continues to reap financial rewards.

154. And the very existence of Defendant Roblox's trust and safety "data" on inappropriate communications to train its AI systems contradicts its claim that "one is too many" when it comes to the sexual exploitation of children. This data exists only because countless instances of abuse, exploitation, and predatory interactions have already occurred. Defendant Roblox's reliance on this data to train its AI systems exposes the reality that its so-called safety measures are not designed to prevent these atrocities. Instead of creating a secure environment where such harm never occurs and ensuring that such interactions never happen in the first place, Defendant Roblox uses the suffering

[110] Scott Tong & James Perkins Mastromarino, *Roblox Attempts to Bar Child Predators as Short Sellers Target the Popular Game Platform*, WBUR (Oct. 21, 2024), https://www.wbur.org/hereandnow/2024/10/21/roblox-child-predators-safety.
[111] Vikki Blake, *Roblox Reported Over 13,000 Incidents to the National Center for Missing and Exploited Children in 2023*, GamesIndustry.biz (Jul. 23, 2024), https://www.gamesindustry.biz/roblox-reported-over-13000-incidents-to-the-national-center-for-missing-and-exploited-children-in-2023.
[112] *Id.*

and trauma of children as the foundation for its trust and safety systems. This cycle underscores the company's prioritization of optics over genuine protection, leaving its youngest users at the mercy of its neglect.

155. Defendant Roblox's own developers even admit that Roblox is unsafe for children.[113] Online forum discussion posts are replete with developers writing that they would not allow their own children to use the platform, citing pervasive issues with Defendant Roblox's child safety policies. Many of these posts highlight the platform's systemic failures and suggest straightforward changes Defendant Roblox could implement to create a safer environment but has consistently ignored, for example:

a. "Unfortunately, it is worse now due to Roblox's moderation being so abysmal and Roblox being a far more widespread platform. Creeps flock aplenty when before the creep:kid ratio was much much lower… Roblox has no interest in actually fixing the issues so long as the bad press doesn't end up viral."[114]

b. "No. Roblox is not safe for children. The amount of NSFW [Not Safe for Work] I see on this platform on a daily basis is unbelievable. I'm surprised COPPA [Children's Online Privacy Protection Rule] hasn't taken any action."[115]

c. "I believe they need to automatically rate these games for older audiences, if not, you know, removing them entirely. I could keep going on about this issue, but it's just beating a dead horse at this point."[116]

d. "Roblox got banned for bad moderation; Turkey banned it to 'protect children,' and they are not wrong. The amount of visits from 10 of these games is, in summary, 100 million+. I don't want to know how many of these children have seen nudity or even developed a p*rn addiction. But that is a big problem with Roblox doing almost nothing to prevent it."[117]

---

[113] Edwin Dorsey, *Problems at Roblox (RBLX) #5*, The Bear Cave (Oct. 17, 2024), https://thebearcave.substack.com/p/problems-at-roblox-rblx-5.
[114] *Id.*
[115] *Id.*
[116] *Id.*
[117] *Id.*

156. These statements, coming from individuals familiar with Defendant Roblox's operations, paint a picture of an environment rife with neglect, where harmful content flourishes, predators thrive, and Defendant Roblox repeatedly fails to act even in the face of widespread and urgent warnings.

**3. Roblox's recent safety changes are woefully inadequate and fail to address years of neglect and harm caused by its platform / product.**

157. Only after years of mounting pressure, Defendant Roblox recently announced changes to its child safety features. These changes were prompted not by the years of police reports and widespread media coverage but by a scathing report published by a well-known short seller accusing the platform of being a "pedophile hellscape for kids."[118] Released on October 8, 2024, the report sparked public outrage, detailing many of the issues described above that Defendant Roblox had long ignored.

158. A little more than a month later, Defendant Roblox announced a series of alleged changes, including removing the ability to message others outside of experiences for under 13-year-old users;[119] giving parents a separate dashboard where they can monitor a child's Roblox account; viewing the child's friend list; setting spending control; managing screen time;[120] preventing games from using chalkboard writings where people could get around the censoring of communications;[121] and implementing restrictions to stop under 13-year-old users from accessing new Roblox games that are awaiting maturity ratings.[122]

159. These changes could all have been implemented years ago. None of them involve any new or groundbreaking technology. Defendant Roblox only implemented these changes when concern reached a critical mass sufficient to threaten its stock price.

160. Further, these changes are little more than window dressing — too little, too late, and woefully inadequate. Most fundamentally, Defendant Roblox *still allows* adults to contact and message

---

[118] Hindenburg Research, *supra* note 45.
[119] *Roblox Tightens Messaging Rules for Under-13 Users Amid Abuse Concerns*, Reuters (Nov. 18, 2024), https://www.reuters.com/technology/roblox-tightens-messaging-rules-under-13-users-amid-abuse-concerns-2024-11-18/.
[120] Robert Booth, *Roblox to Give Parents More Control Over Children's Activity After Warnings Over Grooming*, The Guardian, (Nov. 18, 2024), https://www.theguardian.com/technology/2024/nov/18/roblox-to-hand-parents-more-control-over-their-childrens-activity.
[121] *Id.*
[122] *Id.*

children. Defendant Roblox only banned user-to-user messaging for users under the age of 13 *outside of experiences*. Predators can still message children on public chats while playing games; indeed, Defendant Roblox has left child predators' blueprint for finding children on the product intact since predators have always found children by playing games they know that children will frequent.[123]

161. Despite employing age verification tools to gain access to some of its platform's features, Defendant Roblox also failed to address core safety issues like the product's lack of age verification and refusal to require parental consent to create an account. And, despite its promises to ensure safety of minor users, Defendant Roblox did not implement any sort of identity check to prevent registered sex offenders from making accounts.

162. In fact, recently, in April 2025, a research firm in the U.K. demonstrated just how easy it still is for predators to find and groom children and move the conversation to another products.[124] Because Roblox still allows adult users to message children *in games*, predators can use the public chat functions in games to groom child users and ask for their usernames on other platforms. And, for chat within games, Defendant Roblox's default settings for children under the age of 13 is to allow "everyone" to chat with these children, seamlessly facilitating predators' access to children.[125] The key findings from this report included that "[a]dults and children can chat with no obvious supervision" and that "[t]he safety controls that exist are limited in their effectiveness and there are still significant risks for children on the platform."[126]

163. Further, just as Defendant Roblox rolled out these changes, it simultaneously introduced a new "Party" feature in an attempt to counteract any potential loss in user engagement.[127] Because Defendant Roblox knew that users often turned to other products to communicate while playing games and because Defendant Roblox knew that its safety changes would reduce key user engagement

---

[123] In an interview with BBC News, a reporter confronted Baszucki with a series of experiences that her 11-year-old son was recommended. One of these included "Late Night Boys and Girls Club RP," which had a maturity rating of "mild." In this experience, players would still be permitted to message each other in the game. Zoe Kleinman, *Gaming Empire: The Roblox Story,* BBC News (March 17, 2025). https://www.youtube.com/watch?v=LQztK0MCUAc.
[124] Revealing Reality, *A Digital Playground: The Real Guide to Roblox* (Apr. 13, 2025), https://think.revealingreality.co.uk/roblox-real-guide.
[125] Parental Controls Overview, Roblox, https://en.help.roblox.com/hc/en-us/articles/30428310121620-Parental-Controls-Overview (last accessed May 10, 2025).
[126] Revealing Reality, *supra* note 150.
[127] Rebecca Ruiz, *Roblox's New Party Feature Makes Discord Obsolete*, Mashable (Dec. 2, 2024), https://mashable.com/article/roblox-party-discord.

metrics, it sought to capture that traffic (and revenue) and replace any loss of engagement with the Party feature. While the Party feature is currently only available for users aged 13 and older, such limitations are hollow without utilizing the age verification software that Roblox already possesses. And the fact that Defendant Roblox has stated that it is exploring making such a feature available to younger users demonstrates that, far from prioritizing safety, Defendant Roblox's real focus is protecting its bottom-line.[128]

164. Defendant Roblox has also engaged in a deceptive public relations campaign using ostensibly independent online safety organizations to influence the narrative around these changes. For instance, Defendant Roblox has leveraged its ties to groups like the Family Online Safety Institute ("FOSI"). An online parenting magazine favorably quoted Stephen Balkam, FOSI's CEO, as endorsing Defendant Roblox's new features as a win for child safety.[129] What the article omitted, however, is that Defendant Roblox's own Vice President of Civility and Partnerships, Tami Bhaumik, serves as FOSI's board chair — an obvious conflict of interest.[130] This calculated relationship exposes how Defendant Roblox manipulates public perception by using seemingly independent safety organizations as mouthpieces to shape the narrative in its favor.

///

///

///

[128] *Id.*

[129] Anna Halkidis, *What Roblox's Latest Changes Mean for Your Kids' Online Safety*, Parents (Nov. 18, 2024), https://www.parents.com/roblox-new-parental-controls-8747405.

[130] *FOSI Welcomes Roblox Vice President as New Board Chair*, FOSI (Oct. 12, 2022), https://www.fosi.org/about-press/fosi-welcomes-roblox-vice-president-as-new-board-chair/.




*Stephen Balkam's LinkedIn post revealing his connection to Roblox in a post praising Roblox's changes.*[131]

165. Recently, in April 2025, Defendant Roblox repeated this same deceptive playbook of bragging about new safety features that, in reality, are glaringly deficient. This update included three new features: first, allowing parents to block children from playing specific games; second, granting parents the power to block people on their child's friends list; and third, giving parents visibility into the games that their child spends the most time in.[132]

166. None of these parental controls address the underlying deficiency with Roblox that facilitates grooming and predation on children—adult access to and communication with children. Without allowing parents to see who their child is messaging and what the messages say, parents lack the information necessary to determine which accounts to block on their child's friend list. A list of the top twenty games that a child plays does not tell a parent which games children are having inappropriate interactions and communications in. Moreover, blocking specific games is ineffective when, as discussed above, inappropriate games are re-posted as soon as they are taken down. Indeed, barely a week later, the U.K. research firm discussed above demonstrated just how easy it is for adults to continue to find children, groom them, and then move the communications off Roblox, even after Defendant Roblox announced these safety updates.[133]

---

[131] Stephen Balkam's Post, LinkedIn, https://www.linkedin.com/posts/stephenbalkam_what-robloxs-latest-changes-mean-for-your-activity-7264409332950220801-WCDF (last visited Jan. 6, 2025).

[132] Matt Kaufman, *New Tools for Parents to Personalize Their Child's Experience on Roblox*, ROBLOX (Apr. 2, 2025), https://corp.roblox.com/newsroom/2025/04/new-parental-controls-on-roblox.

[133] *A Digital Playground: The Real Guide to Roblox*.

167. Defendant Roblox's deceptive playbook would not be complete without a misleading public relations campaign, where industry-funded safety "experts" praise Roblox's safety update. For example, Defendant Roblox's press release announcing these updates quotes Larry Magid, the CEO of ConnectSafely, as saying, "Roblox has consistently provided parents with tools that enable their children to enjoy the platform, while helping protect them against online risks. These new friend- and experience-blocking tools provide parents with even more ways to help ensure their children are using it safely. Safety, fun, and adventure are not mutually exclusive." What the press release did not say is that ConnectSafely—a non-profit ostensibly focused on educating people about internet safety—is funded by tech companies and lists Defendant Roblox as one of its "supporters."[134]




*ConnectSafely's list of supporters on its website.*

168. A few weeks later, Magid was quoted again in praise of Roblox, this time in a *Newsweek* article championing Roblox as a "trusted playground" for kids: "I would put them very high up on the list of companies that seem to care. They actually have a vice president of civility. It's unheard of to have somebody at that level of the company that focuses on civility. They really work very hard to make it a friendly, comfortable, civil environment for young people."[135] Again, this article made no mention of Magid's organization's financial ties to Roblox.

169. FOSI CEO Stephen Balkam was also quoted in the *Newsweek* piece, claiming that Roblox was "top-of-class" for its safety features and even repeating Roblox's own party line that safety is "part

[134] ConnectSafely, *Supporters*, https://connectsafely.org/about-us/supporters/ (last accessed May 10, 2025).

[135] Katherine Fung, *How Roblox Became a Trusted Playground for Millions of Kids*, Newsweek (Apr. 23, 2025), https://www.newsweek.com/how-roblox-became-trusted-playground-millions-kids-2057601.

of [Roblox's] DNA."[136] Again, this article omitted FOSI's ties to Roblox, financial and otherwise, thereby deceptively pushing a narrative of Roblox as a "safe" product for kid.

## V. FACTUAL ALLEGATIONS: DISCORD

### a. Discord Offers a Communication App that It Markets to Children.

170. Discord is a communications app that allows users to chat over voice, video, and text messaging. Discord is organized into chat groups called "servers," which are topic-based virtual spaces that users can join to engage in conversations with others. Servers are organized into subtopics called "channels," which are divided into text and voice channels. In text channels, users post messages, upload files, and share images. In voice channels, users communicate through voice or video chat and screen share. Users can also send private messages via voice, video, or text.

171. Launched in 2015, Discord quickly became the top app for gamers looking to communicate while playing videogames. The company's founders shared a love of video games and created a service for gamers to seamlessly communicate with each other. Discord has since expanded to include a wider audience of anyone looking to communicate with others about an endless array of topics. As Discord puts it, "Discord is now where the world talks, hangs out, and builds relationships" — "Discord lets anyone create a space to find belonging."[137]

172. Although many users on Discord are adults, Discord directly markets its app to young users. For example, Discord advertises its functionality for school clubs and offers "Student Hubs," which are "dedicated places for students on Discord that make it easy to meet classmates from your own school, discover their communities on Discord, and share your servers for your fellow classmates to join."[138] Discord also markets to young users with features such as "custom emoji, stickers, soundboard effects and more to add your personality to your voice, video or text chat."[139] According to Discord, these features are designed to "make your group chats more fun."[140]

///

---

[136] *Id.*

[137] Discord, *Create Space for Everyone to Find Belonging*, https://discord.com/company (last visited Feb. 11, 2025).

[138] Discord, *Discover Your Next Favorite Campus Club in Student Hubs* (Aug. 22, 2022), https://discord.com/blog/discover-your-next-favorite-campus-club-in-student-hubs.

[139] Discord, *Create Space for Everyone to Find Belonging*, https://discord.com/company (last visited Feb. 11, 2025).

[140] *Id.*




*Example of a custom emoji from Discord's website.*[141]

173. In recent years, Discord has exploded in popularity among young users, driven in part by the pandemic. As The New York Times explained in its article How Discord, Born from an Obscure Game, Became a Social Hub for Young People, "While adults working from home flocked to Zoom, their children were downloading Discord to socialize with other young people through text and audio and video calls in groups known as servers."[142] Given this influx of young people, which has only grown since the pandemic, the average age of a Discord user is 16 years old.[143]

174. Creating an account on Discord is extremely easy. Users must provide only an email address, display name, username, password, and birthdate. Users can then access Discord for free on their computers, tablets, and cellular devices.

///

///

///

[141] Discord, *Custom Emojis*, https://support.discord.com/hc/en-us/articles/360036479811-Custom-Emojis#h_01H06JVDAV2VKZBTRGJDY8NBV7 (last visited Feb. 11, 2025).
[142] Kellen Browning, *How Discord, Born from an Obscure Game, Became a Social Hub for Young People*, N.Y. Times (Dec. 29, 2021), https://www.nytimes.com/2021/12/29/business/discord- server-social-media.html.
[143] Super League, *An Introductory Look into Discord*, https://www.superleague.com/post/an- introductory-look-into-discord.




*Discord Sign-up Screen*

175. While Discord's Terms of Service prohibit users under 13, Discord does not verify age or identity. As a result, countless Discord users are under 13, many of whom state their real age in their bios, tell other users their real age in chats, and post pictures showing their real age. There are children as young as eight years old using Discord.[144]

176. Although Discord offers certain safety features, Discord does not default to the highest safety settings upon account creation. For example, by default, all users, including those under 18, can receive direct messages from another user within the same server, allowing them to send and receive private messages from strangers. And even when parents set more restrictive settings, children can simply change those settings to whatever they desire

177. Certain content on Discord is "age-restricted," meaning in theory that children under 18 cannot access it. Server owners can self-designate specific channels in a server as age-restricted. For

---

[144] Kellen Browning, *5 Ways Young People Are Using Discord*, N.Y. Times (Dec. 29, 2021), https://www.nytimes.com/2021/12/29/business/discord-users-gen-z.html.

years, however, Discord did not allow server owners to self-designate entire servers as age-restricted, and so minors could easily access servers with age-restricted content even if designated age-restricted channels in the server were blocked. Discord only recently provided server owners with the ability to self-designate entire servers as age-restricted.

**b. Discord Lures Parents into Letting Their Kids Use Discord with Promises of Safety.**

178. Since its inception, Discord has assured parents that its app provides a safe place for children to spend their time interacting with others. According to Discord, "in May 2015, Discord began as a way for us to all play games together, better. And Safer."[145] "We've always wanted Discord to be a place where one could safely play games with friends."[146]

179. For years, Discord has promised that it has a "zero-tolerance policy" for anything relating to the sexual exploitation of children. For example, in Discord's July – September 2022 Transparency Report, Discord emphasized that it "has a zero-tolerance policy for anyone who endangers or sexualizes children."[147] Similarly, in a July 2023 website post titled "Discord's Commitment to Teen and Child Safety," Discord assured parents that it "has a zero-tolerance policy for inappropriate sexual conduct with children and grooming," with "special attention given to predatory behaviors such as online enticement and the sexual extortion of children."[148]

180. Discord promises parents that its app is different from other communication products when it comes to child safety, assuring parents that "[w]e built Discord to be different and work relentlessly to make it a fun and space for teens.[149] "Discord is built on Safety," and "[s]afety is at the core of everything we do and a primary area of investment as a business."[150]

181. Discord specifically assures parents that its app is designed to keep children safe and that it defaults to safety. Discord, for instance, in a website post titled "Settling into School with Discord,"

---

[145] Discord, *Discord Safety Boost* (Mar. 28, 2017), https://discord.com/blog/discord-safety-boost.
[146] *Id.*
[147] Discord, *Discord Transparency Report: July – September 2022*, https://discord.com/blog/discord-transparency-report-q3-2022.
[148] Discord, *Discord's Commitment to Teen and Child Safety* (July 11, 2023), https://discord.com/safety/commitment-to-teen-child-safety.
[149] *Id.*
[150] Discord, *Discord's Commitment to a Safe and Trusted Experience* (May 12, 2022), https://discord.com/safety/360043700632-discords-commitment-to-a-safe-and-trusted-experience; https://discord.com/safety/commitment-to-teen-child-safety.

informs parents that "[m]any teams across Discord work together to ensure that your teen finds belonging by building products and policies with safety by default."[151] And in a website post titled "Discord's Commitment to Teen and Child Safety," Discord promises parents that "[w]e make our products safe spaces by design and default. Safety is and will remain part of Discord's core experience."[152]

182. Likewise, according to Discord's 2023 "Parent's Guide to Discord," "Discord has default settings designed to keep minors safe, such as automatically scanning direct messages for explicit images and videos."[153] Those default settings, according to Discord, include "Teen Safety Assist," which (1) "automatically blur[s] media that may be sensitive in direct messages and group direct messages with friends, as well as in servers," and (2) sends "safety alerts" to teen users when they receive a direct message from a user for the first time."[154]

183. While Discord represents that its app is designed to default to safety, it simultaneously instructs parents on how to change the default safety settings to keep their child safe. For years, Discord has consistently assured parents that they can use the company's "tools to protect [their children] from inappropriate content or unwanted contact."[155] Discord, for example, tells parents they can turn on an "explicit image filter" that will "[a]utomatically block direct messages that may contain explicit images."[156] Discord also informs parents that they can disable the direct message setting that allows anyone in a server to privately message their children. Discord also promises

---

[151] Savannah Badalich, *Settling into School with Discord*, Discord (Sept. 28, 2021), https://discord.com/safety/settling-into-school-with-discord.
[152] Discord, *Discord's Commitment to a Safe and Trusted Experience* (May 12, 2022), https://discord.com/safety/360043700632-discords-commitment-to-a-safe-and-trusted-experience; https://discord.com/safety/commitment-to-teen-child-safety.
[153] Discord, *Parent's Guide to Discord*, https://web.archive.org/web/20230714165101/https:/connectsafely.org/wp-content/uploads/2021/09/Parents-Guide-to-Discord.pdf (archived July 14, 2023).
[154] Savannah Badalich, *Building a Safer Place for Teens to Hang Out*, Discord (Oct. 24, 2023), https://discord.com/safety/safer-place-for-teens.
[155] Discord, *Helping Your Teen Stay Safe on Discord* (May 12, 2022), https://discord.com/safety/360044153831-helping-your-teen-stay-safe-on-discord; Discord, Helping Your Teen Stay Safe on Discord, https://web.archive.org/web/20230711200552/https://discord.com/safety/360044153831-helping- your-teen-stay-safe-on-discord (archived July 11, 2023).
[156] Discord, *Helping Your Teen Stay Safe on Discord*, https://web.archive.org/web/20230711200552/https://discord.com/safety/360044153831-helping- your-teen-stay-safe-on-discord (archived July 11, 2023).

parents that they can change their child's "Friend request settings" to limit who can send them a friend request—i.e., "Everyone," Friend of friends," or "Server members."[157]

184. Discord's CEO and co-founder Jason Citron recently reiterated many these assurances nearly verbatim in his January 31, 2024, testimony to the U.S. Senate as part of its hearing on "Big Tech and the Online Child Sexual Exploitation Crisis." Citron began his written testimony "by stating clearly that Discord has a zero-tolerance policy for content or conduct that endangers or sexualizes children."[158] Discord, according to Citron, "has a zero-tolerance policy for inappropriate sexual conduct with children, meaning inappropriate sexual contact between adults and teens on the service, with special attention given to predatory behaviors such as online enticement and the sexual extortion of children, commonly referred to as 'sextortion."[159]

185. He also emphasized Discord's "multi-pronged approach" to child safety, including the company's "approach to product development, whereby we implement a rigorous 'safety by design' practice when developing products."[160] As Citron elaborated, "[b]ecause safety is critical to our core mission, Discord takes a 'safety by design' approach to our work."[161]

186. Citron also highlighted Discord's "sophisticated tools" for parents to keep their children safe, as well as the company's "features designed to keep teens safe on our platform," such as Teen Safety Assist, which flags "potentially unwanted conversations to teen users in Discord" and "automatically blur[s] potentially sensitive media to teens in DMs, GMS, and in servers."[162]

**c. In Reality, Discord is a Digital and Real-Life Nightmare for Children.**

187. Although Discord assures parents that it has zero tolerance for content or conduct that endangers children and that its app is built on safety, the company, in fact, has created and maintains an environment in which the sexual exploitation of children is rampant and thriving. The result has been devastating, with countless children suffering irreversible harm.

---

[157] *Id.*
[158] Hearing Before the U.S. Senate Committee on the Judiciary, Big Tech and the Online Child Exploitation Crisis, Testimony of Jason Citron, CEO and Co-Founder of Discord Inc. (Jan. 31, 2024), https://www.judiciary.senate.gov/imo/media/doc/2024-01-31_-_testimony_-_citron.pdf.
[159] *Id.*
[160] *Id.*
[161] *Id.*
[162] *Id.*

**1. Discord hosts and promotes dangerous and illegal sexual content.**

188. Discord is overflowing with sexually explicit images and videos involving children, including anime and CSAM—i.e., child pornography. Discord provides access to these materials not only to adults but also to child users, creating an ecosystem that facilitates pedophilia and exposes children to this unlawful content.

189. The content of this material is beyond disturbing. For example, numerous Discord servers contain anime images of children being brutally assaulted and raped by male adults.




*Examples of images obtained on Discord servers by the National Center on Sexual Exploitation.*[163]

190. Discord is also permeated with actual child pornography, or CSAM, hosting hundreds if not thousands of servers dedicated to trading and sharing CSAM. For example, in a June 2023 article, NBC News reported that "[i]n a review of publicly listed Discord servers created in the last

[163] National Center on Sexual Exploitation, *Compilation of Proof*, https://endsexualexploitation.org/wp-content/uploads/July-23_Proof-Section-Compilation_-2023DDL_Discord.pdf.

month," it "identified 242 that appeared to market sexually explicit content of minors, using thinly veiled terms like 'CP' that refer to child sexual abuse material."[164]

191. Predators themselves even admit that Discord is a go-to app for them for finding and sharing CSAM. In February 2024, a nonprofit called Protect Children released a report, "Tech Platforms Used by Online Child Sexual Abuse Offenders," which contained survey data from anonymous individuals searching for CSAM on the dark web. That survey revealed that Discord is one of their "top platforms" for searching for, viewing, or sharing CSAM.[165] Based on the results of this survey, the report found an "unmistakable overlap" between "the platforms most used for viewing and sharing CSAM and the platforms most popular among children and young people."[166]

192. Through numerous well-documented and publicized cases, Discord has long been aware of the proliferation of CSAM and similar material that its app enables and facilitates, including because in some of these cases, Discord reported the material to the National Center for Missing and Exploited Children, which then reported the material to the authorities.

193. From its beginning, Discord has been at the center of numerous criminal cases involving CSAM. According to court documents from a federal case involving a vast CSAM enterprise and conspiracy, between 2016 and 2018, ten men "utilized chatrooms on the online service 'Discord'—an application designed for online gaming communities that allows users to engage in text chat and share images and videos—to produce and exchange child pornography."[167] They pled guilty and were sentenced to long prison terms. Similarly, according to court documents in another case, between 2019 and 2020, a North Carolina man was able to use Discord to chat about and trade CSAM.[168] He pled guilty and was sentenced to 240 months in federal prison.

///

---

[164] Ben Goggin, *Child Predators Are Using Discord, a Popular App Among Teens, for Sextortion and Abductions*, NBC News (July 21, 2023), https://www.nbcnews.com/tech/social- media/discord-child-safety-social-platform-challenges-rcna89769.

[165] Protect Children, *Tech Platforms Used By Online Child Sexual Abuse Offenders* (Feb. 2024), https://bd9606b6-40f8-4128-b03a-9282bdcfff0f.usrfiles.com/ugd/bd9606_0d8ae7365a8f4bfc977d8e7aeb2a1e1a.pdf.

[166] Id.

[167] U.S. Dep't of Justice, *Ten Men Sentenced to Prison for Their Roles in a Child Exploitation Enterprise and Conspiracy* (Oct. 1, 2020), https://www.justice.gov/opa/pr/ten-men-sentenced- prison-their-roles-child-exploitation-enterprise-and-conspiracy.

[168] U.S. Dep't of Justice, *Man in Possession of Child Sexual Abuse Material Is Sentence to 20 Years in Prison* (Feb. 17, 2023), https://www.justice.gov/usao-wdnc/pr/man-possession-child- sexual-abuse-material-sentenced-20-years-prison.

194. Similar incidents occurred throughout 2021 and 2022. In 2021, for example, federal authorities arrested an Idaho man after locating numerous files of CSAM that he had uploaded to his Discord account.[169] And in 2022, a Louisiana man pled guilty to possessing CSAM, admitting that "he created a Discord account," that "other Discord users would share CSAM on the website," and that he would "upload the saved CSAM from his phone to other Discord users."[170] Several months later, a New York man was arrested for uploading and distributing CSAM using Discord.[171] And two months later, a University of Florida quarterback was arrested and accused of sharing CSAM on Discord.[172] When the man spoke with the police after his arrest, he admitted that he had been on Discord servers that "discuss, solicit, and distribute child sexual abuse material."[173]

195. 2023 was no different. For example, at the start of the year, a New York man was arrested and charged with creating and sharing CSAM through Discord after a police investigation revealed that he had allegedly instructed a 13-year-old boy to provide images and videos of himself committing sex acts on a 4-year-old girl.[174] The next month, a Vancouver man was found guilty of numerous charges, including distributing and possessing CSAM, based largely on communications and videos the man shared on Discord showing the sexual assault of an infant by an adult man.[175]

196. These incidents continued throughout 2024. In February, for example, a New Jersey man was arrested after an investigation revealed that he had uploaded to Discord a file depicting the sexual exploitation or abuse of minors.[176] At the time, the man was employed at a school serving students as

---

[169] U.S. Dep't of Justice, *Nampa Man Sentenced to 6 Years in Federal Prison Possessing Child Pornography* (Dec. 12, 2023), https://www.justice.gov/usao-id/pr/nampa-man-sentenced-6-years- federal-prison-possessing-child-pornography.
[170] U.S. Dep't of Justice, *Registered Sex Offender Pleads Guilty to Possession of Child Sex Abuse Material* (May 10, 2022), https://www.justice.gov/usao-edla/pr/registered-sex-offender-pleads- guilty-possession-child-sexual-abuse-material.
[171] News 12 Staff, *Prosecutor: Phillipsburg Man Distributed Child Pornography Through Discord*, News12 The Bronx (Sept. 28, 2022), https://bronx.news12.com/prosecutor-phillipsburg- man-distributed-child-pornography-through-discord.
[172] Tim Stelloh & Antonio Planas, *University of Florida Quarterback Arrested and Accused of Sharing Child Sexual Abuse Images on Discord*, NBC News (Nov. 30, 2022), https://www.nbcnews.com/news/us-news/university-florida-quarterback-arrested-allegedly- sharing-child-sexual-rcna59513.
[173] *Id.*
[174] *West New York Man Charged with Child Abuse Material*, Hudson Reporter (Jan. 19, 2023), https://hudsonreporter.com/news/west-new-york/west-new-york-man-charged-with-child-abuse- material/.
[175] Fox 12 Staff, *Washougal Man Gets 108 Years for Child Rape, Creating Child Sex Assault Materials*, Fox 12 Oregon (Mar. 25, 2023), https://www.kptv.com/2023/03/25/washougal-man- gets-108-years-child-rape-creating-child-sex-assault-materials/.
[176] Morris County Prosecutor's Office, *Jefferson Resident Arrested for Child Pornography* (Feb. 16, 2024), https://www.morriscountynj.gov/Departments/Prosecutor/Prosecutor-Press- Releases/Jefferson-Resident-Arrested-for-Child-Pornography.

young as five years old. A few months later, an Oklahoma man was arrested and charged with possessing and distributing CSAM after he shared CSAM on Discord.[177] Later that year, a former Indiana firefighter was arrested after police learned he was trading CSAM on Discord.[178]

**2. Discord provides a hunting ground for child-sex predators.**

197. Discord has also created a haven for predators seeking to groom, traffic, and sexually abuse minors by providing predators with endless opportunities for unmitigated interactions with children through public servers, direct messages, and video/voice chat channels.

198. Discord hosts numerous servers that openly operate as spaces where children are sexually exploited by predators. In its June 2023 article on Discord, NBC News reported that it found numerous servers involving adults pretending to be teens to entice children into sharing nude images. NBC News described several servers that explicitly solicited minors to join "not safe for work" communities, including one server that promoted itself on the public server database as "a community for people between the ages of 13-17. We trade nudes, we do events. Join us for the best Teen-NSFW experience <3."[179] Another server claimed to accept "little girls 5-17 only" and had chat channels with titles such as "begging-to-have-sex-chat" and "sexting-chat-with-the-server-owner."[180] Still another server directly solicited nude images from minors to gain access: "YOU NEED TO SEND A VERIFICATION PHOTO TO THE OWNER. IT HAS TO BE NUDE."[181]

199. Other Discord servers are only slightly less obvious. For example, a server called "Family Hideout" centered on an adult man who called himself "Dad" and built a "family" of children online.[182] In this server, which was labeled "Friendly," "Family," and "All-Ages," the man developed relationships with children and encouraged them to take and share nude images.

///

///

---

[177] *Wagoner Man Arrested, Accused of Distributing Child Pornography Over Discord*, Fox 23 News (June 25, 2024), https://www.fox23.com/news/wagoner-man-arrested-accused-of- distributing-child-pornography-over-discord/article_520191ec-333c-11ef-87b7-3bffc2affd71.html.

[178] Joe Schroeder, *Docs: Ex-Indiana Firefighter Traded Porn on Discord, Dated a 17-year-old*, Fox 59 (Sept. 4, 2024), https://fox59.com/news/indycrime/docs-ex-indiana-firefighter-traded- child-porn-on-discord-dated-a-17-year-old/.

[179] Goggin, *supra* note 180.

[180] *Id.*

[181] *Id.*

[182] National Center on Sexual Exploitation, supra note 179.




*Family Hideout server in March 2023.*

200. Other servers are more discreet yet are still widely known as places where children are groomed. For instance, a server called "FurWaterSportsAndYiff" was described as "Full of minors, groom hub" by one disgusted reviewer of the server. According to the reviewer, this server was filled with minors and adults and was "[p]retty much pedophilia at its best."[183]




*This server existed on Discord from 2022 through at least April 2023.*

///

[183] *Id.*

201. Through numerous well-documented and publicized cases, Discord has long known that its app enables and facilitates the grooming, trafficking, and sexual abuse of minors. For example, in its June 2023 article, NBC News reviewed publicly available information since Discord was founded and identified 35 cases in the previous six years in which adults were prosecuted on charges of kidnapping, grooming, or sexual assault that involved communications on Discord.[184] Because these cases were only those that were reported, investigated, and prosecuted during that time, "What we see is only the tip of the iceberg," explained a child safety advocate.

202. Over the years, countless criminal cases have exposed the critical role that Discord plays in enabling and facilitating grooming and other predatory conduct. In 2022, for instance, an Indiana man pled guilty to sexual exploitation of a minor and possession of CSAM after the FBI discovered that he had engaged in sexually explicit conversations with an 11-year-old girl on Discord and coerced the girl into sending sexually explicit images of herself.[185] The girl later told police that she communicated with the man via chats, video calls, and voice calls on Discord. Later that year, an Oregon man was federally charged with child exploitation crimes following an investigation that found he had "pretended to be an Oregon teenager to convince the child to engage in sexually explicit acts during a video chat on Discord."[186]

203. Similar cases were brought throughout 2023 and 2024. In March 2023, for example, a man was charged after he allegedly had a sexually explicit conversation with a 14-year-old girl and shared CSAM with her—all on Discord.[187] At the time, the man was a middle-school science teacher and had engaged in this conduct at the school where he was employed. And in 2024, a South Carolina man was sentenced to 20 years in federal prison after he pled guilty to numerous crimes he committed against children on Discord, including coercing minor girls into performing livestream sexual acts for

[184] Goggin, *supra* note 180.

[185] Phyllis Cha, *Marion County Corrections Employee Fired, Arrested Over Sexually Explicit Images to Girl*, IndyStar (Sept. 7, 2022), https://www.indystar.com/story/news/crime/2022/09/07/corrections-officer-marion-county- employee-sexually-explicit-messages-to-child/65781240007/.

[186] U.S. Dep't of Justice, *Oregon Man Charged with Sexually Exploiting Minor on Discord, Additional Victims Sought* (Oct. 3, 2022), https://www.justice.gov/usao-or/pr/oregon-man- charged-sexually-exploiting-minor-discord-additional-victims-sought.

[187] *NJ Teacher Charged After "Sexually Explicit Conversation" with Teen*, New Jersey 101.5 (Mar. 3, 2023), https://nj1015.com/nj-teacher-charged-after-sexually-explicit-conversation-with- teen/.

him in a Discord call that he recorded.[188] The man also made repeated threats to the girls and their families, and one of the girls attempted suicide because of this abuse.

204. Discord has also been at the center of numerous cases involving the kidnapping and sexual assault of minors. For example, in 2021, a Virgina man was arrested and charged with sexually exploiting and kidnapping a 12-year-old girl from her home in California.[189] According to court documents, the man met and groomed the girl on Discord, flew to California and picked her up at her house at 2:30 a.m., and was arrested at the Denver airport during a layover.

205. Similarly, in February 2023, a Michigan man was arrested and charged with kidnapping a 14-year-old Washington girl whom he had met and

206. groomed on Discord.[190] The next month, a North Carolina man was arrested and charged with rape, child abduction, and human trafficking after police rescued a 13-year-old from a locked shed behind his house.[191] According to the girl's mother, the man had been communicating with her daughter for months on Discord before he abducted her from her home in Dallas.

207. 2024 brought more of the same. In February, a Texas man was charged with human trafficking and sexual assault of a 16-year-old girl whom he met and communicated with on Discord.[192] The girl told police that the man picked her up in Kansas and brought her to his apartment in Texas, where they had sex multiple times. A few months later, a North Carolina man was charged with kidnapping and raping a 12-year-old girl he had met on Discord.[193] Around the same

[188] Alan Hovorka, *Lowcountry US Army Member Who Groomed Girls, Recorded Child Porn on Discord Sentenced to Prison*, Post & Courier (Aug. 3, 2024), https://www.postandcourier.com/news/evan-bucci-child-porn-discord-grooming/article_09cf85ce-50dc-11ef-84b2-7b7358023542.html.

[189] Dan Morse, *With Children Stuck at Home During Coronavirus Shutdowns, Online Sexual Predators Can Swoop In*, Wash. Post (Feb. 12, 2023), https://www.washingtonpost.com/local/public-safety/coronavirus-lockdown-child-exploitation/2021/02/04/90add6a6-462a-11eb-a277-49a6d1f9dff1_story.html.

[190] Ruth Bashinsky, *Washington State Girl, 14, Who Went Missing with "Man She met on Discord" Near Notorious Sex* Trafficking Corridor FOUND: Michigan Man Arrested over Kidnapping, Daily Mail (Feb. 1, 2024), https://www.dailymail.co.uk/news/article-13034633/washington-state-girl-missing-discord-sex-trafficking-michigan.html.

[191] Peter Charalambous & Alexandra Faul, *Missing 13-year-old Rescued from Locked North Carolina Shed*, ABC News (Mar. 14, 2023, https://abcnews.go.com/US/missing-13-year-rescued- locked-north-carolina-shed/story?id=97830147.

[192] Brittany Eubank, *Man and His Mother Charged After Missing Kansas Teen Found Safe in Central Texas*, KVUEabc (Feb. 8, 2024), https://www.kvue.com/article/news/crime/austin-human- trafficking-sexual-assault-missing-kansas-teen/269-361c25e3-12a8-4ec4-8779-0f962c12e8d1.

[193] *"Under 13 Is Under 13": Judge Responds to Attorney's Claim That Man Charged with Kidnapping & Rape Believed 12-year-old Girl Was College Student*, WRAL News (Apr. 16, 2024), https://www.wral.com/story/under-13-is-under-13-judge-responds-to-attorney-s-claims- that-man-charged-with-kidnapping-rape-believed-12-year-old-girl-was-col/21381250/.

time, a Pennsylvania man was arrested and charged with multiple offenses, including rape of a child and indecent assault of a person less than 13 years of age.[194] The police investigation revealed that the man was communicating with the 12-year-old boy on Discord, which included sexual conversations and making plans to meet.

208. Despite Discord's repeated assurances to parents that it has a "zero tolerance" policy for the criminal acts described above and that its product is built on safety, the rampant sexual exploitation of children on Discord has gotten only worse over the years—not better. John Shehan, the Senior Vice President of the National Center for Missing and Exploited Children, emphasized that his organization has seen "explosive growth" in CSAM and exploitation on Discord.[195] "There is a child exploitation issue on the platform. That's undeniable," he stated.

209. Indeed, for four consecutive years, the National Center on Sexual Exploitation ("NCSE") has named Discord to its "Dirty Dozen" list (which also includes Roblox, as discussed above). As NCSE put it, "Discord enables exploiters to easily contact and groom children," and predators "take advantage of Discord's dangerous designs to entice children into sending sexually explicit images of themselves.[196]

210. Discord itself confirms that this criminal conduct that it enables has only become more pervasive. Discord, for example, revealed that in the fourth quarter of 2023, it received 416,036 reports from users regarding "Child Safety" issues, which includes CSAM.[197] By the next quarter, that number had grown to 1,035,166—a roughly 150% increase.[198]

///

///

///

[194] Keith Heffintrayer, *Four Men Arrested Following Investigation into Sexual Abuse of 12-year- old Boy in Upper Gwynedd*, NorthPennNow (Apr. 15, 2024), https://northpennnow.com/news/2024/apr/15/four-men-arrested-following-investigation-into- sexual-abuse-of-12-year-old-boy-in-upper-gwynedd-police-say/.

[195] Goggin, *supra* note 180.

[196] National Center on Sexual Exploitation, *supra* note 58.

[197] Discord, *Discord Transparency Report: January – March 2023*, https://cdn.prod.website-files.com/625fe439fb70a9d901e138ab/64b16dade9ba30617e30a40a_Q1%2023%20%7C%20Discord%20Transparency%20Report_%20JANUARY%20-%20MARCH%202023.pdf.

[198] Discord, *Discord Transparency Report: January – June 2024*, https://cdn.prod.website-files.com/625fe439fb70a9d901e138ab/67056a054d453d30491c1ac9_Discord%20Jan_Jun%202024%20Transparency%20Report.pdf.

**3. Roblox and Discord work in tandem to facilitate child sexual exploitation.**

211. Roblox and Discord serve as the preferred platforms for predators seeking to identify and then sexually exploit children. As explained above, the tried-and-true playbook these predators follow is to misrepresent their age on Roblox to child users, pretending to be a fellow child, befriend the vulnerable young victims, and then manipulate the children to move the conversation off Roblox to Discord, where they coerce the children into sending sexually explicit images or into meeting in person so they can sexually abuse them.

212. Roblox and Discord designed their platforms to work together seamlessly. As described above, Roblox encourages users to communicate on Discord by allowing links to Discord servers and channels to be displayed on game or group pages and by permitting users to include their Discord usernames in their Roblox profiles. Discord, for its part, enables users to link their Roblox accounts to their Discord accounts.[199] Their "activity status" on Discord then shows other users, including predators, when they are playing Roblox and what game they are playing. On Discord, users can also send other users the codes for Robux gift cards to redeem on Roblox.

213. Through numerous media reports and well publicized criminal cases, Roblox and Discord have long known that their apps jointly enable predators to systematically harm children. For example, in 2019, a Florida man was arrested after law enforcement learned that he was using Roblox and Discord to target children.[200] According to authorities, the man targeted children between ages 10 and 12 on Roblox and then coerced them on Discord into sending sexually explicit images of themselves in exchange for Robux.

214. Similarly, in January 2022, a Florida man was arrested following a lengthy investigation that revealed that he posed as a teen girl on Roblox to meet a 13-year-old boy and then convinced to boy to send him sexually explicit images on Discord in exchange for Robux.[201] Later that year, an

[199] YouTube, *How to Link Roblox to Discord* (2025), https://www.youtube.com/watch?v=80ZEwlgecDM.

[200] Max Chesnes, *Deputies Say Vero Beach Man Used Popular Video Game Platforms to Target Children*, TCPalm (Aug. 20, 2019), https://www.tcpalm.com/story/news/crime/indian-river- county/2019/08/20/detectives-advise-online-safety-after-vero-beach-man-used-video-game- platforms-target-minors/2059599001/.

[201] Irene Wright, *Man Blackmailed Teen Boy as He Posed as Girl on Roblox and Discord, Florida Cops Say*, Miami Herald (Aug. 11, 2023), https://www.miamiherald.com/news/state/florida/article278172607.html.

Arizona man was arrested for kidnapping a 13-year-old boy he met on Roblox.[202] According to police, the man sent sexual and inappropriate messages on Roblox to the boy and then invited him to join a Discord chat, where the man arranged to pick the boy up from his house

215. These real-life nightmares occurred repeatedly throughout last year. In November 2024, for example, the FBI arrested a Michigan man and charged him with numerous crimes related to his sexual exploitation of possibly over 100 children.[203] The man told law enforcement that "he used Roblox to talk to others sexually, some of whom he allegedly knew were children," and then transitioned the conversations to Discord and coerced the children into sending nude images.[204]

216. And in January this year, a Louisiana man was arrested and federally charged for sexually exploiting a teenage girl through Roblox and Discord.[205] According to arrest records, the man "began communicating with her on Roblox, before transitioning her to Discord," where he coerced her into sending sexually explicit images of herself.[206]

**d. Discord Knowingly Causes and Facilitates the Sexual Exploitation of Children.**

217. Like Roblox, Discord is overrun with harmful content and predators because the company prioritizes growth, revenue, and eventual profits over child safety. For years, Discord has knowingly prioritized these numbers over the safety of children through the actions it has taken and decisions it has made to increase and monetize users regardless of the consequences.

**1. Discord prioritizes growth over the safety of children.**

218. Although Discord began as a communications app for gamers, its co-founders Jason Citron and Stanislav Vishnevskiy soon realized that Discord appealed to a much broader audience and sought to expand its user base. "We saw an opportunity to make communications easier for everyone, not

[202] Jerry Lambe, *Arizona Man Allegedly Kidnapped a Buy He Lured from Discord. Police Say They Rescued the Victim Thanks to an "Alert Gas Station Attendant*," Law & Crime (Dec. 29, 2022), https://lawandcrime.com/crime/arizona-man-allegedly-kidnapped-a-boy-he-lured-from- discord-police-say-they-rescued-the-victim-thanks-to-an-alert-gas-station-attendant/.
[203] Samantha Sayles, *Monroe County Man Uses Roblox, Discord, Snapchat to Sexually Assault Children*, ClickOnDetroit (Nov. 15, 2024), https://www.clickondetroit.com/news/local/2024/11/15/monroe-county-man-uses-roblox-discord-snapchat-to-sexually-exploit-children/.
[204] Id.
[205] WAFB Staff, *Man Accused of Internet Sex Crimes Allegedly Met Victims on Roblox, Discord*, WAFB (Jan. 31, 2025), https://www.wafb.com/2025/01/31/man-accused-internet-child-sex- crimes-allegedly-met-victims-roblox-discord/.
[206] *Id.*

just gamers," Citron explained.[207] So the company changed its motto from "Chat for gamers" to "A new way to chat with your communities and friends" and became hyper-focused on transforming into a universal communication product.[208]

219. Discord has since grown exponentially. In 2019, the company had 56 million monthly active users.[209] But with Discord's shift away from gaming in 2020, combined with its pandemic-driven explosion in popularity among young users, the company grew its monthly active users to 150 million by 2022.[210] Today, Discord boasts over 200 million monthly active users.[211]

220. As Discord has grown, private investors have poured money into the company. In June 2020, Discord raised $100 million at a $3.4 billion dollar valuation.[212] Just five months later, the company raised another $100 million at more than double the valuation ($6.90 billion).[213] In early 2021, Discord rebuffed an acquisition offer from Microsoft of at least $10 billion.[214] Later that year, it raised another $500 million at a staggering valuation of $14.5 billion.[215] While Discord has remained privately held so far, the company is expected to go public this year.[216]

221. A primary reason for investors' interest in Discord is its user growth, putting enormous pressure on the company to prioritize growing its users above all else. Growing its users is critical to the company's revenue and future profitability. Discord generates most of its revenue from its subscription service called Nitro, which provides users with benefits such as custom emojis, unlimited "super reactions," and HD video streaming. As the company expanded its user base, its revenue skyrocketed

[207] Nathan Latka, *Discord's $879M Revenue: 25 Moves to $25B Valuation*, LATKA-B2B Saas Blog (Jan. 15, 2025), https://blog.getlatka.com/discord-revenue/.
[208] Kellen Browning, *How Discord, Born from an Obscure Game, Became a Social Hub for Young People*, N.Y. Times (Dec. 29, 2021), https://www.nytimes.com/2021/12/29/business/discord- server-social-media.html.
[209] HelpLama, Discord Revenue and Usage Statistics 2025, https://helplama.com/discord- statistics/.
[210] Id.
[211] Podcast Transcript, *Discord CEO Jason Citron Makes the Case for a Smaller, More Private Internet*, The Verge (Apr. 22, 2024), https://www.theverge.com/24134914/discord-ceo-gaming- chat-teens-safety-moderation-decoder-interview.
[212] Equitybee, *Discord Funding History*, https://equitybee.com/companies/company?company=discord (last visited Feb. 11, 2025).
[213] *Id.*
[214] Sarah E. Needleman, *Discord Ends Deal Talks with Microsoft*, Wall. St. J. (Apr. 20, 2021), https://www.wsj.com/articles/discord-ends-deal-talks-with-microsoft-11618938806.
[215] *Id.*
[216] Chris Morris, *These Are the Most Anticipated IPOs to Watch in 2025*, FastCompany (Dec. 30, 2024), https://www.fastcompany.com/91243719/most-anticipated-ipos-to-watch-in-2025.

from $150 million in 2020 to $600 million in 2024.[217] And while for years Discord shunned advertising on its app, the company recently started selling advertisements to boost revenue by capitalizing on its massive and growing user base.[218]

222. Discord's growth strategy has focused on a user-centric approach that prioritizes user preferences over child safety. As Discord CEO and co-founder Jason Citron put it, "We focus on what our users love, and that drives everything we do."[219] In practice, that has resulted in Discord elevating the privacy of its users over protecting children in order to attract as many users to its app as possible. For example, Discord continues to allow people to chat using fake names and does not require individuals to enter their real names when registering for an account, ensuring that predators will continue to flock to Discord because they can remain anonymous. And while other digital platforms verify users' ages and restrict communications between children and adults, Discord does not require age verification and does not restrict communications between children and adults.

223. Discord even prioritizes user privacy over child safety with a feature it recently added to supposedly allow parents to monitor their children's Discord use. In 2023, Discord created its "Family Center for Parents and Guardians"—a "completely opt-in feature" that is "not mandatory for teens."[220] While this feature permits parents to monitor some of their children's activity on Discord, it prohibits parents from accessing the most important information on their accounts—the contents of their messages. As Discord tells children, "We value your privacy which is why connected accounts will not have access to the contents of your messages."[221] Discord also assures children that, with Family Center, "you have control over whether or not you use this feature, how long you want to use it for, and who you connect your account to."[222] By putting children in charge of this parental feature, Discord seeks to preserve growth of this key demographic.

---

[217] Salvatore Rodriguez & Sarah E. Needleman, *Discord to Start Showing Ads for Gamers to Boost Revenue*, Wall St. J. (Mar. 30, 2024), https://www.wsj.com/tech/discord-to-start-showing- ads-for-gamers-to-boost-revenue-bf5848b9.

[218] Equitybee, Discord Funding History, https://equitybee.com/companies/company?company=discord (last visited Feb. 11, 2025).

[219] Nathan Latka, *Discord's $879M Revenue: 25 Moves to $25B Valuation*, LATKA-B2B Saas Blog (Jan. 15, 2025), https://blog.getlatka.com/discord-revenue/.

[220] Discord, *What Is Family Center?,* https://support.discord.com/hc/en- us/articles/14155039712407-What-is-Family-Center#:~:text=We%20value%20your%20privacy%20which,names%2C%20server%20icons%2C%20and%20member (last visited Feb. 11, 2025).

[221] *Id.*

[222] *Id.*

224. In pursuit of growth, Discord has also chosen not to implement easy measures that would protect children but stunt user growth, such as age verification to ensure that children under 13 cannot create accounts and that adults cannot misrepresent their age to children.

225. Discord has also fought attempts to be held publicly accountable for the sexual exploitation of children that its app enables. In November 2023, Discord's CEO and co-founder Jason Citron refused to accept service of a subpoena to testify before the U.S. Senate as part of its hearing on "Big Tech and the Online Child Sexual Exploitation Crisis."[223] Citron appeared at the hearing only after the Senate was forced to enlist the U.S. Marshals Service to personally subpoena him—a situation the Senate called "a remarkable departure from typical practice."[224]

226. The National Center for Missing and Exploited Children, which internet companies are by law required to report instances of child sex abuse to, also reported issues working with Discord and had to rescind an invitation to become part of its Cybertipline Roundtable when the company failed to "identify a senior child safety representative to attend."[225] "It was really questionable, their commitment to what they're doing on the child exploitation front," stated John Shehan, the Senior Vice President of the National Center for Missing and Exploited Children.[226]

**2. Discord facilitates child sexual exploitation through the design of its app, inadequate safety features, and refusal to invest in basic safety protections.**

227. Discord's pursuit of growth over child safety is reflected in numerous actions it took and decisions it made related to the design and safety of its app. Had Discord acted differently, the harm suffered by countless children would not have occurred.

228. Discord designed its platform so that anyone can easily communicate with children, creating a virtual world where predators can freely target and sexually exploit children. Despite its repeated assurances to parents that its app "defaults" to safety for child accounts, Discord, in fact, designed its app to default to settings that facilitate the sexual exploitation of children.

///

---

[223] *Senate Panel Forced to Use U.S. Marshals to Subpoena CEOs of X and Discord to Testify on Protecting Kids Online*, CBS News (Nov. 21, 2023), https://www.cbsnews.com/news/senate- panel-us-marshals-subpoenas-ceos-x-discord/.
[224] *Id.*
[225] Goggin, *supra* note 180.
[226] *Id.*

229. Discord, for example, defaults to settings that allow predators to send direct messages to children. Predators often identify and target children by joining servers that are populated with kids. By default, Discord allows any two people who share a server to direct message each other, providing predators with an easy means of contacting and communicating with children. Predators also often initiate contact with children by adding a child as a "friend" on Discord so they can direct message them. By default, Discord permits children to receive friend requests from "Everyone," meaning children can receive and accept friend requests from individuals whom they do not know and with whom they have no connection.

230. For years, Discord also defaulted to settings that enabled predators to send children sexually explicit images via direct messages. In 2017, for example, Discord introduced "Safe Direct Messaging." This feature contained three options, including "Keep me safe," which supposedly would automatically scan and delete messages that a child received containing explicit content.

The process is pretty simple. Safe Direct Messaging has three settings:

The differences are pretty simple:

Keep me safe: The safest option. This will have Discord scan any image sent in all DMs, regardless of whether you've added the user on your friend list, or the user is DMing you just by sharing a mutual server.

My friends are nice: The medium-est option! This will let Discord know to scan any images sent in DMs from users that aren't on your friends list, but also to trust your previously-added friends and not worry about any images they send.

Do not scan: The self-confident option. Enabling this option will completely disable Discord's image scanning process, and leave you for a walk on the wild side for any and all DMs you receive. Careful, it's a jungle out there!

*Discord's description of the categories of its Safe Direct Messaging feature.*[227]

231. Consistent with Discord's "default to safety" promise, the company long represented that the "Keep me safe" option was on by default. In fact, though, Discord defaulted not to this most

[227]Discord, *Discord Safety: Safe* Messaging!, https://web.archive.org/web/20210203000438/https://support.discord.com/hc/en- us/articles/115000068672-Discord-Safety-Safe-Messaging- (archived Feb. 3, 2021).

restrictive setting but to the lower setting of "My friends are nice," which meant that Discord would not scan any images from a child's "friend"—which could be anyone.




*Discord's "Age-Restricted Content on Discord" webpage in 2022.*[228]

232. Discord later changed the labels of this feature from "Keep me safe" to "Filter all direct messages" and from "My friends are nice" to "Filter direct messages from non-friends."[229] But it continued to default to the less restrictive setting: "By default, these filters are set to 'Filter direct messages from non-friends.' Choose 'Filter all direct messages' if you want all direct messages you receive to be filtered, or select 'Do not filter direct messages' to turn these filters off."[230]

233. Although parents can change Discord's permissive default settings to more restrictive ones, that option is meaningless because Discord enables children to modify these safety settings without parental approval. So, a parent might modify the default settings so that their child cannot exchange direct messages with other server members or cannot receive friend requests from "Everyone," only to have their child simply change those settings to allow these unfettered interactions. As Discord puts it, "[o]ur product architecture provides each user with fundamental control over their experience on Discord including who they communicate with, what content they see, and what communities they join or create."[231] By doing so, Discord strips parents of basic protective options that would prevent adult strangers from targeting and exploiting their children. As one parent explained in calling Discord an "EXTREMELY dangerous app," Discord does not provide "any way for parents to set settings that can't simply be undone by kids."[232]

---

[228] Discord, *Age-Restricted Content on Discord*, https://web.archive.org/web/20220406085122mp_/https://discord.com/safety/360043653552-Age- Restricted-Content-on-Discord (archived Apr. 6, 2022) (emphasis added).
[229] Discord, *Helping Your Teen Stay Safe on Discord*, https://web.archive.org/web/20230711200552/https://discord.com/safety/360044153831-helping- your-teen-stay-safe-on-discord (archived July 11, 2023).
[230] *Id.*
[231] Discord, *Discord Parent Hub*, https://discord.com/safety-parents (last visited Feb. 11, 2025).
[232] National Center on Sexual Exploitation, *supra* note 179.

234. Discord also refused to implement other simple measures that would have protected children using its product. For example, despite having the ability to do so, Discord does not require users to verify their age and identify when creating an account. Doing so would have prevented predators from creating fake profiles and pretending to be children, which is their preferred approach in targeting children and convincing them to share sexually explicit images. Discord also could have implemented basic screening measures before allowing users on the app, which would have ensured that known predators are not permitted on the app.

235. Age and identity verification would also have prevented individuals under 13 from creating accounts on Discord. In many of the criminal cases involving the sexual exploitation of children on Discord, the children were under the age of 13. By requiring ID verification during the account sign-up process—a practice that other online products employ—Discord could have easily prevented these children from even using its app. But it chose not to, despite knowing for years that children under 13 operate freely on its environment and are targeted by predators.

236. Discord also could have placed a higher age rating on its application in the iOS App Store and other app stores to signal to parents that the app presented risks for children. Discord likewise could have provided clear warnings to parents about the presence of sexual predators on the platform, so that parents could make an informed decision about allowing their child on the platform and/or educate their child on how to stay safe on the platform. Discord could also have provided clear warnings to children about the presence of sexual predators on the platform, and instructed children on how to stay safe on the platform.

237. Despite these glaring failures, Discord constantly promotes its technology-focused "safety solutions" including its "AI-powered moderation systems."[233] But this technology has proven grossly inadequate and insufficient to protect children from sexual exploitation. For instance, Discord's Teen Safety Assist feature, which it introduced in October 2023, is supposed to "automatically blur media that may be sensitive in direct messages and group direct messages with friends, as well as in servers," and send "safety alerts" to teen users when they receive a direct message from a user for the

---

[233] Discord, *Discord's Commitment to Teen and Child Safety* (July 11, 2023), https://discord.com/safety/commitment-to-teen-child-safety.

first time."[234] Yet this feature is "utterly defective," according to the National Center on Child Exploitation.[235] As part of its annual investigation into Discord, "NCOSE researchers were able to send sexually explicit content from an adult account to an unconnected 13-year-old account, and no warning or resources were displayed."[236]

238. Discord is also famously slow and ineffective at responding to child-safety issues. One mother, for example, told CNN that Discord essentially refused to help her after she reported that a man had communicated with her 10-year-old daughter and sent her links to pornography.[237] Following the mother's report, Discord sent her an automated message asking for "the message links to the reported content for the team to review and take appropriate action."[238] After the mother sent the requested links, Discord never responded. "There was no help at all," she said.[239]

239. Child protection groups have also repeatedly highlighted flaws in Discord's approach to child safety. For example, Denton Howard, executive director of Inhope, an organization of missing and exploited children hotlines from around the world, has flagged numerous problems with Discord's approach to child safety, including "slow response times to reports, communications issues when [child protection] hotlines tried to reach out, hotlines receiving account warnings when they try to report CSAM, the continued hosting of communities that trade and create CSAM, and evidence disappearing before hearing back from Discord."[240]

## VI. PLAINTIFF SPECIFIC ALLEGATIONS

240. When Plaintiff was 11 years old, Plaintiff began using Roblox. Within approximately a few months after Plaintiff began using Roblox, Plaintiff was introduced and encouraged to join Discord from a male "friend" she met on Roblox named Nolan who claimed to be 13 years old but who is actually an adult male. Plaintiff's mother was generally aware that Plaintiff was using Defendants'

---

[234] Savannah Badalich, *Building a Safer Place for Teens to Hang Out*, Discord (Oct. 24, 2023), https://discord.com/safety/safer-place-for-teens.
[235] National Center on Sexual Exploitation, *supra* note 58.
[236] *Id.*
[237] Samantha Murphy Kelly, *The Dark Side of Discord for Teens*, CNN Business (Mar. 22, 2022), https://www.cnn.com/2022/03/22/tech/discord-teens/index.html.
[238] *Id.*
[239] *Id.*
[240] Goggin, *supra* note 180.

products and initially trusted Defendants' representations that their products were safe for children to use. Plaintiff's family learned the truth only after it was too late.

241. In June of 2026, Plaintiff's mother overhead Plaintiff speaking on the phone with someone who sounded, based on the depth and maturity of his voice, like an adult male. When she asked Plaintiff who she was speaking with, Plaintiff informed her mother that it was her friend Nolan who was 13 years old. Plaintiff's mother grabbed the phone and informed the man he was speaking to a then 12 year old child. The man hung up immediately.

242. Following this interaction, Plaintiff's mother and older sister attempted to talk to Plaintiff about what had transpired and Plaintiff reported that when she first started using Roblox, she met Nolan who told her he was 13 years old. Plaintiff conveyed that they considered Nolan to be their boyfriend. Plaintiff also conveyed that Nolan had introduced her to Discord where they also communicated. Plaintiff also reported that Nolan had introduced her to someone named Arianna on Discord who seemed to assist her communications with Nolan. Plaintiff, feeling threatened by the questions, attempted to hide in here room and thereafter admitted to deleting several messages between her and Nolan. Plaintiff did not delete her recent messages which conveyed to him that she was in trouble because of what Plaintiff and Nolan were texting and, in response, Nolan directed her to "run away from home."

243. Plaintiffs' mother and older sister went through many of the messages between Nolan and Plaintiff on Defendants' platforms. They were consistently of a sexual nature, including sexually explicit messaging and sexual roleplay, including requests and responses of a sexual nature. In addition, Nolan sent her a photograph of a condom wrapper designed to resemble a Monster Energy drink with a  message implying it should be obtained by Plaintiff and Nolan for shared use. The messages also revealed that Nolan had coerced Plaintiff into becoming his emotional slave; Plaintiff seemed emotionally and physically tied to communicating with him, reporting their activities to him, receiving permission from him to do certain activities, and so on.

244. Plaintiff has suffered significant harm as a result of these events. The next day, after Plaintiffs' access to the platforms and her cell phone and other devices were completely taken away from them, they engaged in self-harm and informed their mother they were afraid they would hurt

themselves further because they were so depressed and anxious that they were in trouble, that Nolan was in trouble, and that they could not communicate with Nolan. Plaintiffs' mother immediately informed Plaintiff's therapist of the situation and, thereafter, Plaintiff conveyed considerable trauma, anxiety, feelings of isolation and deep depression and shame, during multiple therapy sessions during which they discussed the suicidal ideation they had experienced from their experience with the predator they met on Roblox and communicated with on Discord. Plaintiff already suffered from low self-esteem, and the sexual harassment and exploitation Plaintiff suffered on Defendants' platforms has damaged Plaintiff profoundly.

245. Plaintiff's mother called the police who took a report of what occurred as well as took Plaintiff's phone into custody.

246. As Defendants are or should be aware, Kevin Nolan is a well-known prior Roblox developer who has been accused of sexually exploiting many, many children on Roblox and Discord.

247. Plaintiff's innocence has been snatched from them forever. Tragically, what happened to Plaintiff is far from an isolated event. Indeed, Plaintiff is just one of countless children whose lives have been devastated because of Defendants' misrepresentations, defectively designed products, and failures to warn parents of child users of the known dangers associated with their products. This action, therefore, is not just a battle to vindicate Plaintiff's rights; it is a stand against Defendants' systemic failures to protect society's most vulnerable from unthinkable harm in pursuit of financial gain over child safety.

248. Both Defendant Roblox and Defendant Discord profit from the cross platform use as just described herein and refuse to disrupt, despite internal research documenting this exact exploitation pathway.

249. Defendant Discord knew or should have known through its online monitoring that Plaintiff, a minor, was being solicited by one or more adults to generate and distribute CSAM, and sexually explicit videos.

250. Defendant Roblox's "For Parents" and "FAQ" sections on its website contained numerous representations about the purported safety of its product for children, including the following:

///

a. "All chat on Roblox is filtered to prevent inappropriate content and personally identifiable information from being visible on the site. Players have different safety settings and experiences based on their age";[241]

b. "Roblox uses a combination of chat filters, both human and software moderation, to proactively remove inappropriate content from the platform";[242]

c. "Roblox's state-of-the-art filtering system is actively monitored and dynamically adjusted to create a safe chat experience everywhere on the site and in-game";[243]

d. "Players age 12 and younger have their posts and chats filtered both for inappropriate content and to prevent personal information from being posted. Players age 13 and older have the ability to say more words and phrases than younger players. This filtering system covers all areas of communication on Roblox, public and private";[244] and

e. "We continually develop cutting-edge technologies to ensure the Roblox platform remains a safe and fun space for players all over the world".[245]

251. The "Trust & Safety" page on Defendant Roblox's website also contained numerous representations about the purported safety of its product for children, including the following:

a. "We are dedicated to working together with parents and digital safety experts to promote a family-friendly environment that allows all people to imagine, create, and play online";[246]

b. "We continually develop new and innovative technologies to ensure the Roblox platform remains a safe and fun space for players all over the world";[247] and

---

[241] Roblox, *Safety Features: Chat, Privacy, & Filtering,* https://web.archive.org/web/20231210195709/https://en.help.roblox.com/hc/en-us/articles/203313120-Safety-Features-Chat-Privacy-Filtering (archived December 10, 2023).
[242] Roblox, *For Parents*, https://web.archive.org/web/20231210034136/https://corporate.roblox.com/parents/ (archived December 10, 2024).
[243] Roblox, *Roblox FAQ – How does the chat system work on Roblox*, https://web.archive.org/web/20231222063937/https://corporate.roblox.com/faq/ (archived December 22, 2023).
[244] Roblox, *Safety Features: Chat, Privacy, & Filtering,* https://web.archive.org/web/20231210195709/https://en.help.roblox.com/hc/en-us/articles/203313120-Safety-Features-Chat-Privacy-Filtering (archived December 10, 2023).
[245] Roblox, *For Parents*, https://web.archive.org/web/20231210034136/https://corporate.roblox.com/parents/ (archived December 10, 2024).
[246] Roblox, *Trust & Safety*, https://web.archive.org/web/20190610044903/https://corp.roblox.com/trust-safety/ (January 23, 2022).
[247] *Id.*

c. "Roblox uses a combination of chat filters, both human and software moderation, to proactively remove inappropriate content from the platform."[248]

252. Plaintiff has suffered and continues to suffer life-altering psychological and emotional injuries as the direct result of Defendants Discord and Roblox's conscious decision to sacrifice child safety for corporate profits.

253. Plaintiff was a foreseeable user of each Defendant's products.

254. Each Defendant knew and intended that minors such as Plaintiff would use their products.

255. Each Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiff's use of their products.

256. Each Defendant knew or, by the exercise of reasonable care, should have known, that the intended or reasonably foreseeable use of their respective products (as designed, developed, set up, managed, maintained, supervised, and operated by that Defendant) was dangerous, harmful, and injurious when used by youth such as Plaintiff.

257. At all relevant times, each Defendant knew or, by the exercise of reasonable care, should have known that their respective products (as designed, developed, set up, managed, maintained, supervised, and operated by that Defendant) posed unreasonable risks of harm to youth such as Plaintiff, which risks were known and knowable, including in light of the internal data and knowledge each Defendant had regarding its products.

258. Each Defendant knew, or by the exercise of reasonable care, should have known, that ordinary child users of their respective products, such as Plaintiff, would not have realized the potential risks and dangers of using the products, including a risk of grooming, sexual abuse, and sexual exploitation, which foreseeably can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, sexual confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, exposure to pornography, and other harmful effects.

---

[248] *Id.*

259. Each Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

260. Plaintiff does not seek to hold the Defendants liable as the speaker or publisher of third-party content and instead intends to hold each Defendant responsible for their own independent conduct as the designers, programmers, manufacturers, sellers, marketers, and/or distributors of their dangerously defective products and for their own independent acts of negligence, gross negligence, carelessness, recklessness, and willful and wanton conduct as further described herein. Thus, Plaintiff's claims fall outside of any potential protections afforded by Section 230(c) of the Communications Decency Act and the First Amendment of the United States Constitution.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### FRAUDULENT CONCEALMENT / MISREPRESENTATION

**(By Plaintiff Against Each Defendant)**

261. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

262. As set forth in more detail above, each Defendant knew about the defective conditions of its products and that the products posed serious safety risks to child users.

263. Each Defendant had a duty to tell the public the truth and to disclose the defective conditions of its products and that the products posed serious safety risks to child users. Instead of disclosing the truth, each Defendant engaged in a widespread public campaign to tout the safety of its products in the media, and in the materials provided to potential users of the products, as described above.

264. Each Defendant was under a duty to tell the public, users, and their parents the truth and to disclose the defective conditions of its products and that the products posed serious safety risks to child users because each Defendant possessed superior knowledge about the dangers of its products through internal reviews, external studies and data known to each Defendant, and parent and police reports made to each Defendant.

265. Each Defendant breached its duty to the public, users, and their parents by concealing, failing to disclose, and making misstatements about the serious safety risks presented by its products. Even though each Defendant knew of those risks based on each Defendant's internal reviews, external studies and data known to each Defendant, and parent and police reports made to and about each Defendant, each Defendant intentionally concealed those risks to not lose users and revenue

266. Each Defendant made numerous false, material representations in 2024 and prior as described above downplaying any potential harm associated with its products and reassuring the public, users, and parents that its products were safe. Plaintiff and the public at large relied on each

267. Defendant's false representations in deciding to allow children to play on the products. Each Defendant's representations regarding the safety of its products were false, and each Defendant knew that its representations about the safety of its products were false when the statements were made.

268. Each Defendant intentionally failed to disclose the serious safety risks posed by the design of its products to the public, users, and their parents, including Plaintiff and Plaintiff's parent/guardian. Such risks were known only to Defendants through their internal reviews and external studies and data known to each Defendant. The public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, could not have discovered such serious safety risks.

269. The public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, did not know of the serious safety risks posed by the design of each Defendant's products, which were known by each Defendant.

270. By intentionally concealing and failing to disclose defects inherent in the design of its products, Defendants knowingly and recklessly misled the public, users, and their parents, including Plaintiff and Plaintiff's parent/guardian, into believing its products were safe for children to use.

271. By intentionally making numerous material representations, downplaying any potential harm associated with its products, and reassuring the public, child users, and parents, including Plaintiff and Plaintiff's parent/guardian, that its products were safe, Defendants fraudulently misled the public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, into believing its products were safe for children to use.

///

272. Defendants intended for the public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, to rely on its representations about the safety of its products.

273. Each Defendant knew that its concealment, misstatements, and omissions were material. A reasonable person, including Plaintiff and Plaintiff's parent/guardian, would find information about the risk of grooming, sexual abuse, sexual exploitation, and other serious risks associated with the use of Defendant's products, as described herein, to be important.

274. The public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, reasonably relied on the representations made by Defendant about the safety of its products for use by children.

275. Defendants intended to deceive the public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, by concealing the defects in the design of its products, which made the products unsafe.

276. As a direct and proximate result of each Defendant's material omissions, misrepresentations, and concealment of material information, Plaintiff and Plaintiff's parent/guardian were not aware and could not have been aware of the facts that Defendants concealed or misstated, and therefore justifiably and reasonably believed that each Defendant's products were safe for children to use.

277. If the serious safety risks presented by the design of each Defendant's products had been disclosed, the public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, reasonably would have acted differently.

278. Each Defendant's concealment and Plaintiff's parent/guardian's reliance on Defendants' representations about the safety of their products was a substantial factor in causing harm to Plaintiff

279. As a direct and proximate result of the Defendants' material omissions, misrepresentations, and concealment of material information, Plaintiff sustained injuries and harm.

280. As a direct and proximate result of the Defendants' material omissions, misrepresentations, and concealment of material information, as described herein, Plaintiff has suffered permanent and continuous injuries, including but not limited to depression, anxiety, emotional trauma, , difficulty in school to the point of being unable to attend, an addiction to pornography, and a deeply

unhealthy desire to want to continue to communicate with sexual predators, and requiring counseling and treatment. Plaintiff has suffered emotional and injuries that will continue into the future. Plaintiff has lost the ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the harm caused by Defendants.

281. Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of said conduct, including to the health, safety, and welfare of its consumers, and warrants an award of punitive damages in an amount sufficient to punish Defendants and deter others from like conduct.

282. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

**(By Plaintiff Against Each Defendant)**

283. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

284. As set forth in more detail above, each Defendant knew about the defective conditions of its products and that the products posed serious safety risks to child users, including Plaintiff. Instead of disclosing the truth, each Defendant engaged in a widespread public campaign to tout the safety of their products for children in the media and in the materials provided to potential users of the products, as described above.

285. Each Defendant was under a duty to tell the public the truth and to disclose the defective conditions of its product and that the product posed serious safety risks to child users.

286. Each Defendant breached its duty to the public, users, and their parents, including Plaintiff and Plaintiff's parent/guardian, by concealing, failing to disclose, and making misstatements about the serious safety risks presented by its products. Even though Defendant knew of those risks based on

each Defendant's internal reviews, external studies and data known to each Defendant, and parent and police reports made to and about Defendants, Defendants intentionally concealed and/or denied or otherwise ignored or minimized those risks to not lose users and revenue, and to induce parents to allow their children to use Defendants' products.

287. Each Defendant made numerous false representations about the safety of its product, as described above, which were specific and widespread. Plaintiff's parent/guardian and the public at large relied on each Defendant's false representations in deciding to allow children to use the products.

288. At all times relevant to this cause of action, and as detailed herein, each Defendant negligently provided Plaintiff, Plaintiff's parent/guardian, and the general public with false or incorrect information or omitted or failed to disclose material information concerning its product; including, but not limited to, misrepresentations relating to the safety, risk of harm, and approved uses of the products. Each Defendant negligently made numerous material representations, as described above, downplaying any potential harm associated with its product and reassuring the public, users, and parents, including Plaintiff's parent/guardian that its product was safe and would not harm its child users, including Plaintiff. Plaintiff's parent/guardian and the public at large relied on each Defendant's false representations.

289. Each Defendant's representations that their products were safe for use by children such as Plaintiff, including but not limited to reports, press releases, advertising campaigns, labeling materials, print and online advertisements, videos, commercial media containing material representations, were false and misleading, and contained omissions and concealment of truth about the dangers of the use of products. Defendants made the foregoing misrepresentations knowing that they were false and/or without reasonable basis in fact, and each Defendant had no reasonable grounds for believing that its misrepresentations that its products were safe for children to use were true.

290. By making numerous material representations downplaying any potential harm associated with its products and reassuring the public, users, and their parents, including Plaintiff, that its products were safe, Defendants negligently misled the public, users, and their parents, including Plaintiff's parent/guardian, into believing their products were safe for children to use.

///

291. Defendants' intent and purpose in making these misrepresentations was to deceive and defraud the public and the youth gaming community, including Plaintiff and Plaintiff's parent/guardian; to gain the confidence of the public, parents, and the youth gaming community, including Plaintiff and Plaintiff's parent/guardian; to falsely assure them of the quality of the products' fitness for use; and to induce the public, parents, and the youth gaming community, including Plaintiff and Plaintiff's parent/guardian to request, recommend, advise, solicit, purchase, procure, and continue to use Defendants' products.

292. The foregoing representations and omissions by each Defendant were in fact false. Defendants' products are not safe, fit, and effective for use in their intended and reasonably foreseeable manner. Use of Defendants' products is hazardous to the user's health and welfare, and Defendants' products have a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff has suffered. Further, Defendants' products are significantly more unsafe than other comparable products.

293. By concealing and failing to disclose or failing to take reasonable care to disclose the defects, each Defendant negligently misled the public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, into believing Defendants' products were safe for children to use.

294. By making numerous material representations downplaying any potential harm associated with their products and reassuring the public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, that their products were safe, Defendants negligently misled the public, child users, and their parents, including Plaintiff and Plaintiff's parent/guardian, into believing their products were safe for children to use.

295. As a direct and proximate result of each Defendant's material omissions, misrepresentations, and concealment of material information, Plaintiff's parent/guardian was not aware and could not have been aware of the fact that each Defendant concealed or made misrepresentations, and therefore justifiably and reasonably believed that Defendants' products were safe for use by Plaintiff.

296. Each Defendant knew and had reason to know that Plaintiff, Plaintiff's parent/guardian, and the general public did not have the ability to determine the true facts intentionally and/or

negligently concealed and misrepresented by each Defendant, and would not have used the same, if the true facts regarding the products had not been concealed and misrepresented by each Defendant.

297. Defendants had sole access to material facts concerning the defective nature of their products and the propensity for harm to minors in the form of dangerous injuries and damage to persons who used their products, including Plaintiff.

298. As a direct and proximate result of Defendants' material omissions, misrepresentations, and concealment of material information, Plaintiff sustained serious injuries and harm.

299. In reliance upon the false and negligent misrepresentations and omissions made by each Defendant, Plaintiff was induced to, and did use the products, thereby causing Plaintiff to sustain severe and permanent personal injuries.

300. Each Defendant's concealment and Plaintiff's reliance on each Defendant's representations about the safety of their products were substantial factors in causing harm to Plaintiff, including where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the products.

301. As a direct and proximate result of the Defendants' material omissions, misrepresentations, and concealment of material information, as described herein, Plaintiff has suffered permanent and continuous injuries, including but not limited to depression, anxiety, emotional trauma, , difficulty in school to the point of being unable to attend, an addiction to pornography, and a deeply unhealthy desire to want to continue to communicate with sexual predators, and requiring counseling and treatment. Plaintiff has suffered emotional and injuries that will continue into the future. Plaintiff has lost the ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the harm caused by Defendants.

302. Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their consumers, and warrants an award of punitive damages in an amount sufficient to punish them and deter others from like conduct.

303. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems proper.

**THIRD CAUSE OF ACTION**

**NEGLIGENCE – GENERAL**

**(By Plaintiff Against Each Defendant)**

304. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

305. Each Defendant develops, designs, programs, manufactures, distributes, sells, supplies, markets, advertises and/or operates their respective products that are intended for use by children.

306. At all relevant times, each Defendant owed a duty to exercise reasonable care in the design, development, programming, maintenance, manufacturing, distributing, supervision, selling, supplying, operation, marketing, promotion, and/or advertising of their products such that their products did not expose users, including Plaintiff, to harm, injury, abuse, sexual abuse, and/or sexual exploitation. These duties govern Defendants' own specific actions and are based on direct actions Defendants took in developing their platforms and features

307. Each Defendant had a duty to monitor, take down, flag, and warn of the content, images, and messages shared, posted, and/or circulated on their products to ensure that child users, including Plaintiff, were not exposed to or groomed by predators and were not sexually exploited.

308. Each Defendant had a duty to monitor their products and design their products to ensure child users, including Plaintiff, were not solicited for CSAM or sent sexually explicit images or videos of children.

309. Each Defendant had a duty to employ and train personnel to appropriately and reasonably respond to notice or signals that child users, such as Plaintiff, were being solicited, groomed, targeted and exploited by adult users for the purpose of sexual exploitation and/or the generation of CSAM.

310. Defendant Roblox had a duty to not direct, supervise, support, encourage, finance or permit the creation of harmful Roblox experiences by those creators or developers over which it had control.

311. Each Defendant had a duty to protect vulnerable users of their product, specifically children like Plaintiff.

312. Each Defendant had a duty to design, develop, program, manufacture, distribute, sell, supply, and/or operate their products such that it did not manipulate or exploit child users, including Plaintiff, and/or otherwise encourage them to engage in sexually exploitive behavior.

313. Each Defendant had a duty to design, develop, program, manufacture, distribute, sell, supply, and/or operate their product such that it did not create an environment where predators had easy access to groom child users, including Plaintiff, for the purpose of creating and generating CSAM.

314. Each Defendant owed Plaintiff a duty to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, distribution, supervision, and control of its products and not to create an unreasonable risk of harm from and in the use of its products (including an unreasonable risk of grooming, sexual abuse, and sexual exploitation, and other conduct associated with physical or mental injuries); to protect Plaintiff from unreasonable risk of injury from and in the use of its products; and not to invite, encourage, or facilitate youth, such as Plaintiff, to foreseeably engage in dangerous or risky behavior through, on, or as a reasonably foreseeable result of using its products. These duties govern each Defendant's own specific actions and are based on direct actions each Defendant took in developing, setting up, managing, maintaining, operating, marketing, advertising, promoting, distributing, supervising and controlling their products.

315. Each Defendant owed a heightened duty of care to youth users of its products, such as Plaintiff, because children's brains are not fully developed, meaning children are more neurologically vulnerable than adults to abusive contact facilitated by Defendants' products because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

316. In addition, each Defendant owed a special relationship duty to Plaintiff to protect Plaintiff against harm caused by its products and employees or by other users. This special relationship duty is based on the following:

a. As businesses, Defendants owed a duty to protect customers, including Plaintiff, against reasonably foreseeable criminal acts of third parties and other dangers known to Defendants relating to its products;

b. Plaintiff, as a minor, was vulnerable and dependent on Defendants to provide a safe environment through their products, and Defendants have superior ability and control to provide that safety with respect to activities that they sponsor or control;

c. Plaintiff relied upon Defendants for protection against third-party misuse or misconduct;

d. The special relationship Plaintiff had with Defendants substantially benefited Defendants through profits and growth in users and user activity. Defendants could not successfully operate without the growth in users and user activity generated by children like Plaintiff;

e. Defendants were far more to Plaintiff than a business. Defendants provided Plaintiff with opportunities for social interaction and a discrete community of other users. Plaintiff was dependent on Defendants to provide structure, guidance, and a safe environment;

f. Defendants have superior control over their products and the ability to protect their users. Defendants impose a variety of rules and restrictions to maintain a safe and orderly environment. Defendants employ internal staff to enforce these rules and restrictions and can monitor and discipline users when necessary. Defendants have the power to influence Plaintiff's values, consciousness, relationships, and behaviors; and

g. Defendants have voluntarily undertaken a responsibility to keep children safe when using their products. As alleged above, Defendants have publicly stated that they take steps to keep children safe when using their products and therefore have undertaken a duty to act reasonably in taking such steps.

317. Plaintiff was a foreseeable user of each Defendant's app. 261. Each Defendant knew that minors such as Plaintiff would use its app. 262. Each Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiff's use of its app. 263. Each Defendant knew or, by the exercise of reasonable care, should have known, that the reasonably foreseeable use of its respective platform (as developed, set up, managed, maintained, supervised, and operated by that Defendant) was dangerous, harmful, and injurious when used by youth such as Plaintiff in a reasonably foreseeable manner.

318. At all relevant times, each Defendant knew or, by the exercise of reasonable care, should have known that its respective platform (as developed, set up, managed, maintained, supervised, and

operated by that Defendant) posed unreasonable risks of harm to youth such as Plaintiff, which risks were known and knowable, including in light of the internal data and knowledge each Defendant had regarding its app.

319. Each Defendant knew, or by the exercise of reasonable care, should have known, that ordinary child users of its respective app, such as Plaintiff, would not have realized the potential risks and dangers of using the app, including a risk of grooming, sexual abuse, and sexual exploitation, which foreseeably can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects.

320. Each Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

321. Each Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by not including certain features in its respective platform which harmed Plaintiff. 268. Imposing a duty on Defendants would benefit the community at large.

322. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Plaintiff.

323. Each Defendant owed a heightened duty of care to youth users of its platform because children's brains are not fully developed, meaning young people are more neurologically vulnerable than adults to abusive contact facilitated by Defendants' platforms because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

324. Each Defendant breached its duties of care owed to Plaintiff through its affirmative malfeasance, actions, business decisions, and policies in the development, set up, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its product. These breaches are based on Defendants' own actions in managing their own product made available

to the public, independent of any actions taken by a third party, and Defendants breached their duties by:

a. Failing to implement effective parental controls;

b. Failing to screen users before allowing them on the platform;

c. Failing to implement effective parental notifications, such as when a child messages another user, particularly an adult user, or when a child interacts with accounts that have been blocked by other users or suspended in the past;

d. Failing to require adult users to provide a phone number when signing up for an account;

e. Failing to implement pop-up safety notices within chats and games to warn users about inappropriate behavior;

f. Failing to ban IP and MAC addresses of accounts associated with known abusers;

g. Failing to set default safety settings to the most protective options;

h. Having an open chat function;

i. Failing to provide a transcript of a child's communications to the parent;

j. Failing to implement reasonably available means to monitor for, report, and prevent the use of their platforms by sexual predators to victimize, abuse, and exploit youth users;

k. Failing to provide effective mechanisms for youth users and their parents/guardians to report abuse or misuse of their platforms;

l. Failing to implement effective protocols to verify ages and identity of all users;

m. Failing to place reasonable age restrictions on their platforms;

n. Failing to separate adults from children on the platforms by, for example, creating separate platforms for children;

o. Failing to adequately fund their trust and safety programs; and

p. Others as set forth herein.

325. A reasonable company under the same or similar circumstances as Defendants would have developed, designed, set up, managed, maintained, supervised, and operated their products in a manner that is safe for the child users who it was intended for, like Plaintiff.

///

326. At all relevant times, Plaintiff used each Defendant's platform in the manner in which it was intended to be used.

327. As a direct and proximate result of each Defendant's breach of one or more of its duties, Plaintiff was harmed. Such harms include the sexual exploitation of Plaintiff by a child predator and a cascade of resulting negative effects, including but not limited to damage to self worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues such as depression, anxiety, and other harmful effects.

328. Each Defendant's breach of one or more of its duties was a substantial factor in causing harms and injuries to Plaintiff.

329. Plaintiff was injured from using both of Defendants' defective platforms through no fault of their own. The fact that Plaintiff was injured by using both of Defendants' platforms means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' platforms and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

330. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' platforms.

331. Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of their conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish the Defendants and deter others from like conduct.

332. The safety of the public and the users of the products, particularly children, must come first and be the paramount concern and consideration in the design, development, programming, supply, maintenance and distribution of Defendants' products as well as in the operation, oversight, supervision, and management of the products and the manner in which they are being used by predators to target, groom, manipulate, solicit, and coerce children.

///

333. Defendants knowingly exposed the public and innocent children, including Plaintiff, to sexual content, sexual abuse, and sexual exploitation causing him to be vulnerable to being targeted, groomed, manipulated, solicited, and coerced by predators for the generation and distribution of CSAM or inappropriate sexual images and videos of minors.

334. Each Defendant knew that predators were using their products for the purpose of facilitating the generation and distribution of CSAM and each and every child user, including Plaintiff, was at risk of being targeted, groomed, manipulated, solicited, and coerced, but Defendants failed to take appropriate, reasonable, timely, and necessary remedial actions.

335. Each Defendant knew that children were at an increased risk of being sexually abused and/or sexually exploited by predators using their product to gain unsupervised access to children but Defendants failed to take appropriate, reasonable, timely, and necessary remedial actions.

336. Each Defendant prioritized revenues and profits over the health and safety of its users, particularly children like Plaintiff.

337. As a direct and proximate result of the Defendants' negligent conduct, as described herein, Plaintiff has suffered permanent and continuous injuries, including but not limited to depression, anxiety, emotional trauma, suspicion of others, all requiring counseling and treatment as described herein. Plaintiff has suffered emotional and physical trauma, harm, and injuries that will continue into the future.

338. Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish them and deter others from like conduct.

339. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems proper.

///

///

**FOURTH CAUSE OF ACTION**

**NEGLIGENCE, FAILURE TO WARN**

**(By Plaintiff Against Each Defendant)**

340. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

341. Each Defendant develops, designs, programs, manufactures, distributes, sells, supplies, markets, advertises and/or operates their respective products that are intended for use by children and were used by Plaintiff.

342. Plaintiff was a foreseeable user of each Defendant's product.

343. Each Defendant knew, or by the exercise of reasonable care, should have known, that use of its product was dangerous, harmful, and injurious when used in a reasonably foreseeable manner by minors.

344. Each Defendant knew, or by the exercise of reasonable care, should have known, that ordinary minor users, such as Plaintiff, would not have realized the potential risks and dangers of its product, including a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harm. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

345. Had Plaintiff received proper or adequate warnings about the risks of each Defendant's product, Plaintiff would have heeded such warnings.

346. Each Defendant knew or, by the exercise of reasonable care, should have known that its product posed risks of harm to youth. These risks were known and knowable in light of Defendants' own internal data and knowledge regarding their products at the time of development, design, marketing, promotion, advertising, and distribution to Plaintiff.

347. Because Defendants' conduct created the risk that child users of their products would be subject to grooming, sexual abuse, and sexual exploitation, Defendants each owed a duty to all

reasonably foreseeable users, including but not limited to minor users and their parents, to provide adequate warnings about the risk of using Defendants' products that were known to Defendants, or that Defendants should have known through the exercise of reasonable care.

348. In addition, as described above, each Defendant owed a special relationship duty to Plaintiff to protect them against harm caused by its product and employees or by other users.

349. Each Defendant owed a heightened duty of care to minor users and their parents to warn about its product's risks because children's brains are not fully developed, resulting in a diminished capacity to make responsible decisions regarding contact with strangers online. Children are also more neurologically vulnerable than adults to abusive contact facilitated by Defendants' products because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

350. Each Defendant breached its duty by failing to use reasonable care in providing adequate warnings to Plaintiff, such as failing to notify parents and the general public of the following, among others:

a. Defendants fail to require that children have parental approval before signing up for an account;

b. Defendants fail to screen users before allowing them on their platforms;

c. New users of Defendants' platforms can identify themselves as minors, begin to use the app, and do so indefinitely, without ever receiving a safety warning, and without ever having to provide information so that Defendants can warn the users' parents or guardians;

d. Defendants' platforms' default safety settings allow adults and other strangers' accounts to find, "friend," and communicate with children's accounts;

e. Defendants' parental control settings allowed children to modify their own parental control settings;

f. Defendants' platforms recommend that adult users and other strangers "friend" and contact child accounts;

g. Defendants fail to block the IP and MAC addresses of known abusers;

///

h. Adult predators use Defendants' platforms to target children for sexual exploitation, sextortion, and CSAM;

i. Defendants' platforms enable and increase risk of exposure to predators and can result in grooming, sexual abuse, and sexual exploitation, as well as their resultant physical and mental injuries;

j. Sexual predators use Robux to coerce children into sending them nude photos or engaging in other types of sexually explicit behavior;

k. Usage of Defendants' platforms can increase risky and uninhibited behavior in children, making them easier targets to adult predators for sexual exploitation, sextortion, and CSAM;

l. Usage of Defendants' platforms can normalize abuse and pornography, leading children to abuse other children either contemporaneously or later when the children are older and that the likelihood and severity of harm is greater for children;

m. The likelihood and intensity of these harmful effects is exacerbated by the interaction of each app's features with one another;

n. Defendants fail to verify ages, allowing adult predators to pose as children on Defendants' platforms;

o. Defendants' failure to verify ages allows children to bypass parental controls, safety features, and default settings; and

p. Others as set forth herein.

351. A reasonable company under the same or similar circumstances as Defendants would have used reasonable care to provide adequate warnings to consumers, including the parents of minor users, as described herein.

352. At all relevant times, each Defendant could have provided adequate warnings to prevent the harms and injuries described herein.

353. As a direct and proximate result of each Defendant's breach of its duty to provide adequate warnings, Plaintiff was harmed and sustained the injuries set forth herein. Each Defendant's failure to provide adequate and sufficient warnings was a substantial factor in causing the harms to Plaintiff.

354. As a direct and proximate result of each Defendant's failure to warn, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

355. Plaintiff was injured from using both of Defendants' defective products through no fault of their own. The fact that Plaintiff was injured by using both of Defendants' products means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' products and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

356. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' products.

357. The conduct of each Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

358. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE - UNREASONABLE / DEFECTIVE DESIGN**

**(By Plaintiff Against Each Defendant)**

359. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

360. Each Defendant develops, designs, programs, manufactures, distributes, sells, supplies, markets, advertises and/or operates their respective products that are intended for use by children and were used by Plaintiff.

361. Each Defendant knew or, by the exercise of reasonable care, should have known, that its product was dangerous, harmful, and injurious when used by youth in a reasonably foreseeable manner.

362. Each Defendant knew or, by the exercise of reasonable care, should have known that its respective product posed risks of harm to youth. These risks were known and knowable in light of Defendants' own internal data and knowledge regarding their products at the time of the products' development, design, marketing, promotion, advertising, and distribution to Plaintiff.

363. Each Defendant knew, or by the exercise of reasonable care, should have known, that ordinary minor consumers such as Plaintiff would not have realized the potential risks and dangers of its product. Those risks include grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

364. Each Defendant owed a duty to all reasonably foreseeable users to design a safe product.

365. Each Defendant owed a heightened duty of care to minor users of its product because children's brains are not fully developed, resulting in a diminished capacity to make responsible decisions regarding contact with strangers online. Children are also more neurologically vulnerable than adults to abusive contact facilitated by Defendants' products because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

366. Plaintiff was a foreseeable user of each Defendant's product.

367. Each Defendant knew that minors such as Plaintiff would use its product.

368. Each Defendant breached its respective duty in designing its product.

369. Each Defendant breached its respective duty by failing to use reasonable care in the design of its product by negligently designing the product with features that specifically allow predators to find, groom, exploit, and abuse children, as described herein.

370. Each Defendant breached its respective duty by designing a product that was less safe to use than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

///

371. Each Defendant breached its respective duty by failing to use reasonable care in the design of its product by negligently designing its platform with features as described above that created or increased the risk of grooming, sexual abuse, and sexual exploitation for children, which can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

372. Each Defendant breached its respective duty by failing to use reasonable care to use cost-effective, reasonably feasible alternative designs, including changes to the harmful features, and other safety measures, to minimize the harms described herein, including but not limited to:

a. Requiring children have parental approval and a parent's email address to sign-up for an account;

b. Effective parental controls;

c. Effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls;

d. Setting default safety settings to the most protective options, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

e. Requiring adults to provide a phone number when signing up for an account;

f. Pop-up safety notices within chats and games to warn users about inappropriate behavior;

g. Preventing strangers from sending Robux to child accounts, and preventing children from sending Robux to strangers' accounts;

h. Banning IP and MAC addresses of accounts associated with known abusers;

i. Controlled chat option;

j. Providing a transcript of a child's communications to the parent;

k. Implementing reporting protocols to allow users or visitors of Defendants' products to report CSAM and adult predator accounts specifically without the need to create or log in to the products prior to reporting;

l. Robust age and identity verification; and others as set forth herein.

373. Alternative designs that would reduce the dangerous features of Defendants' respective products were available, would have served effectively the same purpose as Defendants' defectively designed products, and would have reduced the gravity and severity of danger each Defendant's product posed Plaintiff.

374. A reasonable company under the same or similar circumstances as each Defendant would have designed a safer product.

375. At all relevant times, Plaintiff used each Defendant's product in the manner in which it was intended by each Defendant to be used.

376. As a direct and proximate result of each Defendant's breached duties, Plaintiff was harmed. Each Defendant's design of its respective products was a substantial factor in causing Plaintiff's harm and injuries.

377. Plaintiff was injured from using both of Defendants' defective products through no fault of their own. The fact that Plaintiff was injured by using both Defendants' products means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' products and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

378. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using each Defendant's product.

379. The conduct of each Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

///

380. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**SIXTH CAUSE OF ACTION**

**NEGLIGENT UNDERTAKING**

**(By Plaintiff Against Each Defendant)**

381. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

382. Each Defendant develops, designs, programs, manufactures, distributes, sells, supplies, markets, advertises and/or operates their respective products that are intended for use by children and were used by Plaintiff.

383. Each Defendant rendered parental control services and account safety services to Plaintiff's parents.

384. Each Defendant undertook the duty of implementing and employing a code of conduct.

385. Each Defendant undertook the duty of monitoring interactions with child users on their products and employed certain codes of conduct whereby, if violated, the account user could lose all or some of their privileges when using Defendant's products.

386. Each Defendant knew, or reasonably should have known, that effective parental control and monitoring of communications within the products was necessary for the protection of minor users.

387. Each Defendant knew, or reasonably should have known, that implementing and enforcing that code of conduct among its users was necessary for the protection of minor users, including Plaintiff.

388. Each Defendant rendered parental control services and account safety services for parent/guardians.

389. Each Defendant made numerous statements, as outlined above, claiming in substance that their parental controls and account safety services were highly effective at protecting users from the type of harm Plaintiff suffered.

///

390. Each Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

391. Each Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by implementing parental control and account safety services that were effective and that would prevent child users from being contacted by adult accounts or strangers' accounts generally.

392. Each Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by implementing parental control and account safety services that were effective and that would prevent child users from being targeted, groomed, solicited and manipulated by predators, the generation and distribution of CSAM, and sexually explicit images and videos of minors over their respective products.

393. Imposing a duty on Defendants would benefit the community at large.

394. Imposing a duty on Defendants would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to children.

395. Each Defendant owed a heightened duty of care to minor users and their parents, and thus including Plaintiff and Plaintiff's parent/guardian, to implement parental control and account safety services that were effective and that would prevent child users from being contacted by adult accounts or strangers' accounts generally.

396. Plaintiff's parent/guardian relied on each Defendant exercising reasonable care in undertaking to render parental controls and account safety services monitoring and enforcing the code of conduct.

397. Each Defendant breached its duty of undertaking by failing to use reasonable care in rendering its parental controls, account safety services, and monitoring and enforcement of the code of conduct to prevent child users from being contacted by adult accounts or strangers' accounts generally.

398. Each Defendant failed to exercise reasonable care in rendering these parental controls, account safety services, and monitoring and enforcing the code of conduct.

399. Each Defendant's failure to exercise reasonable care increased the risk of, and was a substantial factor in causing, harm to Plaintiff.

///

400. Plaintiff's parent/guardian relied on Defendants to provide effective parental controls, account safety services, monitoring and enforcement of the code of conduct, and account safety services.

401. Each Defendant's breach of one or more of its duties was a substantial factor in causing harm and injury to Plaintiff.

402. Plaintiff was injured as a result of their use of Defendants' defective products through no fault of their own.

403. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' products.

404. As a direct and proximate result of the Defendants' material omissions, misrepresentations, and concealment of material information, as described herein, Plaintiff has suffered permanent and continuous injuries, including but not limited to depression, anxiety, emotional trauma, suspicion of others, all requiring counseling and treatment, as described herein. Plaintiff has suffered emotional trauma, harm, and injuries that will continue into the future.

405. Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish them and deter others from like conduct.

406. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SEVENTH CAUSE OF ACTION

## STRICT LIABILITY, DESIGN DEFECT

**(By Plaintiff Against Each Defendant)**

407. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

///

408. Each of Defendant's respective products are designed, developed, programmed, manufactured, marketed, sold, supplied, distributed, operated, and/or managed by Defendant. These products were designed, manufactured, maintained, controlled, and distributed from the respective California headquarters of each Defendant.

409. At all relevant times, each Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from its product used by Plaintiff.

410. At all relevant times, Defendant designed, developed, programmed, manufactured, managed, operated, tested, produced, labeled, promoted, marketed, controlled, supplied, and distributed the product into the stream of commerce and in the course of the same, directly advertised and marketed the product to consumers or persons responsible for consumers, including Plaintiff and Plaintiff's parent/guardian.

411. Each Defendant defectively designed its product to allow children to come into contact with child predators. Children are particularly unable to appreciate the risks posed by the products.

412. Each Defendant's product was designed and intended to be a gaming and/or communication product intended for children, such as Plaintiff. The software and architecture of the products is the same for every user that logs on or signs up for an account. These products are defective and pose the same danger to each minor user, including Plaintiff.

413. Each Defendant's product is distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

414. Each Defendant's products are marketed and advertised to the public for the personal use of the end-user/consumer.

415. The defects in the design of each Defendant's product existed prior to the release of these products to Plaintiff and the public, and there was no substantial change to Defendants' products between the time of the upload by each Defendant to public or retail channels (*e.g.*, the App Store or Google Play) and the time of distribution to Plaintiff via download or URL access. In the alternative, any changes that were made to the product used by Plaintiff was reasonably foreseeable to Defendants.

416. Plaintiff used this product as intended or in a reasonably foreseeable manner, and each Defendant knew or, by the exercise of reasonable care, should have known that Plaintiff would use this product without inspection for its dangerous nature.

417. Each Defendant defectively designed its product to appeal to adult predators by making it easy to find children and enabled their contact, grooming, sexual exploitation, and sexual abuse of children, including Plaintiff.

418. Each Defendant failed to test the safety of the features it developed and implemented for use on its product. When each Defendant did perform some product testing and had knowledge of ongoing harm, it failed to adequately remedy its product's defects or warn Plaintiff thereof.

419. Each Defendant's product is defective in design and poses a substantial likelihood of harm for the reasons set forth herein, because the products fail to meet the safety expectations of ordinary consumers when used in an intended or reasonably foreseeable manner, and because the products are less safe than an ordinary consumer would expect when used in such a manner. Children and teenagers are among the ordinary consumers of Defendants' products. Indeed, each Defendant markets, promotes, and advertises its product to child consumers. Child consumers, and their parents and guardians, do not expect Defendant's product to expose them to predators when the product is used in the intended manner by the intended audience. They do not expect the features embedded by Defendants in their products to make it easy for child predators to sign-up for accounts and find children, groom children, and sexually exploit children. They do not expect Defendants' revenue and profits to be directly tied to predators' extortion of children and utilizing each Defendant's product to facilitate the sexual exploitation of children.

420. Each Defendant's product is likewise defectively designed in that it creates an inherent risk of danger; specifically, a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

421. The risks inherent in the design of each Defendant's product significantly outweigh any benefits of such design.

422. Defendants could have utilized cost-effective, reasonably feasible alternative designs, including changes to the problematic features described above, to minimize the harms described herein, including, but not limited to:

a. Requiring children have parental approval and a parent's email address to sign up for an account;

b. Effective parental controls;

c. Effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls;

d. Setting default safety settings to the most protective options, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

e. Requiring adults to provide a phone number when signing up for an account;

f. Pop-up safety notices within chats and games to warn users about inappropriate behavior;

g. Preventing strangers from sending Robux to child accounts, and preventing children from sending Robux to strangers' accounts;

h. Banning IP and MAC addresses of accounts associated with known abusers;

i. Controlled chat option; Providing a transcript of a child's communications to the parent;

j. Implementing reporting protocols to allow users or visitors of Defendants' products to report child sex abuse material and adult predator accounts specifically without the need to create or log in to the products prior to reporting;

k. Robust age and identity verification;

l. Reasonable age restrictions;

m. Separating adults from children by, for example, creating separate platforms for children; and

n. Others as set forth herein.

423. Each Defendant, by and through their agents, servants, workers, contractors, designers, developers, programmers, manufacturers, sellers, marketers, suppliers, distributors, subsidiaries, sister corporations, parent companies, successor corporations and/or predecessor corporations, are strictly liable because:

a. Each Defendant is engaged in the business of designing, developing, programming, manufacturing, selling, marketing, supplying, and/or distributing online products intended for children, Roblox and Discord;

b. The products that caused Plaintiff's injuries were designed, created, programmed, developed, marketed, and placed in the general stream of commerce by Defendants;

c. The products were expected to and did reach users such as Plaintiff without substantial change in the condition in which they were designed, developed, programmed, manufactured, marketed, distributed and/or sold; and

d. The products were designed, developed, programmed, manufactured, marketed, distributed and/or sold in the defective condition(s) for the reasons set forth herein.

424. The products were in a defective condition as: (1) the danger contained therein is unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the subject product outweighs the burden or costs of taking precautions.

425. Alternative designs were available that would prevent child predators from finding, grooming, and exploiting children, and which would have served effectively the same purpose of Defendants' products while reducing the gravity and severity of danger posed by the products' defects.

426. By conducting themselves as set forth above, Defendants' acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of harm that caused Plaintiff's injuries.

427. By reason of the breach of duties by each Defendant, by and through their agents, servants, workers, contractors, designers, developers, programmers, manufacturers, sellers, marketers, suppliers, distributors, subsidiaries, sister corporations, parent companies, successor corporations, and/or

predecessor corporations, Plaintiff was caused to sustain severe, permanent, and disabling injuries as set forth in detail above.

428. Each Defendant designed, developed, programmed, manufactured, sold, marketed, supplied, and/or distributed a product (Roblox and Discord) the risks and hazards of which far outweighed its utility or benefit.

429. Each Defendant designed, developed, programmed, manufactured, sold, marketed, supplied, and/or distributed a product (Roblox and Discord) the risks of which were unknown or unknowable to the consumer and for which the consumer would not reasonably anticipate or appreciate the dangerous condition.

430. As manufacturers, designers and seller, each Defendant had a duty to inform themselves with the best knowledge of the risks and the defects of its product and each Defendant had such knowledge. Their victims, including Plaintiff, were powerless to protect themselves against unknown harms, and Defendants should bear the costs of their injuries.

431. The safety of the public and the users of each Defendants' products, particularly children, including Plaintiff, must come first and be the paramount concern and consideration in the design, development, programming, supply, and distribution of Defendants' products.

432. Each Defendant knowingly exposed the public and innocent children, including Plaintiff, to predators who targeted, groomed, manipulated, solicited, and coerced children causing them to be subjected to sexual abuse, sexual exploitation, and the generation and distribution of CSAM, all in the name of greater corporate profits.

433. Each Defendant knew that dangerous predators targeting and grooming children were utilizing its products for the facilitation of the generation and distribution of CSAM and to sexually abuse and exploit children, including Plaintiff.

434. Each Defendant knew that children were being targeted, groomed, manipulated, solicited, and coerced by predators for the purpose of generating and distributing CSAM and to sexually abuse and exploit children; and that their products facilitated and recommended child users to interact and engage with the predators.

///

435. Each Defendant outrageously prioritized revenues and profits over the health and safety of its child users, including Plaintiff.

436. As a direct and proximate result of the Defendants' conduct, as described herein, Plaintiff has suffered permanent and continuous injuries, including but not limited to severe depression, anxiety, emotional trauma, deep suspicion of others, and requiring ongoing counseling and treatment, as described herein. Plaintiff has suffered emotional and physical trauma, harm, and injuries that will continue into the future. Plaintiff has lost the ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiff has medical bills both past and future related to care because of the harm caused by Defendants.

437. Each Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of their customers, and warrants an award of punitive damages in an amount sufficient to punish them and deter others from like conduct.

438. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## EIGHTH CAUSE OF ACTION

## STRICT LIABILITY -- FAILURE TO WARN

## (By Plaintiff Against Each Defendant)

439. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

440. At all times relevant to this action, each Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, into the stream of commerce the product, for use as a gaming product intended for children and was used by Plaintiff.

441. At all relevant times, each Defendant designed, developed, programmed, manufactured, managed, operated, tested, produced, labeled, promoted, marketed, controlled, supplied, and

distributed the product into the stream of commerce and in the course of the same, directly advertised and marketed the product to consumers or persons responsible for consumers, including Plaintiff and Plaintiff's parent/guardian.

442. Each Defendant's product was designed and intended to be a gaming and/or communication product intended for children, such as Plaintiff. The software and architecture of the products is the same for every user that logs on or signs up for an account. These products are defective and pose the same danger to each minor user, including Plaintiff.

443. Each Defendant's product is distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

444. Each Defendant's product is marketed and advertised to the public for the personal use of the end-user/consumer.

445. Each Defendant defectively designed its product to allow children to come into contact with child predators. Children are particularly unable to appreciate the risks posed by the products.

446. The defects in the design of each Defendant's product existed prior to the release of these products to Plaintiff and the public, and there was no substantial change to Defendants' products between the time of their upload by each Defendant to public or retail channels (e.g., the Platform Store or Google Play) and the time of their distribution to Plaintiff via download or URL access.

447. Plaintiff used these products as intended, and each Defendant knew or, by the exercise of reasonable care, should have known that Plaintiff would use these products without inspection for its dangerous nature.

448. Each Defendant defectively designed its product to appeal to adult predators by making it easy to find children and enabled their contact, grooming, sexual exploitation, and sexual abuse of children, including Plaintiff.

449. Each Defendant failed to test the safety of the features it developed and implemented for use on its product. When each Defendant did perform some product testing and had knowledge of ongoing harm, it failed to adequately remedy its product's defects or warn Plaintiff.

450. Each Defendant's product is defective in design and poses a substantial likelihood of harm for the reasons set forth herein, because the products fail to meet the safety expectations of ordinary

consumers when used in an intended or reasonably foreseeable manner, and because the products are less safe than an ordinary consumer would expect when used in such a manner. Children and teenagers are among the ordinary consumers of Defendants' products. Indeed, each Defendant markets, promotes, and advertises its respective product to pre-teen and young consumers. Pre-teen and young consumers, and their parents and guardians, do not expect Defendants' products to expose them to predators when the products are used in their intended manner by their intended audience. They do not expect the features embedded by Defendants in their products to make it easy for child predators to sign-up for accounts and find children, groom children, and sexually exploit children. They do not expect Defendants' revenue and profits to be directly tied to predators' extortion of children.

451. Each Defendant's product is likewise defectively designed in that it creates an inherent risk of danger; specifically, a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

452. The risks inherent in the design of each Defendant's product significantly outweigh any benefits of such design.

453. Defendants could have utilized cost-effective, reasonably feasible alternative designs, including changes to the problematic features described above, to minimize the harms described herein, including, but not limited to:

a. Requiring children have parental approval and a parent's email address to sign up for an account;
b. Effective parental controls;
c. Effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls;

d. Setting default safety settings to the most protective options, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

e. Requiring adults to provide a phone number when signing up for an account;

f. Pop-up safety notices within chats and games to warn users about inappropriate behavior; v. Preventing strangers from sending Robux to child accounts, and preventing children from sending Robux to strangers' accounts;

g. Banning IP and MAC addresses of accounts associated with known abusers;

h. Controlled chat option;

i. Providing a transcript of a child's communications to the parent;

j. Implementing reporting protocols to allow users or visitors of Defendants' products to report child sex abuse material and adult predator accounts specifically without the need to create or log in to the products prior to reporting; aa. Robust age and identity verification;

k. Reasonable age restrictions;

l. Separating adults from children by, for example, creating separate platforms for children; and

m. Others as set forth herein.

454. Alternative designs were available that would prevent child predators from finding, grooming, and exploiting children, and which would have served effectively the same purpose of Defendants' products while reducing the gravity and severity of danger posed by those products' defects.

455. Plaintiff used Defendants' respective products as intended or in reasonably foreseeable ways.

456. The physical, emotional, and economic injuries of Plaintiff were reasonably foreseeable to Defendants at the time of their products' development, design, advertising, marketing, promotion, and distribution.

///

457. Each Defendant's product was defective and unreasonably dangerous when it left each Defendant's respective possession and control. The defects continued to exist through the products' distribution to and use by consumers, including Plaintiff, who used the products without any substantial change in the products' condition.

458. As manufacturers, designers and seller, each Defendant had a duty to inform themselves with the best knowledge of the risks and the defects of its product and each Defendant had such knowledge. Their victims, including Plaintiff, were powerless to protect themselves against unknown harms, and Defendants should bear the costs of their injuries.

459. Plaintiff was injured as a direct and proximate result of each Defendant's respective defective designs as described herein. The defective design of the products used by Plaintiff was a substantial factor in causing harms to Plaintiff.

460. As a direct and proximate result of each Defendant's respective product's defective design, Plaintiff suffered serious and dangerous injuries.

461. As a direct and proximate result of each Defendant's product's defective design, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

462. Plaintiff was injured from using both of Defendants' defective products through no fault of their own. The fact that Plaintiff was injured by using both of Defendants' products means that Defendants are each jointly and severally responsible for the injuries caused by any one of Defendants' products and the burden shifts to Defendants to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

463. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendants' respective products.

464. The conduct of each Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish each Defendant and deter others from like conduct.

465. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

466. Plaintiff demands judgment against each Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Past, present, and future general damages, the exact amount of which has yet to be ascertained, in an amount which will confirm to proof at time of trial, to compensate Plaintiff for injuries sustained as a result of the use of each Defendant's product, including but not limited to physical pain and suffering, mental anguish, loss of enjoyment of life, emotional distress, and expenses for medical treatments;
2. Past, present, and future economic and special damages, according to proof at the time of trial;
3. Impaired earning capacity according to proof at the time of trial;
4. Medical expenses, past and future, according to proof at the time of trial;
5. Punitive or exemplary damages according to proof at the time of trial;
6. Attorneys' fees;
7. For costs of suit incurred herein;
8. Pre-judgment and post-judgment interest as provided by law; and
9. For such other and further relief as the Court may deem just and proper.

///

///

///

## IX. JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Date: October 25, 2026

Respectfully submitted,

**REICH & BINSTOCK LLP**

By: ______________________________

Anya Fuchs (SBN 215105)
Dennis Reich (SBN 69631)
Robert Binstock (*Pro hac vice* Forthcoming)
4265 San Felipe, Suite 1000
Houston, TX 77027
(713) 622-7271 (P) / (713) 623-8724